## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL NO. 20-055 |
| VERSUS | SECTION "F" |
| | JUDGE MARTIN L.C. FELDMAN |
| JASON R. WILLIAMS | |
| NICOLE E. BURDETT | MAGISTRATE (4) |
| | MAGISTRATE JUDGE ROBY |

## MEMORANDUM IN SUPPORT OF
## MOTION FOR DISCOVERY, EVIDENTIARY HEARING, AND TO DISMISS

Councilman Jason Williams and Nicole Burdett submit this Memorandum in support of their Motion for Discovery, for an Evidentiary Hearing, and to Dismiss.

### THE FACTS OF THE CASE

**1. Councilman Williams' campaign for District Attorney of Orleans Parish.**

For more than three years, Councilman Williams has been campaigning for District Attorney for Orleans Parish. That election will take place on November 4, 2020.

In February 2017, the incumbent's long-time political advisor Billy Schultz texted Councilman Williams' campaign manager that his "Intel Network tells [him] that JW is telling his peeps that he is not running for mayor, but in fact, running for DA. FYI: we faced that once and are more than prepared to deal with it again," and that they were "PREPARED FOR WAR!!!!!!!!!!! " *See* Exh. A, Schultz Text. Schultz—a former police officer who himself was convicted of tax offenses—told Councilman Williams in person that he would "cut off your balls" if Councilman Williams ran for District Attorney.

Schultz knows the playbook: in his letter for his own sentencing, Schultz wrote that his ex-wife "went to the FBI with false stories about former Mayor Marc Morial and me being involved in a money laundering scheme. As you can imagine, as soon as she mentioned Mr.

{N4045273.4}    1

Morial, a file was opened and an intensive investigation began on me," and the "end result was an extensive investigation by the IRS," "front page articles written about [him]," his "reputation . . . tarnished," and his "political consulting business" destroyed. *See* Exh. B, Schultz Sentencing Letter to Judge Lemmon. The incumbent also knows the playbook: his wife wrote that Schultz had "managed [her] husband's campaigns" for judge and "more than that, has been like a brother to him for the past twenty years." *See* Exh. C, Cannizzaro Sentencing Letter to Judge Lemmon.

Since Schultz's threat of "WAR" against Councilman Williams in 2017, the Government has investigated a person, not a crime. Now, on the eve of Councilman Williams' formal qualification as a candidate for District Attorney, the Government has rushed to indict Councilman Williams and his law partner, private citizen Nicole Burdett, in the midst of the COVID-19 pandemic that led this Court to suspend grand juries until August 1, 2020 and jury trials until October 5, 2020.

2. **The fraudulent "CPA" against whom Councilman Williams and Ms. Burdett have obtained a preliminary injunction and the Government's rush to criminally indict without first initiating an IRS audit or civil process.**

The case centers on a tax preparer, Henry "Bubby" Timothy, who is facing his own, separate criminal tax investigation. Mr. Timothy fraudulently represented himself to be a certified public accountant when meeting with and billing Councilman Williams and Ms. Burdett for his services, which included reviewing their business records and deciding what expenses could properly be claimed as business deductions on Schedule C. Councilman Williams and Ms. Burdett sued Timothy in Civil District Court and on June 25, 2020 obtained a preliminary injunction barring Timothy from "[r]epresenting, whether verbally or in writing, that [he] is licensed as a Certified Public Accountant, or has been licensed at any time as a Certified Public

Accountant," and from "[a]dvertising to provide the services of a Certified Public Accountant." *See* Exh. D, Civil District Court Lawsuit and Order.

Councilman Williams was initially contacted by an IRS special agent who wanted to interview him as a victim of Timothy's misconduct. The IRS special agent subpoenaed the records of numerous other entitles for which Timothy acted as a CPA or tax preparer. Timothy himself told Ms. Burdett that one aspect of the Government's investigation was Timothy's underreporting of his own income on his own tax returns, which the Government detected by analyzing the number of returns Timothy prepared on an annual basis, calculating the fees that Timothy charged for those services, and comparing it to the income that Timothy reported for himself. Timothy—finding himself in the cross-hairs of a federal investigation—decided to lie to help himself, and to help the Government make a case against the person—Jason Williams—where there was no crime.

