# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | **CRIMINAL NO.  20-cr-00055** |
| | * | **SECT. F. MAG.4** |
| **VERSUS** | * | |
| | * | **JUDGE FELDMAN** |
| **JASON R. WILLIAMS     (01)** | * | |
| **NICOLE E. BURDETT     (02)** | * | **MAGISTRATE JUDGE ROBY** |

## GOVERNMENT'S OPPOSITION AND INCORPORATED MEMORANDUM IN SUPPORT OF OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FOR SELECTIVE AND VINDICTIVE PROSECUTION AND DUE PROCESS VIOLATIONS, AND REQUEST FOR EVIDENTIARY HEARING

NOW INTO COURT, comes the United States of America, through the undersigned Assistant United States Attorneys, who respectfully oppose the Motion to Dismiss for Selective and Vindictive Prosecution and Due Process Violations, and Request for Evidentiary Hearing filed by Defendants Jason R. Williams and Nicole E. Burdett for the reasons outlined below.

## I.      INTRODUCTION-BACKGROUND OF INVESTIGATIONS

The Government has continued to investigate and prosecute all types of crimes during the pandemic.  The prosecution of Defendants has proceeded in the normal course of the way all federal tax cases are handled, meaning that once this case was approved by the Tax Division, it was presented to the Grand Jury.  After the indictment was returned, Williams chose to qualify as a candidate for the Orleans Parish District Attorney's race, which is scheduled to take place in November of 2020.  As a member of the New Orleans City Council, Williams has been a public official since 2014.  This is Defendants' second motion to dismiss, in which they insist that because Williams is running for public office, he should have some type of immunity or protection from

prosecution.  The fact that he is running for Orleans Parish District Attorney has played no part in the Government's decision to charge Defendants, nor should it have any effect on the Court's ruling.[1]

### A.      Investigation of Henry Timothy

The investigation of Henry Timothy began as a result of a criminal investigation of one of his clients, C.D., who owns a home health company.  Among other things, there were allegations that the company was not paying its employment taxes, not depositing and accounting for cash received, and that they were paying personal expenses out of the business account.  The agent on that case, Special Agent Lori Marable, determined that Henry Timothy was the return preparer for this business.  After a thorough investigation was completed, which consisted of analyzing both the company's bank accounts and C.D.'s personal accounts, as well as completing numerous interviews, SA Marable declined prosecution on C.D.   She declined prosecution due to the fact that she was able to corroborate that the company did in fact pay their employment taxes, their gross income was correctly accounted for and accurately reported on their tax returns, and, although there were some personal expenses in the business account, she determined that the amounts were *de minimis* and did not meet prosecution guidelines.  (*See* Defense Exhibit Q).

Although SA Marable declined prosecution on C.D., she ultimately decided to pursue charges against Timothy.  SA Marable was able to establish that Timothy was not declaring all of his income from his tax preparation business for the tax years 2013, 2014, 2015 and 2016.[2]

---

[1] In their first Motion to Dismiss, Defendants alleged that Leon Cannizzaro and Billy Schultz were behind this investigation, so that Cannizzaro would be re-elected as the Orleans Parish District Attorney, even though Cannizzaro later stated that he was not running for re-election.  In addition, the defense requested that the FBI run a search of their database of individuals associated with Cannizzaro (a list provided by defense counsel) to determine if any documentation existed corroborating their claim.   The FBI complied and they were informed that no such documentation exists, yet they have failed to correct the record.

