# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | **CRIMINAL NO: 20-55** |
| **v.** | * | **SECTION: "F" (4)** |
| **JASON R. WILLIAMS** | * | |
| **NICOLE E. BURDETT** | | |
| | * * * | |

## DECLARATION OF HAROLD A. ASHER

I, Harold A. Asher, declare as follows:

1.  I am a Certified Public Accountant with experience in tax compliance, forensic accounting, and fraud investigation; and I have been qualified as an expert witness in tax related issues, accounting, and forensic investigation numerous times in the Eastern District of Louisiana. *See* C.V. at Attachment "A."

2.  I have been informed by Mr. Williams' counsel that the IRS has stated that it opened a criminal tax investigation into Mr. Williams because (1) Mr. Williams' tax returns reported little profit from 2013 to 2016 and a loss in 2017, (2) Mr. Williams' Schedule C included expenses that the IRS deemed excessive, and (3) Mr. Williams took deductions in excess of $100,000 for "costs of goods sold."

3.  I have reviewed Attachment "B," a spreadsheet generated by the IRS of all tax returns filed by tax preparer Henry J. Timothy from 2013 through 2016.

4.  I have extracted information from that attachment, compared it to information included in the IRS's statistical tables for nonfarm sole proprietorships for 2013 through 2017, available at www.irs.gov/statistics/soi-tax-stats-nonfarm-sole-proprietorship-statistics, and have made the following observations:

1

**<u>Costs of Goods Sold are a common deduction for a law firm.</u>**

5.      According to the Nonfarm Sole Proprietorships: Income Statements, by Industrial Sectors, Tax Year 2013, 2014, 2015, 2016, and 2017, issued by the IRS at www.irs.gov/statistics/soi-tax-stats-nonfarm-sole-proprietorship-statistics, all Schedule C's filed for legal services during those years deducted $13,022,777,000 in costs of sales and operations.

6.      In my experience handling tax returns, it is not unusual for a law firm to take deductions for costs of goods sold.

7.      In 2013, Schedule C's for legal services reported $2,567,658,000 in "costs of sales and operations." *See* Attachment "C," p. 1.

8.      In 2014, Schedule C's for legal services reported $2,297,967,000 in "costs of sales and operations." *Id.* at 2.

9.      In 2015, Schedule C's for legal services reported $2,619,471,000 in "costs of sales and operations." *Id.* at 3.

10.      In 2016, Schedule C's for legal services reported $2,787,434,000 in "costs of sales and operations." *Id.* at 4.

11.      In 2017, Schedule C's for legal services reported $2,750,247,000 in "costs of sales and operations." *Id.* at 5.

12.      Between 2013 and 2017, Schedule C's for legal services reported a total of $13,022,777,000 in "costs of sales and operations," or 6.3% of the total reported revenues of $205,777,556,000. *Id.* at 1-5.

13.      Between 2013 and 2017, Mr. Williams reported a total of $101,009 in costs of goods sold, or 3.1% of his total reported revenues of $3,246,886. *Id.* at 6-15.

14.     Based on the IRS's statistics, Mr. Williams' deduction for costs of goods sold was less than half of the national average and should not have raised a red flag to the IRS.

**Excessive Schedule C expenses are prevalent for most of Mr. Timothy's clients.**

15.     Based on my review of the IRS's spreadsheet of all tax returns filed by Mr. Timothy between 2013 and 2016, it appears that Mr. Timothy took excessive deductions for almost all of his Schedule C clients.

16.     Mr. Timothy's Schedule C clients with gross revenues of more than $100,000 reported an average of 8.44% of their gross revenue as net taxable income. Based on the statistical tables published by the IRS, I would expect Mr. Timothy's Schedule C individuals in this category to report 27% to 30% of their gross revenue as net taxable income. *See* Ex. "D."

17.     Mr. Timothy's Schedule C clients with a gross revenue of more than $200,000 reported an average of 5.81% of their gross revenue as net taxable income. Based on the statistical tables published by the IRS, I would expect Mr. Timothy's Schedule C individuals in this category to report 27% to 30% of their gross revenue as net taxable income. *See id.*

18.     The deviation in net taxable income for Mr. Timothy's Schedule C clients leads me to suspect that Mr. Timothy may have been taking excessive deductions across the board for most or all of his Schedule C clients, and perhaps others.

19.     I also analyzed several discrete industries for Schedule C's and compared Mr. Timothy's Schedule C clients to the IRS's published statistics for those particular industries. For truckers, I found that Mr. Timothy's Schedule C clients were reporting 7.9% of their revenues as taxable income, compared to a national average of 17.02%. For contractors, I found that Mr. Timothy's Schedule C clients reported .55% of their revenues as taxable income, compared to a national average of 25.06%. *See id.*

20.     I also noticed that Mr. Timothy's Schedule C fishermen clients reported $841,785 in revenue but zero taxable income.  And I found that Mr. Timothy's Schedule C security and police detail clients, who I would expect would have little overhead, were deducting more than 65% of their income on average.  This data also leads to me to suspect that Mr. Timothy is taking excessive deductions for his Schedule C clients, for whom he prepared approximately 1,589 returns from 2013 through 2016.

**Many of Mr. Timothy's Schedule C clients reported less profit than that of their peers.**

21.     In addition to reviewing the gross data discussed above, I have compared the tax information of five individual Timothy Schedule C clients who reported nominal taxable income to the tax information for their industry peers.  Mr. Williams reported a higher percentage of his gross revenue as taxable income than all five of those individuals, and in general most of Mr. Timothy's clients reported lower profits than Mr. Williams.

**Mr. Williams appears to be the only Timothy client who is also an elected public official.**

22.    Finally, I caused a search to be made of the database of the Louisiana Ethics Administration Program to determine whether any of the Schedule C clients individuals listed on Attachment "B" filed a Tier 1, 2, or 3 Personal Financial Disclosure Statement—which are required for all elected public officials in Louisiana—from January 1, 2018 to the present. Using the last name, zip code, and business of the individuals listed on Attachment "B," the only individual who filed a financial disclosure was Mr. Williams.

I declare under penalty of perjury that the foregoing is true and correct. Executed on October 19, 2020.

HAROLD A. ASHER

5