UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

*************************************************************
UNITED STATES OF AMERICA

                        Criminal Action Nos. 20-55, 20-139
VS.                     Section "F"
                        New Orleans, Louisiana
                        October 6, 2021

NICOLE BURDETT
*************************************************************

TRANSCRIPT OF MOTION HEARING
HEARD BEFORE THE HONORABLE DANA DOUGLAS
UNITED STATES MAGISTRATE JUDGE


APPEARANCES:

FOR THE GOVERNMENT:         Kelly Uebinger
                            DOJ-USAO
                            800 Lafayette Street
                            Suite 2200
                            Lafayette, LA 70501




FOR THE DEFENDANT:          Michael William Magner
                            Avery Bryce Pardee
                            Jones Walker
                            Place St. Charles
                            201 St. Charles Ave.
                            Suite 5100
                            New Orleans, LA 70170



Transcribed by:             Nichelle N. Wheeler, RPR, CRR
                            500 Poydras Street, B-275
                            New Orleans, Louisiana 70130
                            (504) 589-7775

    Proceedings recorded by audio recording device,
transcript produced via computer.

**EXHIBIT 6**

<u>**P R O C E E D I N G S**</u>

(Call to order of the court.)

THE CASE MANAGER: Criminal Action 2020-055 and 2020-139, *United States of America v. Nicole Burdett,* set for a hearing on Government's Motion for Inquiry Regarding Attorney's Fees and Defendant's Motion to File Financial Affidavit Under Seal.

THE COURT:  Good morning, Counsel.  Will you make your appearances?

THE GOVERNMENT:  Good morning, Your Honor, Kelly Uebinger for the United States.

MR. MAGNER:  Good morning, Your Honor, Mike Magner and Avery Pardee for Nicole Burdett, who is present with me in my office.

THE COURT:  Okay.  All right.  Thank you for that.

Do I -- just out of the abundance of caution, do I have consent from your defense counsel to proceed by video conference?

MR. MAGNER:  You do, Your Honor.

THE COURT:  So we're here basically on four motions, two issues, and that is the government's motion for inquiry and then the defendant's motion to seal the updated financial affidavit, correct?

Okay.  I'll take the motion to seal the updated affidavit first.  Is there anything in addition -- I didn't

1    get any response from the government on that.  Is there

2    anything else that the defense wants to offer in support of

3    that before I entertain the government and make a ruling?

4            MR. MAGNER:  No, Your Honor, just that this is a

5    financial case, a tax case.  There are Fifth Amendment

6    implications here.  The government has not objected to this,

7    and we think in the interest of justice, it's appropriate

8    that the financial affidavit be filed under seal.

9            THE COURT:  Okay.  Counsel for the government, is

10   there any objection?

11           THE GOVERNMENT:  Your Honor, there is an objection.

12   Number one, the government was not -- the government has not

13   received a copy of that motion, so we were unaware of it.

14   And we do object at this point because we believe there are

15   some discrepancies, so the government would like to be

16   entitled to review that information so that it could shed --

17   if we have that information, we would like to be able to shed

18   some light on that information for the Court.  But as I said,

19   we were not served a copy of it until this morning.

20           THE COURT:  Okay.  And my understanding -- if I

21   recall correctly, when we held the initial proceedings, the

22   government did not object to the financial affidavit being

23   under seal; is that correct?

24           THE GOVERNMENT:  That's correct.

25           THE COURT:  But you're objecting --

1          THE GOVERNMENT:  Yes, that is --

2          THE COURT:  For purposes --

3          THE GOVERNMENT:  That is correct, Your Honor.  We

4    believe the circumstances now have changed and then that's

5    our concern and that's why we filed the instant motion.

6          THE COURT:  Okay.  All right.  I am going to grant

7    the motion to seal the updated affidavit with reasons to

8    follow.

9          Next, we're going to the government's motion for

10   inquiry regarding attorney's fees.  Counsel for the

11   government?

12         THE GOVERNMENT:  Yes, Your Honor.  So it's the

13   government's understanding, as you well know, we haven't been

14   privy to either of those affidavits.  We ask that you note

15   our objection for sealing it for the record.  We have no

16   problem with you sealing it, but -- because the government

17   could obtain a copy with it being public record -- we have no

18   objection to it not being public, but the government would

19   request a copy of that affidavit.

20         But the reason we filed this motion, Judge, is

21   because we believe that there's information pertaining to her

22   financial status that has not been provided to the Court.  If

23   Ms. Burdett has disposable income, that should be made known

24   to the Court.  The tax payers are funding this lengthy,

25   complex defense, and if she is busy taking vacations and

1    having extra money to spend on these vacations, that all

2    should be reflected in the affidavit.