The Government decided to ignore Timothy's wrongdoing, to bypass the IRS audit process, and to forego civil process to resolve the tax errors that Timothy made on Councilman Williams' returns, and instead rushed to indict a New Orleans public official and—as collateral damage—his law partner.

3. **The Government's decision to indict during the second wave of COVID-19, while the Court's General COVID-19 Orders have suspended jury trials and grand juries, and on the eve of qualification for the DA race, has interfered in the democratic process, impaired the ability to call a representative grand jury, and deprived Councilman Williams and Ms. Burdett of their rights to a speedy trial.**

In the week that the Government obtained the indictment, cases of COVID-19 were increasing across the State and the Eastern District. Without any legitimate reason to rush the

indictment—the tax charges are not close to being prescribed[1] and the case certainly does not implicate matters of public safety—the Government pushed ahead, apparently filing a motion with Chief Judge Brown to request special permission to convene a grand jury. *See* COVID-19 General Order No. 20-6 (April 24, 2020). The government claims the reason for the rush was an internal policy of the Tax Division that cases are to be indicted as soon as possible after the Division approves a case. We are skeptical.

The COVID-19 pandemic has disproportionately impacted both Orleans Parish, which suffered some of the highest rates of infection and mortality in the country, and African Americans. The Court's COVID-19 General Order acknowledges the adverse impact that COVID-19 has had on the Court's ability to "obtain an adequate spectrum of jurors" to serve on petit juries. *See* COVID-19 General Order No. 20-9 (June 26, 2020). This, of course, has constitutional implications: Councilman Williams and Ms. Burdett are constitutionally entitled to be charged only upon presentment to a grand jury that is comprised of a cross-section of the community and which was convened free of racial discrimination.

Councilman Williams and Ms. Burdett are also constitutionally and statutorily entitled to a speedy trial. At arraignment, the Court set their trial for September 14, 2020 consistent with

---

[1] Count 1 charges a §371 conspiracy, which carries a 6-year statute of limitations, to "imped[e], impair[], obstruct[] and defeat[] the lawful government functions of the Internal Revenue Service" that allegedly began "sometime in 2011 and continu[ed] through 2019." *See* Doc. 1, Indictment at ¶ 7; 26 U.S.C. § 6531(1). Counts 2-6 charge aiding and assisting in the preparation of false returns in violation of 26 U.S.C. § 7206(2), which carries a 6-year statute of limitations, for Form 1040s, the oldest of which was filed on October 15, 2014. *See* Doc. 1, Indictment at ¶ 21; 26 U.S.C. § 6531(2). That is, it is only Count 2—which is separately alleged as a manner and means and overt act in furtherance of the conspiracy charged in Count 1—that would prescribe before the November 4, 2020 election. The tax loss alleged does not change with Count 2. Counts 7-11 charge a failure to file Forms 8300 in violation of 31 U.S.C. §§ 5331 and 5322, which carries a 5-year statute of limitations, in 2017 and 2018. *See* Doc. 1, Indictment at ¶ 22; 18 U.S.C. § 3282(a).

the delays of the Speedy Trial Act. That date is, of course, an impossibility given the suspension of jury trials until October 5, 2020, at the earliest. The Government's decision to indict Councilman Williams and Ms. Burdett when COVID-19 General Order 20-9 has suspended jury trials until October 5, 2020, at the end of a two-week period in which COVID-19 cases are again on the rise in the Eastern District, will likely result in further delays before jury trials can safely resume, and virtually assures that they will be further deprived of their speedy trial rights.

As more fully set forth below, Councilman Williams and Ms. Burdett request discovery and an evidentiary hearing regarding (1) the empaneling of the grand jury, (2) the manner in which a quorum was reached, and (3) the Government's purported reasons for convening a grand jury during the COVID-19 pandemic and immediately before Councilman Williams qualifies for the District Attorney's race. After due proceedings, Councilman Williams and Ms. Burdett seek dismissal of the indictment against them.