[2] Defense counsel is well aware of the fact that Henry Timothy is being charged for this conduct as they were sent this information in discovery and are aware of the fact that the admission of this income resulted in an additional tax liability of approximately $88,593.  Whereas, for preparing Williams' tax returns, Timothy charged under $2,500 for

### B.     Investigation of Jason Williams/Nicole Burdett

As part of her investigation of Timothy, SA Marable reached out to several of Timothy's clients in an attempt to verify the clients' identities and to verify that Timothy was, in fact, their tax preparer.   One of the clients SA Marable attempted to contact was Williams.   She initially contacted him at his residence, but he declined to meet with her and told her that his legal assistant would reach out to her to set up an appointment.   After his legal assistant reached out to her, SA Marable went to Williams' office to meet with him.   She waited in a conference room at Williams' office for approximately two hours, eventually leaving because Williams failed to show up. Because Williams failed to meet with SA Marable and due to the fact that he was a public official, SA Marable's supervisor requested that IRS Special Agent Tim Moore get involved.   SA Moore is assigned to the FBI's public corruption squad and was aware that FBI had an open investigation already underway involving Williams.[3]   SA Moore was not yet involved in the FBI's investigation of Williams but was aware of it, due to his participation on the public corruption squad.   In December 2018, SA Moore conducted a preliminary tax investigation on Williams to determine if a more extensive investigation was warranted.   During a preliminary investigation, a special agent typically reviews the tax returns and other documents before proceeding to request that a full investigation be opened.   After conducting his preliminary investigation, SA Moore requested permission to open an extensive investigation, due to the fact that he saw glaring irregularities on Williams' returns.   He also learned of Williams' long history of tax liens for not paying his taxes. He also asked the FBI if they would be interested in him participating in their investigation.   One of the issues that SA Moore initially noticed was that from 2013 through 2017, Williams' tax

---

the years in question.   Yet, defense counsel insist that Timothy is being let off the hook, when it was Jason Williams who reduced his tax liability by more than $200,000.
[3] In fact, an FBI investigation was opened on Williams in 2016, after he was already an elected official and before he ever declared his intention to run for District Attorney.  This investigation is open and ongoing.

returns indicated that he made very little profit from his law firm and that in 2017, his return indicated that he had a loss from his law firm of $29,927.  He further noticed that his Schedule C expenses were excessive and although Williams owned a law firm, he took deductions exceeding $100,000 for costs of goods sold.  Costs of goods sold typically refers to the direct cost of producing the goods sold by a company and this deduction is reserved for businesses who either manufacture goods or provide retail services.[4]

Once the investigation was completed, SA Moore concluded that Williams' returns for the tax years 2013 through 2017 were rife with fraud and contained in excess of $700,000 in fraudulent business expenses.  This was accomplished by including personal expenses on the Schedule C (Profit and Loss from a Business) section of the return, inflating business expenses, and simply inventing expenses like costs of goods sold that would not exist for a law firm.  He also concluded that the law firm was receiving cash that it did not always deposit and was not declared as income on the returns.  The investigation also revealed that Williams sometimes paid attorneys who worked at the firm in cash.  Williams also failed to file the appropriate forms when he was paid in excess of $10,000 in cash, or cash equivalent, by his clients.

As the Court is aware, this case is being handled by the United States Attorney's Office for the Western District of Louisiana since the Eastern District recused itself due to the fact that Defendants have had cases in the Eastern District and are familiar with some of the AUSAs.  The undersigned attorneys assigned to this case have not had any dealings prior to this case with either Williams or Burdett.  In addition, the agents involved in this case have not had any prior

---

[4] According to IRS Publication 334 *Tax Guide for Small Business*, "**If you make or buy goods to sell**, you can deduct the cost of goods sold from your gross receipts on Schedule C.  However, to determine these costs, you must value your inventory at the beginning and end of each tax year."  (emphasis added).

interactions or cases with or investigations of Defendants prior to the investigations discussed above.

Prior to this case being charged, both Williams and Burdett had an opportunity to make arguments to the Department of Justice Tax Division that the case should not be approved for prosecution. An in-person meeting was held and their arguments were heard. Their requests were denied and on April 24, 2020, the case was approved for prosecution by the Tax Division (Counts 1-6). Additional charges were later considered (Counts 7-11), which were approved prior to indictment.