3            In addition to that, Ms. Burdett is a person who owns

4    not one, but two residences.  I believe she owns a second

5    home that her mother leases from her and pays her rent.  I

6    believe that she is still employed as a lawyer.  Her husband

7    is gainfully employed and to the best of my knowledge earns

8    approximately $85,000 a year.  It's my understanding that she

9    still has a retained financial advisor.  I mean, again, these

10   are things that people do when they have disposable income.

11   It's my understanding that she has a pool service company

12   that she's retained that comes out monthly.  She maintains

13   her in-ground swimming pool.  It's my understanding that one

14   of her daughters is in private school.  While I understand

15   all of those things may be important to her, we believe

16   that's indication of a disposable income.

17           The other thing that concerns me is when we were

18   present for her initial appearance she did mention on the

19   pretrial services report that she had an outstanding tax

20   liability and that she owed money to Jones Walker.  Again,

21   while I understand all of that, if she's not paying on it,

22   she's not making monthly payments towards that debt, then

23   that should not be counted in determining whether or not she

24   has --

25           THE COURT:  Do you have authority -- do you have

1    authority for the proposition that because someone is not

2    currently making payments on a debt it doesn't count towards

3    their debt in consideration of a financial affidavit?  First,

4    I have not found anything that said that, but do you have

5    authority for that proposition?

6         THE GOVERNMENT:  I do not, Your Honor, and I

7    certainly believe and agree that it's within your discretion.

8         THE COURT:  Because a debt is a debt whether you pay

9    it -- I mean, whether you're currently making payments on it

10   or not, so I was trying to understand the argument that

11   because she is not currently or not able to make the payments

12   how that benefits the government.

13        THE GOVERNMENT:  If she's not making the payments, I

14   think it's a factor the Court should consider to determine

15   whether or not she has some money to contribute towards her

16   court-appointed counsel.  And the fact is if she's taking

17   vacations -- and, frankly, Judge, I don't understand

18   Mr. Magner's response to the issue about the trip with her

19   daughter when he said she only spent $25 on an airplane

20   ticket.  I find that very difficult to believe.  You know, to

21   me, this sounds like a $1,000 weekend.  And, again, the tax

22   payers are funding her defense.

23        If she has $1,000 to fly her daughter, who is eight

24   years old, out of state for a concert for front row seats, a

25   hotel stay, food, airplane tickets, then she should be

1    contributing money to her counsel.  That is the government's

2    point.  And frankly, Judge, the government has an obligation

3    to bring that to your attention and then, you know, for you

4    to fairly --

5        THE COURT:  I don't disagree with the government's

6    obligation to bring the possibility that the defendant is

7    able to contribute to her own defense (unintelligible) so I

8    do appreciate that.

9        Mr. Magner, with regards to the trip to Atlanta, I

10   did note in your opposition memo that Ms. Burdett would

11   accustom that to her (unintelligible) for her daughter of

12   $200 and a companion ticket for $25 (unintelligible) I

13   understand.  However, the response to the other issues that

14   the government brought up were missing, cost for the tickets,

15   whether or not there was additional expenditures for VIP

16   treatment once she, you know -- at the concert, any other

17   related expenses for that vacation.  I do note that the trip

18   to Florida, the defendant claims that someone else paid for

19   that trip, that's not something that she paid for herself.

20   But there was some information that I thought was missing

21   from -- with regards to the trip for the concert.

22       MR. MAGNER:  Yes, Your Honor.  First, I want to say I

23   don't believe the government's motion is in good faith.  I

24   think it is intended as harassment.  I think it also

25   interferes with Ms. Burdett's Sixth Amendment rights to

1    counsel.

2          With regard to the weekend, Your Honor is correct,

3    that was something that her friends paid for for her 40th

4    birthday.  I was mistaken with regard to the Atlanta trip.

5    The $200 and the $25 companion pass are the tickets for this

6    concert with this pre-teen YouTube person.  The child's

7    father is paying on his credit card for the airfare to

8    Atlanta.  Otherwise, Ms. Burdett's financial condition, it is

9    a situation that's worse now than it was when she first

10   qualified for CJA.  She essentially has no income.  There may

11   days she's relying on the kindness of friends, but for her

12   husband and her child -- her husband and the father of the

13   child does help support her.

14         She has an eight-year-old who didn't have a birthday

15   party because of COVID and the family thought that this was

16   an appropriate gift for her.  And I think she's entitled to

17   do that.