## LEGAL RELIEF SOUGHT

1. **The Government indicted this case during a pandemic to ensure that Councilman Williams and Ms. Burdett will be deprived of their constitutional and statutory rights to a speedy trial and to achieve maximum interference in the race for Orleans Parish District Attorney.**

The Court's COVID-19 Order suspends all criminal jury trials until October 5, 2020— and well it should, given the effect of the COVID-19 pandemic on our community and the resulting "reduced ability to obtain an adequate spectrum of jurors" and the restrictions "on the ability of counsel and Court staff to be present in the courtroom." *See* COVID-General Order No. 20-9 (June 26, 2020). Given the increasing number of COVID-19 cases in the Eastern District and the country as a whole in the weeks since the indictment was returned, we have every reason to expect that trials will be continued even later.

But by securing and unsealing an indictment during a public health crisis (and without a valid reason for the rush), the government has made it virtually impossible for Councilman Williams and Ms. Burdett to obtain a speedy trial, because the Court has found "that the ends of justice serviced by ordering the postponements" of jury trials and in-person hearings during a deadly global health pandemic "outweigh the best interest of the public and any defendant's right to a speedy trial." *See* COVID-19 General Order No. 20-9 (June 26, 2020). The deprivation of the right to a speedy trial of course has constitutional implications as well. *Barker v. Wingo*, 407 U.S. 514, 530 (1972). Here, the effect is to prevent Councilman Williams and Ms. Burdett from forcing the Government to present its shoddy evidence at trial before the November 4, 2020 election for Orleans Parish District Attorney.

Perhaps anticipating these speedy trial concerns, the Court has allowed the Government to convene a grand jury *only if* the Government files a motion and permission is granted by the Court. *See* COVID-19 General Order No. 20-6 (April 24, 2020). What was the purported justification to convene a grand jury during this health crisis, at a time in which the Court recognizes a "reduced ability to obtain an adequate spectrum of jurors," in a case that presents no prescription concerns, safety concerns, or any other apparent reason to circumvent the Court's General Order? Councilman Williams and Ms. Burdett ask the Court to order production of the Government's motion and any related pleadings or orders to examine the purported justification for convening a grand jury less than three weeks before Councilman Williams formally qualifies to run for District Attorney and in the midst of the COVID-19 health crisis.

Of additional concern is violation of the Department of Justice's own policies on "Election Year Sensitivities," which provide that

> [P]olitics must play no role in the decisions of federal investigators or prosecutors regarding any investigations or criminal charges.

> Law enforcement officers and prosecutors may never select the timing of investigative steps or criminal charges for the purpose of affecting any election, or for the purpose of giving an advantage or disadvantage to any candidate or political party.

See Exh. E, Attorney General Memorandum for All Department of Justice Employees Concerning Election Year Sensitivities (March 9, 2012).

Qualifying for the November 3, 2020 election for Orleans Parish District Attorney is scheduled for July 22, 2020.  See La. R.S. 18:467; Act. No. 28 of the 2020 Louisiana Legislature. The Government obtained its indictment of Councilman Williams on June 26, 2020—within three weeks of Councilman Williams' qualification.

Since the incumbent D.A.'s political advisor threatened "WAR" against Councilman Williams in 2017, Councilman Williams has learned of several vain, baseless, and now-abandoned investigations into his lawful activities by federal law enforcement.  Now Mr. Williams stands accused of baseless tax charges in which the government has turned a blind eye to the real culprit—the individual who misrepresented himself as a CPA and prepared Mr. Williams' tax returns. Where government misconduct is so intrusive and over-reaching as to violate the principles of fairness and due process, dismissal is warranted.  *Rochin v. People of California*, 342 U.S. 165, 169, 173 (1952) (the court is to "exercise . . . judgment upon the whole course of the proceedings . . . in order to ascertain whether they offend . . . canons of decency and fairness," and whether a prosecution is "brought about by methods that offend a 'sense of justice.'"); *cf. United States v. Russell*, 411 U.S. 423, 431-32 (1973) (recognizing that there may be situations "in which the conduct of law enforcement agents is so outrageous that due process principles would absolutely bar the government from invoking judicial processes to obtain a conviction").