Pursuant to Western District of Louisiana prosecution guidelines, tax cases authorized by the Department of Justice must be prosecuted. (Government Exhibit 1, Western District Prosecution Guidelines regarding tax cases).

## II.   LAW AND ARGUMENT

### A.   Introduction

The indictment in this matter was returned on June 26, 2020, and the trial is currently set for January 11, 2021, a little over six months from the return of the indictment. As has been previously addressed in the Government's response to Defendants' first motion to dismiss, no speedy trial violations have occurred. (Rec. Doc. 30).

Defendants' instant motion attacks the Government's witnesses and evidence, even though the Government has not yet had an opportunity to try this case. During the trial, Defendants will be at liberty to cross-examine witnesses and present argument to the jury, but their arguments in the instant motion are premature and are not appropriate in moving to dismiss the indictment.

Although both Defendants have joined in this motion, Burdett, a white female not running for public office, has not even alleged how she has been selectively prosecuted, nor has she made

any allegations concerning this prosecution as being vindictive against her. Although her attorney has repeatedly referred to her as "collateral damage," the evidence in this case is that she introduced Williams to Timothy, she did the majority of the negotiating with Timothy, and she was responsible for the operation of the firm's billing software. In addition, it was Burdett who referred others in the firm and outside the firm to Timothy.

**B.     Defendants Have Failed To Raise A Valid Claim Of Selective Prosecution.**

Whether to charge one with a crime and choosing the specific crime with which to charge a given defendant are decisions belonging to the prosecutor.  In *United States. v. Armstrong*, 517 U.S. 456, 116 S. Ct. 1480, 134 L. Ed. 2d 687 (1996), the Supreme Court identified the core principles relevant to this issue by emphasizing, "[t]he Attorney General and United States Attorney's retain 'broad discretion' to enforce the nation's criminal laws.'' *Wayte v. United States*, 470 U.S. 598, 607, 105 S. Ct. 1524, 1530-31, 84 L. Ed. 2d 547 (1985) (quoting *United States v. Goodwin*, 457 U.S. 368, 380, n.11, 102 S. Ct. 2485, 2492, n.11, 73 L. Ed.2d 74 (1982).  "They have this latitude because they are designated by statute as the President's delegates to help him discharge his constitutional responsibility to 'take care that the laws be faithfully executed.'" *Id.*, citing U.S. Const., Art. II, § 3, see 28 U.S.C. §§ 516, 547.  As a result, "[t]he presumption of regularity supports their prosecutorial decisions," and "in the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties." *Id.*, citing *United States v. Chem. Found., Inc.*, 272 U.S. 1, 14-15, 47 S. Ct. 1, 6, 71 L. Ed. 131 (1926).  In the ordinary case, "so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charges to file or bring before a grand jury, generally rest entirely in his discretion." *Id.,* citing *Bordenkircher v. Hayes*, 434 U.S. 357, 364, 98 S. Ct. 663, 668, 54 L. Ed.2d 604 (1978).

There is a presumption that prosecutors act in good faith and do not prosecute for vindictive or discriminatory reasons. *United States v. Chem. Found.*, 272 U.S. 1, 14-15 (1926); *United States v. Greene*, 697 F.2d 1229, 1235 (5th Cir. 1983). "The judiciary cannot interfere with the prosecutor's exercise of charging discretion, except in narrow circumstances where it is necessary to do so in order to discharge the judicial function of interpreting and implying the constitution." *United States. v. Smith*, 231 F.3d 800, 807 (11th Cir. 2000) (*citing* U.S. Const. Art. II § 3). Of course, there are constraints, and the decision whether to prosecute may not be based on "an unjustifiable standard such as race, religion, or other arbitrary classification," *Armstrong* at 464, citing *Oyler v. Boles*, 368 U.S. 448, 456, 82 S. Ct. 501, 506, 7 L. Ed. 2d 446 (1962). A criminal defendant bears a heavy burden in proving that he has been selected for prosecution in contravention of his constitutional rights. A defendant "must demonstrate that the federal prosecutorial policy had a discriminatory effect and that it was motivated by a discriminatory purpose." *Armstrong*, 517 U.S. at 465. Thus, there are two requirements for a selective prosecution claim. *See United States v. Hoover*, 727 F.2d 387, 389 (5th Cir. 1984) (*citing United States v. Greene*, 697 F.2d 1229 (5th Cir. 1983)); *United States v. Webster*, 162 F.3d 308, 333 (5th Cir. 1988). "First, a defendant must make a *prima facie* showing that he has been singled out for prosecution while others similarly situated in committing the same acts have not." *Hoover* at 389. "Second, a defendant must then demonstrate that the government's discriminatory selection of him for prosecution has been invidious or in bad faith and that it rests upon such impermissible considerations as race, religion, or the desire to prevent his exercise of constitutional rights." *Hoover* at 389. "If a defendant meets both of these requirements, then the burden shifts to the government to demonstrate a legitimate basis for selecting the defendant for prosecution." *Id.*