18         THE COURT:  Forgive me, but I think you -- I'm still

19   not sure you answered the question.  Now I understand that

20   the husband paid for the airfare to Atlanta.  I still haven't

21   heard anything about the other related expenses.  Is she

22   getting into the concert for free?

23         MR. MAGNER:  No.  No.  That's $200 for the ticket and

24   the $25 for the companion.

25         THE COURT:  So I guess I'm missing airfare.  I'm

1   misunderstanding what is airfare and what is admission,

2   ticket cost and prices because I'm sure the combination is

3   not $225.

4           MR. MAGNER:  No, that's what I was trying to clarify.

5           THE COURT:  Okay.

6           MR. MAGNER:  The tickets for going to the concert are

7   $200 for the child, $25 for Ms. Burdett, and the airfare I

8   think was -- $400?  $400, but Mr. Waguespack is paying.

9           THE COURT:  Okay.  Got it.  So the husband is paying

10  for the airfare.  Ms. Burdett paid for the actual concert

11  tickets.

12          MR. MAGNER:  (Unintelligible).

13          THE COURT:  Has this trip already taken place or has

14  yet to take place?

15          MR. MAGNER:  Yet to take place.  And the grandmother

16  is paying for the hotel room?

17          THE DEFENDANT:  Correct.

18          MR. MAGNER:  $120 for the hotel room.

19          THE COURT:  All right.  Thank you.

20          Anything else from the government?  Or is there

21  anything else that you wanted to offer, Mr. Magner?

22          MR. MAGNER:  No, just we submitted the updated

23  affidavit.

24          THE COURT:  I think probably out of the abundance of

25  caution again it probably is best that I -- and I'll hear

1    from the government first, but I think it's probably best

2    that I put Ms. Burdett under oath to make sure that she

3    attests to the truthfulness of this affidavit as well because

4    regardless of where we come out -- not at the moment.  I'm

5    going to wait and hear the government's additional arguments,

6    but I just want to make sure we get that on the record.

7              Give me one second.

8              All right.  Does the government have anything else to

9    offer with regards to the motion for inquiry?

10             THE GOVERNMENT:  No, Your Honor.  I would just

11   reiterate that that weekend is a $750 weekend.  That doesn't

12   include the cost of eating out food, incidentals.

13             In addition, we know the daughter did have a birthday

14   party.  And nobody's trying to say that her daughter

15   shouldn't get a present for her birthday.  We all understand

16   that, but it's just really frustrating to the government that

17   pending trial she has two court-appointed attorneys on tax

18   payer's money and she's having an almost $1,000 weekend out

19   of town, you know, to celebrate her daughter's birthday.  And

20   if she does have that kind of money and if that's her

21   mindset, that she can continue to travel and to live her life

22   as she did prior to this indictment, then she should

23   contribute something to the appointment of these two

24   attorneys.

25             THE COURT:  Do you have any reason to dispute that

1  both expenses are not entirely being covered by Ms. Burdett?

2      THE GOVERNMENT:  Well, Your Honor, first of all,

3  she's married, so her husband's paying for it.  I mean, that

4  should be taken into consideration because Mr. Magner is

5  representing and has represented in his response that they're

6  living off of the husband's salary.  And so, therefore,

7  because of not having enough money, she herself is indigent.

8  Well, obviously, if he has the credit, the wherewithal to

9  afford $400 in plane tickets for an eight-year-old's

10 birthday, yes.  So I think you should certainly consider that

11 and his income as well should be considered.  That's what

12 happens when people are married.  They share income and

13 expenses.  And so my point is they have the disposable income

14 if they can afford this expensive trip for an eight-year-old.

15     THE COURT:  All right.  Thank you for that.

16     So I am going to grant the motion for inquiry, but I

17 am going to take it under advisement.  Ms. Burdett -- and

18 I'll issue a ruling on that shortly as well.

19     Ms. Burdett, in connection with the request that you

20 are able to remain with appointed counsel, I have received a

21 financial affidavit.  I need to ask you questions about the

22 affidavit to confirm that the information in it is true.  I

23 won't ask questions about your case, only questions to

24 confirm the information that's contained in an updated

25 financial affidavit.  Those questions will need to be

1    answered under oath, so that if you provide information you

2    know to be false, you may be subject to additional penalties

3    for perjury.

4           Please swear in Ms. Burdett.

5           THE CASE MANAGER:  Ms. Burdett, please raise your

6    right hand.

7                  (Defendant administered oath.)