2. **The Court should determine whether the grand jury and/or grand jury quorum that returned the indictment during the COVID-19 pandemic reflects a fair cross-section**

The Government obtained the indictment in this case while an Executive Order is in effect recommending that those at "higher risk of severe illness" stay home, at a time when COVID-19 cases are increasing in every parish in the Eastern District, and when African Americans have been disproportionately infected, hospitalized, and killed by this disease at rates much higher than those of whites. The Court's General COVID-19 Order No. 20-9 in fact includes a finding that the Court has a "reduced ability to obtain an adequate spectrum of jurors." *See* COVID-19 General Order NO. 20-9 (June 26, 2020).

By Executive Proclamation No. 74 JBE 2020, the Governor of Louisiana on June 4, 2020 ordered that individuals at higher risk of COVID-19 should stay at home except for certain enumerated essential activities—a list that does not include showing up to reach a grand jury quorum—and that all people should avoid groups of any size where social distancing is not possible:

> A) All individuals who are at higher risk of severe illness from COVID-19 should stay at home, unless travelling outside the home for an essential activity, such as:
>
> > 1) Obtaining food, medicine, and other similar goods necessary for the individual or a family member of the individual.
> >
> > 2) Obtaining medical care and treatment and other similar vital services for an individual or a family member of the individual.
> >
> > 3) Going to and from an individual's workplace.
> >
> > 4) Going to and from the home of a family member.
> >
> > 5) Going to and from an individual's place of worship.
> >
> > 6) Engaging in outdoor activity, provided individuals maintain a distance of six feet from one another.

> Those individuals who are at higher risk of severe illness, as designated by the Centers for Disease Control (CDC), are those with conditions such as asthma, chronic lung disease, compromised immune systems (including from smoking, cancer treatment, bone marrow or organ transplantation, immune deficiencies, poorly controlled HIV or AIDS, or use of corticosteroids or other immune weakening medications), diabetes, serious heart disease (including heart failure, coronary artery disease, congenital heart disease, cardiomyopathies, and hypertension), chronic kidney disease undergoing dialysis, liver disease, or sever obesity or those who are 65 or older or living in a nursing home or long-term care facility.
>
> B) All individuals should avoid groups of any size that do not allow for moderate social distancing.

*See* Exh. F, Executive Proclamation No. 74 JBE 2020 (June 4, 2020), and extended by Exh. G, Executive Proclamation No. 83 JBE 2020 (June 25, 2020).[2]

The reality of COVID-19 is that it has disproportionately infected and killed African Americans in Louisiana. According to data from the Centers for Disease Control and Prevention, "age-adjusted hospitalization rates" for "non-Hispanic black persons" is "approximately **5 times** that of non-Hispanic white persons." *See* Exh. H, CDC, *COVID-19 in Racial and Ethnic Minority Groups* (June 25, 2020) (emphasis in original).[3]

And while African Americans make up 32.8% of Louisiana's population, they represent 52.79% of those who have died from COVID-19. *See* Exh. I, United States Census, *Quick Facts – Louisiana*[4]; Exh. J, La. Dep't of Health COVID-19 Dashboard (July 7, 2020)[5]. In Orleans Parish, the disparity is even more stark: when deaths of nursing home residents are excluded, African Americans make up 88% of those who died of COVID-19. *See* Exh. K, The Data

---

[2] Available at https://gov.louisiana.gov/assets/Proclamations/2020/74-JBE-2020-State-of-Emergency-COVID-19-Resilient-Louisiana-Phase-2.pdf  (last accessed July 6, 2020).
[3] Available at https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/racial-ethnic-minorities.html (last accessed July 6, 2020).
[4] Available at https://www.census.gov/quickfacts/LA (last accessed July 1, 2020)
[5] Available at http://ldh.la.gov/Coronavirus/ (last accessed July 6, 2020).