It is up to the defendant to rebut the presumption that the Government made its decision "to prosecute in good faith and in a nondiscriminatory manner." *Webster* at 334. "The mere exercise of some selectivity by the government in instituting prosecutions is not in itself prohibited by the Constitution." *Hoover* at 389. The burden on the defendant is to present clear evidence, "making such a *prima facie* showing of selective prosecution is a difficult task," and "few parties have succeeded in shifting the burden of proof to the government." *Greene*, 697 F2d at 1235 (5th Cir. 1983).

Defendants have not been able to show that there has been a discriminatory effect or a discriminatory intent on the part of the Government. They have not been able to show that they were singled out for prosecution based on their race or desire to exercise a constitutional right. They have not established that Timothy's other clients are in any way similarly situated to them. First, based upon the examples they cite, the other clients were involved in businesses very different from that of attorneys and there is no discussion of them having an extensive history of tax liens and failure to pay the IRS. In addition, there is no discussion of their race. They also failed to mention that another Timothy client, C.D. (as discussed above), was referred for criminal prosecution. A thorough investigation was done, and it was determined that the matter did not meet prosecution guidelines.

In the instant case, the Government acknowledges that it has not prosecuted most of Timothy's other clients, just like it has not prosecuted the countless others who have taken improper Schedule C deductions. Even more significant, Defendants do not acknowledge that Nicole Burdett is also being investigated for criminal prosecution and that she herself was a Timothy client, that her own returns were prepared by Timothy, and that her own returns likewise

contained substantial and improper Schedule C deductions, which they have received in discovery.
The Court in *United States v. Wilson* recognized:

> All prosecutions are to some degree "selective." The government concedes as much. **Tax cases, because of budgetary and other institutional limitations, are perhaps the most selective of all.** United States attorneys, and before they get the file, enforcement officers in the field, constantly practice some degree of selectivity in deploying their limited enforcement resources. In the tax field, with millions of returns, and many thousand that reveal some basis for further investigation, it is not surprising that only a very small number can be prosecuted.

639 F.2d 500, 504-05 (9th Cir. 1981) (emphasis added). The Fifth Circuit has expressly concluded likewise. *United States v. Tibbetts*, 646 F.2d 193, 195-96 (5th Cir. 1981) ("Due to limited resources of the government, there will always be some tax evaders and tax protesters who elude prosecution by the government. This factor is not sufficient to show selective prosecution.").