8           THE DEFENDANT:  Yes.

9           THE CASE MANAGER:  Please state your name for the

10   record?

11          THE DEFENDANT:  Nicole Burdett-Waguespack.

12          THE CASE MANAGER:  Thank you.

13          THE COURT:  All right.  Ms. Waguespack, the

14   information that I have in the affidavit, it says that it was

15   completed on or about September 30th of 2021; is that

16   correct?

17          THE DEFENDANT:  Yes, Your Honor, that's correct.

18          THE COURT:  All right.  And as provided by your

19   lawyer here in court, it says that you are currently -- you

20   are currently employed, but you are -- Mr. Magner said that

21   you are (unintelligible) -- what was -- is that correct?

22          THE DEFENDANT:  That's correct, Your Honor.  I'm

23   self-employed.  There hasn't been a drop in my

24   (unintelligible) in excess of (unintelligible).

25          THE COURT:  And the change from your last -- the last

1   affidavit that you submitted to the Court said that you were

2   employed with Williams & Associates.  The current affidavit

3   says that you are self-employed.  So tell me how there's been

4   a change in your --

5        THE DEFENDANT:  I'm a partner.  I'm a partner, Your

6   Honor.  So I was just expressing that I am a partner.  So I

7   am self-employed in the sense that it is my firm.

8        THE COURT:  You're still employed by Williams &

9   Associates, correct?

10       THE DEFENDANT:  Yes.

11       THE COURT:  Thank you for that clarification.

12       All right.  Is the information that you provided with

13  regard to the updated financial affidavit true and correct to

14  the best of your knowledge?

15       THE DEFENDANT:  Yes, Your Honor.  In addition, I do

16  know that this is a different form than the form I filled out

17  the first time.  There was a spot on the prior one that

18  allowed me to list any other income.  I did not see where

19  there was a spot for that on this financial affidavit, but I

20  just wanted to say that I do as stated in the other affidavit

21  receive $500 a month in rent from my mother for the property

22  located at 3403 East (unintelligible) Drive.  In addition to

23  that, she does also contribute $141 a month to her car

24  insurance.  I do pay a monthly installment on the car

25  insurance and that vehicle is in my name and insured under my

1  policy, but she does contribute $141 for that.  I just did

2  not see a place to attach that.

3       THE COURT:  The form has indeed changed.  Another

4  notable change from the last form is that the previous form

5  asks whether or not you are married and what the income of

6  your spouse is.  The current form does not request that

7  information.  Is there any change in the employment status or

8  income for your spouse?

9       THE DEFENDANT:  No, ma'am.

10       THE COURT:  Okay.  All right.

11       THE DEFENDANT:  Oh, also, Your Honor, I did hear the

12  government assert that my husband makes $85,000 a year.  Not

13  certain that that is accurate.  (Unintelligible) he can make

14  -- he has a salary of 62,5- and he does make commission

15  monthly.  I don't know exactly what his salary is, but then

16  he does get a commission.  So if the government may have

17  reviewed a record in the past and it would show that maybe

18  his overall for the year was 85, that's not -- that is not

19  (unintelligible) because it is drawn on commission each

20  month.  He does get a commission check.

21       THE COURT:  Is the amount that you listed in the

22  previous affidavit just based on salary or commission or a

23  combination of the two?

24       THE DEFENDANT:  That includes the commission, yes.

25  He gets 1,500 every two weeks and his commissions range

1   between 1,000 and 1,500 a month just depending on the month.

2   So 4,200 is accurate.

3          THE COURT:  All right.

4          THE DEFENDANT:  Just his take home, I'm assuming

5   that's what the Court's asking for.

6          THE COURT:  All right.  Thank you for that.

7          I am going to issue an opinion after this hearing has

8   completed with regards to the defendant's entitlement to the

9   court-appointed counsel, continued court-appointed counsel.

10  Okay?

11         THE GOVERNMENT:  Thank you, Your Honor.

12         THE COURT:  All right.  Thank you.

13                         * * * *

14     (WHEREUPON, the proceedings were adjourned.)

15                         * * * *

16                REPORTER'S CERTIFICATE

17         I, Nichelle N. Wheeler, RPR, CRR, Official Court
    Reporter, United States District Court, Eastern District of
18  Louisiana, do hereby certify that the foregoing is a true and
    correct transcript, to the best of my ability and
19  understanding, from the record of the proceedings in the
    above-entitled and numbered matter.

20

21               /s/ Nichelle N. Wheeler
                 Official Court Reporter
22

23

24

25

──────── OFFICIAL TRANSCRIPT ────────
Page 15