Center, *Detailed data sheds new light on racial disparities in COVID-19 deaths* (June 25, 2020).[6]

The Government sought special dispensation from Chief Judge Brown to convene a grand jury at the end of a week in which cases of COVID-19 were rising across the Eastern District, Louisiana as a whole, and our neighboring states. The parishes that make up the Eastern District are grouped by the Louisiana Department of Health into in Regions 1 (New Orleans), 3 (South Central), and 9 (Northshore) for COVID-19 and other public health purposes. By June 22, COVID-19 cases were on the rise in all three regions, and incidence of COVID-19 was "High" in Region 1 and Region 9, and "Moderately High" in Region 3:



---

[6] Available at https://www.datacenterresearch.org/reports_analysis/lack-of-data-obscures-true-levels-of-racial-inequity-in-covid-deaths/ (last accessed July 6, 2020).







*See* Exh. L, Governor's COVID-19 Brief (June 22, 2020).[7]

By late June, the Louisiana Department of Health reported that 91-95% of new COVID-19 cases were tied to community spread rather than congregate settings like nursing homes or jails—reflecting that grand jury service and other settings in which individuals are forced to be in close quarters for extended periods of time poses a significant health risk which, as discussed above, is particularly acute for African Americans in the Eastern district. *See* Exh. M, La. Dep't of Health, *Health Dep't reports 1,354 new COVID-19 cases* (June 26, 2020)[8]; Exh. N, La. Dep' of Health, *Health Dep't reports 1,356 new COVID-19 cases* (June 24, 2020).[9]

---

[7] Available at https://gov.louisiana.gov/assets/docs/covid/govCV19Brief-6-22-20.pdf (last accessed July 1, 2020).

[8] Available at http://ldh.la.gov/index.cfm/newsroom/detail/5655 (last accessed July 6, 2020).

[9] Available at http://ldh.la.gov/index.cfm/newsroom/detail/5650 (last accessed July 6, 2020).

"[R]acial discrimination in the grand jury selection process 'strikes at the fundamental values of our judicial system and our society at whole,' [and] it is well-established that a criminal defendant has suffered an equal protection violation when he is indicted by a grand jury that is the product of such discriminatory process." *Rideau v. Whitley*, 237 F.3d 472, 484 (5th Cir. 2000) (quoting *Rose v. Mitchell,* 443 U.S. 545, 556 (1979)).

A criminal conviction "cannot stand under the Equal Protection Clause of the Fourteenth Amendment if it is based on an indictment of a grand jury from which African-Americans were excluded on the basis of race." *Rideau*, 237 F.3d at 484.  205 F.3d 809  An equal protection violation occurs when "the procedure employed resulted in substantial underrepresentation" of the members of a particular race or . . . identifiable group." *Id.* at 485.  A system to select a grand jury that "arbitrarily excludes from service the members of any race" also "denies [a defendant] due process of law." *Peters v. Kiff*, 407 U.S. 493, 504 (1972).

Both Councilman Williams, who is black, and Ms. Burdett, who is white, have "the requisite standing to raise equal protection and due process objections to discrimination against black persons in the selection of grand juries." *Id.* (citing *Campbell v. Louisiana*, 523 U.S. 392, 397-401 (1998) (white defendant has standing to raise racial discrimination against black people in the constitution of the grand jury)).  And the Sixth Amendment provides them with the "right to a grand jury which represented a fair cross-section of the community." *Murphy v. Johnson*, 205 F.3d 809, 818 (5th Cir. 2000).