In addition to the unreasonableness of Defendants' suggestion that all, most, or some (as yet unidentified percentage satisfactory to Defendants) of Timothy clients must be prosecuted, it is unreasonable to accept Defendants' calculations regarding the purported tax liabilities of those other Timothy clients. Such comparisons are made to demonstrate that Williams was similarly situated to other Timothy clients, but Defendants' references to those other clients are entirely devoid of context. *See United States v. Lewis*, 2006 WL 4385752 (D. Mass.) at *6 ("As a general matter, statistical evidence to prove selective prosecution must be viewed with considerable caution."); *see also United States v. Collins*, 972 F.2d 1385 (5th Cir. 1992) (affirming district court finding that African American federal judge and friend prosecuted for receiving and soliciting bribes had not made a showing of selective prosecution when defendants cited statistics that 14% of public corruption cases in the previous five years had been against African American officials who comprised only two percent of elected officials nationwide). By way of example and certainly not by limitation, a decision to prosecute is not based solely on the ostensible disparity between

gross income and Schedule C deductions but includes other factors such as evidence of the taxpayer's knowledge and intent and whether the Government can separate the improper Schedule C deductions from the proper deductions, not to mention whether those improper Schedule C deductions resulted in a tax loss prosecutable under the prevailing prosecution guidelines.  As this Court well knows, tax cases are necessarily time and resource consuming to develop.

In addition, SA Tim Moore has been the case agent on numerous tax prosecutions involving white public officials and/or attorneys who were prosecuted for tax violations in the Orleans, Jefferson Parish and St. Tammany Parish area.[5]

Williams was selected for prosecution based on numerous factors.  First, Williams had a long history of not paying his taxes.  His issues with the IRS began in 2002 and resulted in several tax liens being filed against him.  A federal tax lien was filed in the Orleans Parish Mortgage Records due to his nonpayment of taxes for the years 2001, 2002 and 2003.  It was recorded on November 6, 2007 in the amount of $89,130.63 and was released on January 7, 2015, approximately seven years after being filed.  Another federal tax lien was filed in the Orleans Parish Mortgage Records due to his nonpayment of taxes for the years 2005, 2006, 2007 and 2008. This lien was recorded on April 11, 2011 in the amount of $16,857.97 and was released on January 7, 2015 approximately four years after filing.  Williams still owes over $16,000 from his 2015 return.  When Burdett introduced Williams to Timothy in 2011, he owed the IRS more than $92,000 in outstanding tax and penalties for the prior five years.

---

[5] Chris Roberts (Councilman – Jefferson Parish, case number: 19-085); Craig Tafaro (Deputy Chief – Jefferson Parish Sheriff's Office; case number 17-135); Walter Reed (District Attorney for St. Tammany Parish; case number 15-100); Greg Meffert (Chief Technology Officer – City of New Orleans, case number: 09-374); Eddie Price (Mayor – Mandeville, case number: 09-343); Joe Impastato (Councilman- St. Tammany Parish, case number: 05-325); James Perdigo (Attorney, case number: 07-103).

In tax prosecutions, the Government has the added burden of proving willfulness.  In order to establish that a defendant acted willfully, the Government must prove a "voluntary, intentional violation of a known legal duty," and requires the Government to prove that "the defendant had actual knowledge that the law imposed a legal duty, and that he or she voluntarily and intentionally violated that duty."  *Cheek v United States*, 498 U.S. 192, 111 S. Ct. 604, 112 L. Ed.2d 617 (1991). In the instant case, the Government will be able to satisfy this burden by demonstrating that both Williams and Burdett are licensed and practicing attorneys.  Williams in fact advertises on his law firm website that he specializes in tax evasion cases.[6]  In addition, his law school transcript reflects that he took a tax class in law school.  Defendants have not been able to establish that any of the Timothy clients are similarly situated or as sophisticated.

As stated above, the Government has provided more than ample justification for pursuing this case, given that it was approved by the Department of Justice Tax Division and that the Western District of Louisiana prosecution guidelines require that tax cases authorized by the Tax Division be prosecuted.  "Such factors as the strength of the case, the prosecution's general deterrence value, the government's enforcement priorities, and the case's relationship to the government's overall enforcement plan are not readily susceptible to the kind of analysis the courts are competent to undertake."  *Wayte v. United States*, 470 U.S. 598, 607, 105 S. Ct. 1524, 84 L. Ed. 2d 547 (1985).  Defendants have not produced any evidence that similarly situated individuals of other races could have been prosecuted but were not.  In fact, as defense counsel are well aware, Burdett, who is also an attorney and is white, has similar issues on her personal tax returns and has been investigated and referred for prosecution.