Even if the grand jury as a whole were convened free of racial discrimination, the process of selecting the individual or group of grand jurors who perform anything more than a "ministerial" function must likewise be free from racial discrimination for any resulting indictment to be free from constitutional taint. *Cf.  Hobby v. United States*, 468 U.S. 339, 345

(1984) (foreman's duties are merely "ministerial" and thus discrimination in selection of a foreman do not implicate constitutional concerns).  The quorum that is required to return a true bill is "so significant to the administration of justice that discrimination in" reaching that quorum "impugns the fundamental fairness of the process itself so as to undermine the integrity of the indictment." *Id.*

The effect of the Governor's Order that those "who are at higher risk of severe illness from COVID-19 should stay at home, unless travelling outside the home for an essential activity" together with the data that African Americans are, as a group, at higher risk of severe illness and death from COVID-19 raises serious concerns whether the grand jury in this case was appropriately constituted. The Government's choice to summon a quorum of grand jurors during the Governor's stay-home order and despite the disproportionate impact of COVID-19 upon African Americans in the Eastern District of Louisiana raises the specter that Councilman Williams' and Ms. Burdett's constitutional equal protection, due process, and fair cross-section rights have been violated.

3. **Councilman Williams and Ms. Burdett are entitled to discovery regarding the composition of the grand jury, the grand jury venire, and the purported justification given in the Government's motion to convene a grand jury during the COVID-19 crisis.**

Councilman Williams and Ms. Burdett seek discovery from the Department of Justice and the Clerk of Court related to the composition of the grand jury and the quorum of the grand jury that returned the indictment in the middle of the COVID-19 pandemic, and submit with their Motion a proposed Order to the Government and Rule 17 subpoena to the Clerk of Court.

The Court may order disclosure of a grand jury matter "at the request of a defendant who shows that a ground *may* exist to dismiss the indictment because of a matter that occurred before the grand jury." Fed. R. Crim. Pro. 6(E)(ii) (emphasis added).  "[D]isclosure is wholly proper

where the ends of justice require it." *United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150, 234 (1940).

Councilman Williams and Ms. Burdett seek from the Department of Justice:

1. All letters from representatives of the United States Attorney's Office to the grand jurors convening the grand jury that sat on June 26, 2020.

2. All letters or other communications calling the grand jurors for service on June 26, 2020.

3. A record of the races of the grand jurors who were summoned for service on June 26, 2020.

4. A record of the races of the grand jurors who constituted the quorum on June 26, 2020.

5. A record of the number of jurors who constituted a quorum.

6. Any and all records of responses by jurors that they would not report on June 26, 2020, and the stated basis for their failure to report.

7. Any motions, requests, or communications the Department of Justice submitted to the Court seeking permission to convene the grand jury on June 26, 2020, and the Order of the Court authorizing the grand jury.

Councilman Williams and Ms. Burdett seek from the Clerk of Court:

1. All letters or other communications calling the grand jurors for service on June 26, 2020.

2. The demographic questionnaires for the grand jurors who were called for service on June 26, 2020.

3. A record of the races of the grand jurors who were summoned for service on June 26, 2020.

4. A record of the races of the grand jurors who constituted the quorum on June 26, 2020.

5. Any records related to any grand jurors who were excused from service on June 26, 2020.

Councilman Williams and Ms. Burdett further request that the Court set this matter for evidentiary hearing as soon as all parties may be safely present in the courtroom to take live testimony.

Respectfully submitted,

*s/William P. Gibbens*
WILLIAM P. GIBBENS (#27225)
Schonekas, Evans, McGoey & McEachin, LLC
909 Poydras St., Suite 1600
New Orleans, LA 70112
(504) 680-6065
billy@semmlaw.com
Attorney for Jason Rogers Williams


*s/Michael W. Magner*
MICHAEL W. MAGNER (#1206)
AVERY B. PARDEE (#31280)
Jones Walker LLP
201 St. Charles Ave., Suite 5100
New Orleans, LA 70170
Telephone (504) 582-8316
apardee@joneswalker.com
mmagner@joneswalker.com
Attorneys for Nicole E. Burdett

## CERTIFICATE OF SERVICE

I certify that on July 13, 2020, I electronically filed the foregoing pleading with the Clerk of Court using the CM/ECF System, which will send a copy of the pleading to all parties via email.

*/s/ Michael W. Magner*