---

[6] www.jrwilliamslawfirm.com/what-we-do (stating, *inter alia*, "Tax evasion, corruption, fraud, and theft or other areas businesses may need legal counsel to assist with risk management, train businesses about regulatory compliance, and help minimize criminal and civil liability.").

Since Defendants have failed to meet their burden, this Court must reject their selective prosecution claim.  "Defendants are similarly situated when their circumstances present no distinguishable legitimate prosecutorial factors that might justify making different prosecutorial decisions with respect to them." *United States v. Venable*, 666 F.3d 893, 900-01 (4th Cir. 2012) (citing *United States v. Olvis*, 97 F.3d 739, 744 (4th Cir. 1996).  Numerous cases further hold that in order to prove a discriminatory effect a defendant must provide evidence of more than a few similarly situated persons.  *See United States v. Hoover*, 727 F.2d 387, 389 (5th Cir. 1984) (finding that defendant met his burden of proving the first element of the task because over 300 air traffic controllers failed to report to work in the Houston area, yet only three individuals, including the defendant were prosecuted.)  *United States v. Tibbetts*, 646 F.2d 193, 195-96 (5th Cir. 1981) (finding no selective prosecution of a tax protestor partly because "[d]ue to limited resources of the government, there will always be some tax evaders and tax protestors who allude prosecution by the government.  This factor is not sufficient to show selective prosecution."); *United States v. Brewer*, 681 F.2d 973, 975 (5th Cir. 1982) (same); *United States v. Hayes*, 589 F.2d 811, 819 (5th Cir. 1979) (finding that defendant failed to satisfy the first prong of the selective prosecution task because he only presented evidence of three other cases in which there was no federal prosecution after a stay prosecution had been pursued in good faith); *United States v. Johnson*, 577 F.2d 1304 (5th Cir. 1978).

### C.    Defendants Have Failed To Raise A Valid Claim Of Vindictive Prosecution.

Under the Doctrine of Vindictive Prosecution, it violates due process for a prosecutor to use the charging process to penalize a defendant's exercise of constitutional or statutory rights. *United States v. Goodwin*, 457 U.S. 368, 372-73 (1982).  The defendant has the burden of proving prosecutorial vindictiveness by a preponderance of the evidence.  *United States v. Saltzman*, 537

F.3d 353, 359 (5th Cir. 2008).  There are two ways in which a defendant can prove a claim of vindictiveness.  First, a defendant may prove "actual vindictiveness" by presenting to the court objective evidence that he is being prosecuted to punish him for asserting his legal rights. *Goodwin*, 457 at 384.  Second, in cases in which there is a reasonable likelihood of vindictiveness, a defendant may rely on a presumption of vindictiveness obliging the government to come forward with objective evidence justifying the prosecutorial action.  *Saltzman*, 537 F.3d at 359; *Goodwin*, 457 U.S. at 374, 376 n. 8; *Blackledge v. Perry*, 417 U.S. 21, 29 n. 7 (1974).  These claims usually arise after charges are pursued, or additional charges are pursued after the defendant exercises a protected legal right.  For example, in *United States v. Young*, 231 F. Supp. 3d 33 (M.D. La. 2017), a case arising out of the Middle District of Louisiana, the defendant argued that he was unlawfully targeted for prosecution because he had refused to cooperate in a public corruption investigation and because he was a lobbyist.  He claimed both selective and vindictive prosecution.  Other cases involve the prosecutor's decision to institute charges, even for more severe offenses or more numerous counts after plea negotiations fail.  *See United States v. Ripple*, 666 F.2d 261, 267 (5th Cir. 1982).  Even in cases involving the pursuit of additional charges after plea negotiations fail, the Supreme Court has cautioned that a presumption is generally inappropriate in the pretrial context.  *Goodwin*, 457 at 381.  "There is no due process violation when the prosecution has done no more than openly present the defendant with the unpleasant alternatives of foregoing trial or facing charges on which he was plainly subject to prosecution."  *Bordenkircher*, 434 U.S. at 365.

In the instant case, Defendants have failed to present any objective evidence establishing vindictiveness and, therefore, they have not established sufficient facts to give rise to a presumption of vindictiveness.  This case does not involve any failed plea negotiations or the bringing of additional charges against Defendants.  As the Government detailed above, this is a

recusal case in which the undersigned Assistant United States Attorneys and the agents assigned to this case have had no prior dealings with either Williams or Burdett.  Because the presumption of vindictiveness does not apply, Defendants would have to show that the Government's charging decision was motivated by actual vindictiveness.  In other words, they are required to provide direct evidence, such as evidence of a statement by the prosecutor.  *Saltzman* at 363; *Wasman v. United States*, 468 U.S. 559, 569, 104 S. Ct. 3217, 82 L. Ed. 2d 424 (1984); *see also United States v. Johnson*, 221 F.3d 83, 94 (2nd Cir. 2000).  Defendants have not provided any such evidence; therefore, their vindictive prosecution claim must be denied.

     **D.**    **Defendants Cannot Obtain a Dismissal of an Indictment Because They Think Henry Timothy Has Credibility Issues.**

     Defendants spend a substantial amount of their memorandum attacking Timothy's credibility and referring to allegedly inconsistent statements.  On one hand, they argue that they warned the Government about Timothy and that the Government "ignored that advice." (Memorandum at 2).  It is absurd to suggest that a Court can dismiss an indictment because the Government failed to heed defense counsel's advice.  This is especially so when defense counsel make repeated reference to a statement allegedly made by Timothy only to them when he was unrepresented, now subjecting themselves to a potential recusal motion.  Defense counsel have represented to undersigned that the alleged Timothy statement was not recorded, so the question is begged how reference to such a statement is proper when Defendants will not be able to present it to the jury, unless counsel intend to admit that they should be recused, withdraw as counsel, and testify at trial about the substance of that allegedly inconsistent statement.  References to alleged statements that cannot be substantiated should not be considered.

     Courts should not dismiss an indictment based on its own determination of the credibility of a witness.  If Defendants are as confident about Timothy's credibility as they assert, they are

certainly free to attack his credibility through cross-examination.  *See generally United States v. Sullivan*, 578 F.2d 121, 124 (5th Cir. 1978) ("But we refuse to adopt the proposition that, absent perjury or government misconduct, an indictment is flawed simply because it is based on testimony that later may prove to be questionable.").  Defendants' concerns about Timothy's credibility do not implicate Defendants' race, religion, or exercise of a particular constitutional right, and Williams' position as a politician is not implicated in the analysis.  The Seventh Circuit observed as much in a 1975 bribery and tax case against an attorney and former member of the Illinois General Assembly who contended he was prosecuted because he was politically prominent and newsworthy and that others who had participated in the bribery had not been prosecuted:

> Assuming that the decision to indict Peskin and press for trial was based in part on his political prominence, this is not an impermissible basis for selection.  It makes good sense to prosecute those who will receive the media's attention.  Publication of the proceedings may enhance the deterrent effect of the prosecution and maintain public faith in the precept that public officials are not above the law.

*United States v. Peskin*, 527 F.2d 71, 86 (7th Cir. 1975).  *See also United States v. Hastings*, 126 F.3d 310, 314 (4th Cir. 1997) (citing *Peskin* with approval in tax case against prominent North Carolina businessman and party leader).  In rejecting a claim of selective prosecution against an attorney and lobbyist, Judge deGravelles in the Middle District cited with approval the Government's citation to authority "supporting the proposition that they may prosecute individuals because of their political prominence." *United States v. Young*, 231 F. Supp. 3d 33, 97 (M.D. La. 2017).  In this case, Williams is not being prosecuted for his status as a public official or for his desire to run for political office; however, these factors should not operate as a shield of protection as public officials should be held accountable if they violate the law, especially skilled attorneys who understand their obligation to comply with the tax laws.

**E.**      **The Defendants are not entitled to an Evidentiary Hearing.**

Defendants request an evidentiary hearing.  Defendants have failed to present *prima facie* evidence of selective or vindictive prosecution, which they are required to do before a hearing is granted.  In order to obtain an evidentiary hearing alleging selective prosecution, "facts sufficient to create a reasonable doubt about the constitutionality of a prosecution, must be presented." *Hayes* at 819 (1979), citing *United States v. Ream*, 491 F.2d 1243, 1246 (5th Cir. 1974).  Defendants do not articulate what additional evidence they would present that was not already contained in their memorandum.  Because they have failed to assert what evidence they would present at a hearing, their request must be denied. They are seeking an opportunity to question Timothy prior to trial so that they can have his sworn testimony and cross-examine him prior to trial; however, a hearing on a Motion to Dismiss is not an opportunity for a fishing expedition. Timothy's alleged credibility issues do not implicate Defendants' constitutional rights such that his testimony would be relevant to the question of selective prosecution.  *United States v. Webster*, 162 F.3d 308, 334 (5th Cir. 1998) ("A defendant is not automatically entitled to an evidentiary hearing to make the required showing.  He must first present facts 'sufficient to create a reasonable doubt about the constitutionality of [his] prosecution' resulting from selective prosecution.").

The Government has produced in discovery all information in its possession germane to Timothy, including the evidence from which their statistics were derived.  There is simply no evidence that Defendants were prosecuted because of their exercise of their constitutional rights. Quite the contrary: they are sophisticated attorneys with very significant tax problems.

WHEREFORE, the Government respectfully requests that the Court deny Defendants' Motion to Dismiss for Selective and Vindictive Prosecution and Due Process Violations, and Request for Evidentiary Hearing for the reasons stated above.

Respectfully submitted,

ALEXANDER C. VAN HOOK
Acting United States Attorney
Western District of Louisiana


BY:     /s/ Kelly P. Uebinger
        KELLY P. UEBINGER, (Bar No. 21028)
        Assistant United States Attorney
        800 Lafayette Street, Suite 2200
        Lafayette, LA 70501
        Telephone: (337) 262-6618


BY:     /s/ David J. Ayo
        DAVID J. AYO, (Bar No. 28868)
        Assistant United States Attorney
        800 Lafayette Street, Suite 2200
        Lafayette, LA 70501
        Telephone: (337) 262-6618

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | **CRIMINAL NO.  20-cr-00055** |
| | * | **SECT. F. MAG.4** |
| **VERSUS** | * | |
| | * | **JUDGE FELDMAN** |
| **JASON R. WILLIAMS**    **(01)** | * | |
| **NICOLE E. BURDETT**    **(02)** | * | **MAGISTRATE JUDGE ROBY** |

## CERTIFICATE

I hereby certify that on September 8, 2020, a copy of the United States of America's Opposition and Incorporated Memorandum in Support of Opposition to Defendants' Motion to Dismiss for Selective and Vindictive Prosecution and Due Process Violations, and Request for Evidentiary Hearing was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to all counsel of record by ECF notification.

ALEXANDER C. VAN HOOK
Acting United States Attorney
Western District of Louisiana


BY:    /s/ Kelly P. Uebinger
KELLY P. UEBINGER, (Bar No. 21028)
Assistant United States Attorney
800 Lafayette Street, Suite 2200
Lafayette, LA 70501
Telephone: (337) 262-6618


BY:    /s/ David J. Ayo
DAVID J. AYO, (Bar No. 28868)
Assistant United States Attorney
800 Lafayette Street, Suite 2200
Lafayette, LA 70501
Telephone: (337) 262-6618