UNITED  STATES  DISTRICT  COURT

EASTERN  DISTRICT  OF  LOUISIANA


| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION |
| v. | NO. 20-55 |
| JASON WILLIAMS AND NICOLE BURDETT | SECTION "F" |

ORDER AND REASONS

New  Orleans  District  Attorney  Jason  Williams  and  his  former law  partner,  Nicole  Burdett,  are  scheduled  to  stand  trial  on January  24,  2022  on  11  federal  criminal  charges  including conspiracy  and  tax  fraud  relative  to  the  preparation  of  Jason Williams's personal income tax returns for tax years 2013 through 2017  as  well  as  failing  to  file  IRS  forms  8300  to  report  cash payments  from  clients  exceeding  $10,000  for  legal  services provided by his law firm, Jason Rogers Williams & Associates, LLC. On  the  same  trial  date,  Ms.  Burdett  is  also  scheduled  to  stand trial on four separately indicted substantive counts of making and subscribing false tax returns relative to her personal income tax returns for tax years 2014 through 2017.  Among other elements the government  must  prove  beyond  a  reasonable  doubt,  it  must  prove that  Mr.  Williams  and  Ms.  Burdett  acted  willfully  in  committing the  charged  conduct.  Before  the  Court  are  government  notices  and

1

motions by the parties seeking rulings on the admissibility of certain evidence to be offered at the upcoming trial:

1. The government's notice of intent to introduce intrinsic and Rule 404(b) evidence (Rec.Doc. 138);

2. The government's supplemental notice of intent to introduce intrinsic and Rule 404(b) evidence (Rec.Doc. 150);

3. The government's motion *in limine* to preclude improper character evidence, for notice of character evidence, and to preclude the introduction of character evidence on cross-examination (Rec.Doc. 196);

4. The government's motion *in limine* to permit at trial "lifestyle" evidence (Rec.Doc. 197);

5. The government's motion *in limine* to preclude evidence or argument regarding grounds asserted in motions to dismiss (Rec.Doc. 198);

6. The government's motion *in limine* to preclude references to punishment or adverse consequences resulting from a conviction (Rec.Doc. 199); and

7. The defendants' motion *in limine* (Rec.Doc. 207).

For the reasons that follow, some motions are GRANTED, some are DENIED, and some rulings are DEFERRED as follows and as summarized at the conclusion of this Order and Reasons.

## Background

On June 26, 2020, a federal grand jury returned an 11-count indictment, charging Jason R. Williams and Nicole E. Burdett with one count of conspiracy to defraud the United States, in violation of 18 U.S.C. § 371 (Count 1); five counts of aiding and assisting in the preparation and presentation of false and fraudulent tax

2

returns, in violation of 26 U.S.C. § 7206(2) (Counts 2, 3, 4, 5, and 6);[1] and five counts of failing to file IRS Forms 8300 relating to cash received in trade or business, in violation of 31 U.S.C. §§ 5331 and 5322 (Counts 7, 8, 9, 10, and 11).[2]  The conspiracy allegedly spans 2011 through 2019 and the fraudulent tax return charges concern Jason Williams's individual personal income tax returns for tax years 2013 through 2017.  The conspiracy count alludes not just to Jason Williams and Nicole Burdett, but also to "other[]" co-conspirators -- "both known and unknown to the Grand Jury" -- whom all assisted in falsifying Jason Williams's 1040 tax returns for the years 2013 through 2017 by falsely and fraudulently overstating Schedule C (Profit and Loss from a Business) expenses. It is now well known that convicted felon Henry Timothy, the tax preparer for both Jason Williams and his law partner Nicole Burdett for the charged tax years, is a co-conspirator referenced in the

---

[1] Each charged § 7206(2) violation concerns allegedly inflated Schedule C business expenses in the amount of: $200,000 (tax year 2013; Count 2); $90,000 (tax year 2014; Count 3); $170,000 (tax year 2015; Count 4); $140,000 (tax year 2016; Count 5); $120,000 (tax year 2017; Count 6).  The government alleges that the defendants misclassified Jason Williams's personal expenses as business expenses and provided this false information to tax preparer, Henry Timothy, for inclusion on the Schedule C (profit and loss from a business) portion of Mr. Williams's tax returns; and that these allegedly fraudulent tax returns reduced Williams's tax liability in excess of $200,000.

[2] Each charged §§ 5331 and 5322 violation concerns an occasion in which Mr. Williams and Ms. Burdett allegedly willfully failed to report cash payments in excess of $10,000 from clients for legal services; five occasions between June 2017 and August 2018, for a total of $66,516.

indictment whom also allegedly aided and assisted in the preparation and presentation of Mr. Williams's allegedly false returns.

The indictment in Criminal Action Number 20-55 was returned while Mr. Williams was a city councilman campaigning to be Orleans Parish District Attorney; an office he now holds.  As for the conspiracy and preparation of fraudulent tax returns charges, Mr. Williams and Ms. Burdett have contended in motion practice directed to their claims of selective and vindictive prosecution that they were improperly singled out from hundreds of other clients of their tax preparer, convicted felon Henry Timothy, whom they relied upon to determine which law firm expenses should be deducted on Jason Williams's tax returns for the charged tax years.[3]

This Order and Reasons assumes familiarity with prior motion practice, proceedings, and Orders and Reasons.  After granting the defendants' request for limited discovery on their selective and vindictive prosecution theories (but denying without prejudice dismissal of the indictment), an evidentiary hearing was conducted on October 22, 2020.  Four government agents, along with a defense

---

[3] As for the Title 31 charges, Mr. Williams and Ms. Burdett are the only individuals to be charged with willfully failing to file a Form 8300 in the Eastern District of Louisiana at least in the past 50 years. Whether this fact is relevant evidence that may be admitted at trial is fodder for one of the many pending pretrial motions.

expert Certified Public Accountant, testified and documentary evidence was submitted by all parties.  One of the many theories of vindictive prosecution predicating the defendants' motion was Ms. Burdett's claim that the government was harassing her family members and threatening to indict her separately as it actively investigated her for alleged fraudulent personal tax returns, which Henry Timothy also prepared.  With the same IRS special agent and relying on Mr. Timothy as a cooperating witness, the government investigated and opted to pursue a case against Ms. Burdett after she declined the government's request that she agree to cooperate against Mr. Williams in Criminal Action Number 20-55.

Meanwhile, on December 5, 2020, Jason Williams was elected District Attorney for Orleans Parish; the day prior to the run-off election, on December 4, 2020, Nicole Burdett was separately indicted on four counts of making and subscribing a false tax return, in violation of 26 U.S.C. § 7206(1), concerning her personal tax returns for tax years 2014 through 2017.[4]  Notably,

---

[4] Each charged § 7206(1) violation concerns a particular tax year's Form 1040 tax return that was allegedly false and fraudulent insofar as Nicole Burdett filed as Head of Household, despite being married, and the tax return allegedly contained false and fraudulent Schedule C business expenses exceeding a certain amount, causing Nicole Burdett to qualify for the Earned Income Tax Credit:  Count 1 relates to tax year 2014 and allegedly false Schedule C expenses exceeding $50,000; Count 2 relates to tax year 2015 and allegedly false Schedule C expenses exceeding $70,000; Count 3 relates to tax year 2016 and allegedly false Schedule C expenses exceeding $100,000; Count 4 relates to tax year 2017 and allegedly false Schedule C expenses exceeding $60,000.

no conspiracy is charged in Criminal Action Number 20-139 relative to her individual tax returns.  That case was randomly allotted to another Section of Court, which granted Ms. Burdett's motion to transfer the case to this Section of Court given the relatedness of pretrial issues presented in the cases and to prevent duplication of pretrial proceedings and inconsistent rulings.[5]

The later-indicted case, Criminal Action Number 20-139, concerns Ms. Burdett's personal tax returns for the same tax years -- save 2013 -- as those charged in Criminal Action Number 20-55 (relating to Jason Williams's personal tax returns for which she and Mr. Williams are both charged with conspiracy and substantive counts).[6]  There is no dispute that the separate, later indictment was returned as a result of the investigation into Jason Williams and Nicole Burdett, and specifically as a result of her failure to cooperate against her former law partner.  The theory of the

---

[5] In between the June 2020 indictment and Ms. Burdett's December 2020 indictment, on September 22, 2020, the government filed a bill of information charging Mr. Williams's and Ms. Burdett's former tax preparer, Henry Timothy, with four counts of willfully making a false tax return, in violation of 26 U.S.C. § 7206(1), related to falsifying his own Schedule C gross receipts, Criminal Action Number 20-99.  On January 7, 2021, Henry Timothy pled guilty to one count of filing a false tax return for tax year 2013.  The Court has previously observed that Timothy's credibility and the extent of his cooperation with federal prosecutors will surely be powerfully placed at issue at the trial of his former tax return clients.
[6] Meanwhile, on January 8, 2021, the Court denied the defendants' renewed motions to dismiss the indictment for selective and vindictive prosecution.

6

government's case in Criminal Action Number 20-139 is that Nicole Burdett worked with tax preparer Henry Timothy to accomplish the same tax evasion objectives for herself that she, Jason Williams, and Henry Timothy allegedly did for Mr. Williams. Claiming that the cases could have been properly joined under the Federal Rules of Criminal Procedure, Ms. Burdett requested that the cases be tried together; the Court granted the motion over the government's objection.

A flurry of pretrial notices and motions bearing on the admissibility of evidence that the parties seek to admit or exclude at the upcoming January 24, 2022 trial have been filed: (1) the government notices its intent to introduce intrinsic and Rule 404(b) evidence; (2) the government supplements its notice of intent to introduce intrinsic and Rule 404(b) evidence; (3) the government moves *in limine* to preclude improper character evidence, for notice of character evidence, and to preclude the introduction of character evidence on cross-examination; (4) the government moves *in limine* to permit at trial "lifestyle" evidence; (5) the government moves *in limine* to preclude evidence of argument regarding grounds asserted in motions to dismiss; (6) the government moves *in limine* to preclude references to punishment or adverse consequences resulting from a conviction; and (7) the defendants move *in limine* to preclude certain categories of evidence.

I.

*A.*

Mindful that the allegations of the indictments and elements of the charges inform the Court's application of the Federal Rules of Evidence and thus determination of the admissibility of evidence at trial, the Court hereby incorporates by reference the relevant Fifth Circuit pattern jury instructions relative to the conspiracy charge (18 U.S.C. § 371; Fifth Circuit Pattern Instruction 2.15B) and the substantive offenses of aiding or assisting in preparation of false documents under internal revenue laws (26 U.S.C. § 7206(2); Instruction 2.104B), failing to file Forms 8300 (31 U.S.C. § 5331, 5322; there is no pattern instruction), and, as against Ms. Burdett only, making false statements on an income tax return (26 U.S.C. § 7206(1); Instruction 2.104A).[7]

At this stage of the proceedings, it is undisputed that the government must prove beyond a reasonable doubt that Mr. Williams and Ms. Burdett acted "willfully."[8]  To act willfully, in criminal

---

[7] The Court underscores that no conspiracy is charged as to Ms. Burdett's personal income tax returns.

[8] For the purposes of resolving the pending motions, the Court assumes without deciding that the government knows its burden is to prove a *willful* failure to file Forms 8300 because the government says so in its papers, but the Court takes some pause given the rarity of such prosecutions combined with the government's ostensible typographical error in the indictment in reference the applicable section of the Code of Federal Regulations (recodified as § 1010.30 ten years ago).  Of course, this issue will be briefed and counsel will submit proposed jury charges closer to the trial date.

cases charging tax evasion, means a voluntary, intentional violation of a known legal duty.  See, e.g., Cheek v. United States, 111 S. Ct. 604 (1991), as discussed in the Notes to Fifth Circuit Pattern Instruction 1.43 "'Willfully' – To Act."

*B.*

Various evidentiary rules and tests are implicated by the government's notices of intent to introduce "other acts" evidence and the parties' motions *in limine* to exclude or admit evidence. Article IV of the Federal Rules of Evidence governs "Relevance and Its Limits."  Relevancy generally cannot be assessed in a vacuum on a cold record given that "[r]elevancy is not an inherent characteristic of any item of evidence but exists only as a relation between an item of evidence and a matter properly provable in the case."  See Huddleston v. United States, 485 U.S. 681, 688 (1988)(citing Advisory Committee's Notes on Rule 401).

All admissibility questions begin with Rule 402, which announces the general principle that "[r]elevant evidence is admissible" and "[i]rrelevant evidence is not[.]"  Rule 401 fashions the well known test for relevance and its attendant requirements that the evidence be probative and material:

Evidence is relevant if:
(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and
(b) the fact is of consequence in determining the action.

Even if relevant, evidence may be excluded by the Court "if its probative value is substantially outweighed by a danger of ... unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.[9]  Rule 404 concerns character and "other act" evidence, while Rule 405 governs methods for proving character, and Rule 608 addresses a witness's character for truthfulness or untruthfulness.

> **Rule 404. Character Evidence; Other Crimes, Wrongs, or Acts**
>
> (a) Character Evidence.
>
> (1) Prohibited Uses. Evidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait.
>
> (2) Exceptions for a Defendant or Victim in a Criminal Case. The following exceptions apply in a criminal case:
>
> (A) a defendant may offer evidence of the defendant's pertinent trait, and if the evidence is admitted, the prosecutor may offer evidence to rebut it;
>
> [...]
>
> (3) Exceptions for a Witness. Evidence of a witness's character may be admitted under Rules 607, 608, and 609.
>
> (b) Other Crimes, Wrongs, or Acts.
>
> (1) Prohibited Uses. Evidence of any other crime, wrong, or act is not admissible to prove a person's

---

[9] Unfair prejudice is the "capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged." Old Chief v. United States, 519 U.S. 172, 180 (1997).

character in order to show that on a particular occasion the person acted in accordance with the character.

(2) Permitted Uses.  This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.

(3) Notice in a Criminal Case. In a criminal case, the prosecutor must:

(A) provide reasonable notice of any such evidence that the prosecutor intends to offer at trial, so that the defendant has a fair opportunity to meet it;

(B) articulate in the notice the permitted purpose for which the prosecutor intends to offer the evidence and the reasoning that supports the purpose; and

(C) do so in writing before trial -- or in any form during trial if the court, for good cause, excuses lack of pretrial notice.

While Rule 404 governs whether character evidence may be admitted, once admissibility is established, the Court turns to Rule 405 to determine the appropriate method of proof.  See Fed. R. Evid. 404, Notes of Advisory Committee.

**Rule 405. Methods of Proving Character**

(a) By Reputation or Opinion. When evidence of a person's character or character trait is admissible, it may be proved by testimony about the person's reputation or by testimony in the form of an opinion. On cross-examination of the character witness, the court may allow an inquiry into relevant specific instances of the person's conduct.

(b) By Specific Instances of Conduct. When a person's character or character trait is an essential element of a charge, claim, or defense, the character or trait may also be proved by relevant specific instances of the person's conduct.

Rule 608 governs admissibility of evidence bearing on a witness's character for truthfulness or untruthfulness.

Mindful of these evidentiary principles -- in particular, Rule 403's balancing test -- the Court turns to consider the parties' specific debates.  To be sure, some issues are best resolved in the context of trial rather than on a cold, pretrial "record."

## II.

### *A.*

The Court first takes up the government's notice and supplemental notice in which it seeks an order admitting certain evidence as intrinsic to the crimes charged or, alternatively, extrinsic "other act" evidence pursuant to Rule 404(b).

### 1. Intrinsic Evidence

Courts classify "other act" evidence as either intrinsic or extrinsic to the charged offense.  Generally, "[o]ther act evidence is 'intrinsic' when the evidence of the other act and the evidence of the crime charged are 'inextricably intertwined' or both acts are part of a 'single criminal episode' or the other acts were 'necessary preliminaries' to the crime charged." United States v. Carrillo, 660 F.3d 914, 927 (5th Cir. 2011)(quoting United States v. Rice, 607 F.3d 133, 141 (5th Cir. 2010)(citations omitted)). Intrinsic "other act" evidence does not implicate Rule 404(b).

United States v. Rice, 607 F.3d 133, 141 (5th Cir. 2010)(citing United States v. Garcia, 27 F.3d 1009, 1014 (5th Cir. 1994)). Rather, it is generally admissible to "complete the story of the crime by proving the immediate context of events in time and place," and to "evaluate all of the circumstances under which the defendant acted." Rice, 607 F.3d at 141 (quoting United States v. Coleman, 78 F.3d 154, 156 (5th Cir. 1996) and United States v. Randall, 887 F.2d 1262, 1268 (5th Cir. 1989)).

"Evidence is intrinsic to a conspiracy if it is relevant to establish how the conspiracy came about, how it was structured and how the [defendant] became a member." United States v. Watkins, 591 F.3d 780, 784 (5th Cir. 2009). When a conspiracy is charged, "evidence of acts committed pursuant to a conspiracy and offered to prove the defendant's membership or participation in the conspiracy are not extrinsic evidence[.]" United States v. Garcia Abrego, 141 F.3d 142, 175 (5th Cir. 1998)(citations omitted). Rather, "[a]cts committed in furtherance of the conspiracy are themselves part of the act charged." Id. "Thus, evidence of such acts constitutes intrinsic evidence—that is, direct evidence of the charged conspiracy itself." Id.

2. Extrinsic "Other Act" Evidence:  Rule 404(b)

Whereas intrinsic other act evidence is generally admissible, when evidence of other acts is extrinsic to the crime charged,

13

admissibility is governed by Rule 404(b) of the Federal Rules of Evidence, which states:

> **(b) Crimes, Wrongs, or Other Acts**
>
> (1) Prohibited Uses.  Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.
>
> (2) Permitted Uses; Notice in a Criminal Case. This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. . . .

Fed. R. Evid. 404(b).  "Although[] 'propensity evidence' is relevant," the Supreme Court has cautioned that, "the risk that a jury will convict for crimes other than those charged—or that, uncertain of guilt, it will convict anyway because a bad person deserves punishment—creates a prejudicial effect that outweighs ordinary relevance."  See Old Chief v. United States, 519 U.S. 172, 180-81 (1997)(citation omitted)("unfair prejudice" includes inviting improper "generaliz[ation] that a defendant's earlier bad act [equates with] bad character and taking that as raising the odds that he did the later bad act now charged (or, worse, as calling for preventive conviction even if he should happen to be innocent momentarily)").  To be sure, Rule 404(b)'s purpose is to "guard against the inherent danger that the admission of 'other acts' evidence might lead a jury to convict a defendant not of the charged offense, but instead of an extrinsic offense."  United

States v. Crawley, 533 F.3d 349, 353 (5th Cir. 2008)(quoting United States v. Sumlin, 489 F.3d 683, 689 (5th Cir. 2007)).  "Where the extrinsic activity did not result in a conviction, this danger is particularly great."  Id.

The Fifth Circuit has fashioned a two-part test to determine whether extrinsic evidence is admissible under Rule 404(b).  United States v. Sanders, 343 F.3d 511, 517-18 (5th Cir. 2003)(citing United States v. Beechum, 582 F.2d 898, 909-18 (5th Cir. 1978)(en banc)).  First, the Court determines whether the evidence is "relevant to an issue other than the defendant's character."  Crawley, 533 F.3d at 354 (citation omitted).  Second, if the evidence is relevant for at least one permissible purpose, then the Court determines "whether, consistent with Rule 403, the evidence 'possess[es] probative value that is not substantially outweighed by its undue prejudice."  Id. (citation omitted).

Assessing whether extrinsic evidence is relevant to the offense charged includes assessing whether the other act is similar in kind to the crime charged.  See Beechum, 582 F.2d at 911 (relevance of other act "is a function of its similarity to the charged offense").  Where the purpose for which the other act is offered is the issue of intent, "the relevancy of the extrinsic offense derives from the defendant's indulging himself in the same state of mind in the perpetration of both the extrinsic and charged

offenses." <u>Id.</u> (if "the defendant had unlawful intent in the extrinsic offense, it is less likely that he had lawful intent in the present offense.").   Of course, evidence of other similar acts is relevant only if the government proves that the acts actually occurred and that the defendant committed the acts.   To evaluate this, the Court considers whether "the jury could reasonably find the conditional fact . . . by a preponderance of the evidence." <u>Huddleston v. United States</u>, 485 U.S. 681, 689-92 (1988)(citing Rule 104(b)).   The government meets this standard by providing "some evidence that the defendant committed the bad act." <u>Crawley</u>, 533 F.3d at 354.

Finally, when evaluating the probative value of proffered Rule 404(b) evidence against its undue prejudicial effect under Rule 403 (step 2 of <u>Beechum</u>), the Court examines factors including "(1) the government's need for the extrinsic evidence, (2) the similarity between the extrinsic and charged offenses, (3) the amount of time separating the two offenses, and (4) the court's limiting instructions."   <u>United States v. Kinchen</u>, 729 F.3d 466, 473 (5th Cir. 2013)(citations omitted).

16

*B. Application*

1.  Evidence of Tax Conduct in Years Prior to Charged Conduct

    a. Nicole Burdett

    The government moves to admit Ms. Burdett's and her husband's returns for tax years 2011 through 2013; these returns were prepared by Timothy and similar to the charged counts, filed as Head of Household, claimed an Earned Income Credit, had excessive Schedule C expenses, resulting in reduced income tax liability.[10]  Ms. Burdett "agrees that her tax returns prepared by Timothy for years 2011-2013 are necessary to 'complete the story' of Timothy's false representations to Ms. Burdett that he was a CPA, to explain the nature of the errors that Timothy made on Ms. Burdett's returns, and to show Ms. Burdett's lack of any willfulness."  Because Ms. Burdett does not oppose introduction of this concededly relevant evidence, the government may admit evidence of Ms. Burdett's tax returns for tax years 2011-2013.

---

[10] It is unclear from the government's argument whether they seek to admit these prior tax returns as intrinsic or extrinsic evidence.  Because Ms. Burdett does not oppose admission and concedes that the tax returns filed for tax years prior to the indicted years, the Court need not resolve a non-existent debate.  However, the Court observes that the government did not charge Ms. Burdett with a conspiracy relative to her individual returns; regardless, the 2011-2013 tax returns indisputably prepared by Henry Timothy are at the very least "other act" evidence similar and relevant to the charged conduct forming the basis of Criminal Action 20-139.

b. Jason Williams

The government moves to admit evidence relating to "Williams' handling of his income taxes prior to the tax years charged in the indictment (beginning in tax year 2002 and continuing through tax year 2012)[.]"  In its papers notifying Mr. Williams of its intent to do so, the government addresses the legal standard for admitting intrinsic evidence, but does not apply it; its arguments to admit other act evidence focuses on Rule 404(b) and Beechum standards.   Mr. Williams seizes on this purported deficiency to argue that the government has waived any argument concerning the intrinsic nature of this evidence relative to these early tax years and the charged conspiracy and substantive counts. Accordingly, the issues presented include whether the government can and has waived the argument; if so, whether the evidence is admissible extrinsic evidence; if so, whether it is nonetheless excludable under Rule 403's balancing test.

Even assuming that the government can waive an argument that certain evidence is admissible intrinsic evidence,[11] it does not appear that the government waived its argument here.  In other words: even absent notice, the government may introduce certain limited evidence concerning Mr. Williams's "tax history" as

---

[11] Rule 404(b)'s notice requirement applies only to Rule 404(b) evidence; intrinsic evidence is not subject to Rule 404(b) strictures.

intrinsic to the conspiracy charge insofar as it provides context and completes the story.[12]   However, the universe of prior tax history which the government seeks to admit expands beyond evidence that may be classified as intrinsic to the charged conspiracy.[13] The Court considers the line-drawing issue now.

Determining the admissibility tax returns or tax conduct prior to or surrounding charged tax conduct necessarily is context- and charge-specific.   Certain limiting principles distilled from the case literature are only somewhat helpful to the task.   Prior non-compliant tax conduct may be admissible if the prior tax acts are identical or sufficiently similar in kind to the tax crime charged and relevant to intent in a criminal tax prosecution.[14]

---

[12] During oral argument, counsel for the government stated that Mr. Williams's tax history is relevant to the charges insofar as "Henry Timothy is involved with the before ... and that's crucial to show that he came in, he amended those returns, and that's what started this whole thing."   Of course, Henry Timothy's involvement is intrinsic to the conspiracy charge.   Similarly, insofar as the government submits that certain late tax payments for "before" tax year debts were improperly deducted (with Henry Timothy at the helm as tax preparer) as business expenses on tax returns prepared by Henry Timothy during the charged tax years, presumably the government will proffer such evidence in limited fashion as evidence intrinsic to the conspiracy or respective substantive tax fraud counts.

[13] At oral argument, counsel for the government calls such evidence (starting in 2002) "the 'before' extrinsic evidence."

[14] "Evidence of willfulness includes a defendant's history of previously filing accurate tax returns and his receipt of warning notices from the IRS."   United States v. Boyd, 773 F.3d 637, (5th Cir. 2014)(in prosecution for evading income taxes in 2004-2006 in which the defendant declared he had zero income and zero tax liability, district court did not abuse its discretion in admitting tax transcripts and tax returns for surrounding tax years)(citing

But this is nothing more than a more specific application of the general rules of admission of "other act" evidence.  That is, the Court first must assess the similarity of prior tax conduct to charged tax conduct to determine if it is relevant to an issue other than the defendant's character.

Insofar as the government seeks to introduce evidence concerning the genesis of the alleged conspiracy: that Mr. Williams hired Henry Timothy in 2011 (or whichever year the trial record establishes) to amend prior returns and then to prepare those which are the subject of the indictment's substantive counts, such evidence is admissible intrinsic evidence.[15]  However, insofar as

---

United States v. Shivers, 788 F.2d 1046, 1048-49 (5th Cir. 1986)); cf. United States v. Wade, 585 F.2d 573, (5th Cir. 1978)(in prosecution for willfully failing to file income tax returns for years 1972 and 1973, evidence that Wade filed returns in 1968 and 1969 and that the IRS sent him a letter in 1974 advising him that his 1973 return did not comply with tax laws and would subject him to criminal penalties unless corrected "would support a finding that Wade knew the law required him to file returns and that he intentionally failed to file without justifiable excuse"); United States v. Harris, 517 F.2d 226, 229 (7th Cir. 1975)(in prosecution for failure to file income tax returns for 1969, 1970, and 1971, the district court did not err in admitting evidence of the defendant's failure to file returns in years before and after the three years for which he was charged, noting that "the other offenses involved were identical to those charged.").

[15] Indeed, counsel for Mr. Williams essentially conceded at oral argument that evidence limited to addressing how the relationship between Henry Timothy and the defendants began would be admissible:

> Q: Why isn't it relevant, at the very least, for the government to need to prove how the relationship between Timothy and the defendants came about?
> A: Judge, I think if this were limited to a simple question of, you know, "Did he hire you to do amended

the government seeks to introduce extrinsic evidence which predates Timothy being hired or otherwise pertains to Mr. Williams's mere "civil" back-and-forth with the IRS in years preceding the indicted tax years,[16] the government has failed to persuade the Court how this extrinsic other act evidence is sufficiently similar to the charges and, even if marginally so (and thus probative), how it survives Rule 403's balancing test.

The government's intent to introduce about 10 years' worth of Mr. Williams's civil "tax history" fails both of Beechum's requirements. First, these extrinsic acts (for example, late filings or late payments) are insufficiently similar to the charged conduct (willfully ordering Mr. Timothy to inflate business expenses to reduce taxable income). Symmetry of prior and charged conduct is a necessary predicate for admissibility under Rule 404(b). The government's argument that prior delinquencies in filing or paying taxes equate with willful intent to take fraudulent or improper deductions is unpersuasive. The qualitative

---

tax returns?" we probably wouldn't have a problem with that[.]

[16] As for the government's proffered "before" evidence, counsel for the government stated that it shows that Mr. Williams is "very familiar with how the IRS works":

During that time period, it was just a civil matter and they were back and forth. Nobody is arguing that it wasn't a civil matter. We know that, but we think that Mr. Timothy and the IRS should be able to tell that part of the story, that this isn't a person -- because Mr. Williams, again, is arguing that all of this was Henry Timothy[.]

differences in the nature of Mr. Williams's civil tax history (delinquencies) predating the charged conduct compared to the nature of the criminally charged conduct (willfully instructing a tax preparer to increase Schedule C expenses to fraudulently reduce tax liability -- active participation in making false statements) implicates different sorts or levels of intent, which undermines the government's argument that the prior civil tax history is relevant for the permissible purpose of intent.

Second, even assuming Mr. Williams's late filings or late payments are marginally probative of Mr. Williams's willfulness to commit tax fraud, the Court finds that it fails Rule 403's balancing test. The probative value of delinquent filings or payments (and attendant civil penalties) is substantially outweighed by the danger of: (i) unfair prejudice;[17] (ii) confusing the issues and misleading the jury (particularly given the distinction between the other "civil" acts and the charged criminal ones);[18] and (iii) waste of time (given the sheer number of years

_____

[17] The government fails to persuade the Court that it has a propensity-free chain of reasoning supporting introduction of civil tax delinquencies. Rather, the government says, Mr. Williams obstructed the IRS in its collection of taxes before, which shows that he did so again for the indicted years. The government's evidence concerning Mr. Williams's "longstanding battle with the IRS," the government's hypothesis of relevance goes, shows that Mr. Williams is the type of person who commits tax fraud; this civil tax history evidence has an undue tendency to suggest decision on an improper basis.

[18] The Court is concerned that introduction of Mr. Williams's civil tax history dating back to 2002 is not only too dissimilar to the

22

the government includes in the "civil tax history"). Finally, the Court is not persuaded that the unfair prejudice and misleading and confusing nature and extent of the prior tax history evidence

---

criminal charges, it is too attenuated and risks confusion of the issues and misleading the jury: its admission would appear to require some explication of the distinction between civil and criminal tax process; an issue the government submits is not for the jury to decide, yet the government insists that even action taken *by the IRS* in civil process is indicative of Mr. Williams's criminal willfulness. Consider the government's argument in reply on this issue:

> Between 2002 and 2009, Williams failed to file his 1040 tax returns seven times during this eight-year period. The failure to timely file and timely pay is also a Title 26 violation[.] In each of these instances, Williams could have been charged with violating 26 U.S.C. § 7203. The fact that he was not charged, does not make his conduct any more legal. Further, one late return, possibly two, by a few months, could be seen as carelessness or negligence, seven delinquent returns in an eight-year period is a pattern supporting willfulness. ... [P]art of the testimony will be detailing how much effort the IRS expends to get a taxpayer to pay what is owed before resorting to the issuance of levies and liens. The fact that the IRS had to take these measures with Williams, is further evidence that Williams was willful in his decision to defraud the United States and to file the false returns.

Here, the government anchors admissibility to an unduly prejudicial predicate (generalizing Mr. Williams's earlier bad acts into bad character: his tax history shows he is the type of person who cheats and evades the IRS; classic propensity evidence) while simultaneously indicating its plan to offer evidence that the IRS expends effort and resources in pursuit of its civil imperatives in order to establish how the IRS's conduct in the civil realm bears on Mr. Williams's alleged willfulness in the criminal sphere. Any probative value of this civil tax history evidence is substantially outweighed, not only by a danger of unfair prejudice, but also confusing the issues and misleading the jury.

could be effectively tempered by appropriate cautionary instructions.

2. Tax Years 2018-2020, Post-Dating Charged Tax Years Conduct

The government charges substantive tax fraud offenses for 2013 through 2017 as to Jason Williams's tax returns and, in the later indictment, substantive tax fraud offenses for tax years 2014 through 2017 as to Nicole Burdett's tax returns. In Criminal Action Number 20-55 against Mr. Williams and Ms. Burdett, the government additionally charges a conspiracy that "begin[s] sometime in 2011 and continue[s] through 2019" relative to Mr. Williams's personal income tax returns.

The government seeks to admit tax conduct for tax years 2018-2020. This is so notwithstanding that there is some indication from all parties that the charged tax fraud ended with the filing of tax returns for tax year 2017. It has been submitted in the briefing that sometime in 2018 the defendants hired other tax preparers (whom indisputably prepared accurate returns), after their allegedly fraudulent 2017 tax returns were filed. To attempt to frame the admissibility issue thus begs the question as to when it should be resolved (that is, deferred to trial).

The government seeks to introduce evidence concerning tax returns for tax years 2018-2020 (post-dating the substantive tax fraud charges) on the ground that such evidence is Rule 404(b) extrinsic evidence admissible to prove intent, arguing that the

24

"stark contrast of these returns is probative in negating Williams blaming Mr. Timothy, when it is simply not credible for a highly educated attorney to believe he has very little tax liability." Essentially, the government seeks to introduce evidence of tax years post-dating the indicted substantive tax conduct to show intent and knowledge to commit tax fraud the year before and in years prior.  Ms. Burdett and Mr. Williams counter that subsequent returns prepared correctly by a real CPA do not shed any light on whether they had the respective unlawful intent to willfully evade taxes at the time that Timothy prepared the 2013 (or 2014 for Ms. Burdett) through 2017 returns.  Even if later tax returns are marginally probative, the defendants submit, they should be excluded under Rule 403 as substantially outweighed by a danger of confusion of the issues, misleading the jury, and needlessly presenting cumulative evidence.

The Court defers ruling on this issue.  At this point, the Court fails to see how later, indisputably lawful conduct is probative of prior, allegedly willful criminal conduct.  However, perhaps the trial record will develop to support admission of these later tax returns.

The government cites cases in which appellate courts found no error when the government introduced similar acts that had occurred before and after the charged offenses.  Of course, evidentiary rulings are context-laden.  A common thread stitched through the

cases invoked by the government was that the pre- and post-charge extrinsic conduct was similar (indeed, often *identical*) to the charged conduct.  The government offers no binding or persuasive authorities holding that ostensibly indisputably lawful conduct post-dating the charged conduct was admissible to show *previous* willful fraudulent intent part and parcel of the charged tax conduct.

Given that the Court cannot assess the admissibility of the proffered evidence on a cold record, the Court defers ruling on the admissibility of tax conduct in tax year 2018 and beyond; specifically, (i) tax returns for years 2018, 2019, and 2020; (ii) failure to pay taxes owed for tax years after the charged conduct; and (iii) argument or "evidence" regarding a defendant's failure to amend prior returns.[19]

---

[19] Notably, when faced in other tax fraud or tax evasion cases with a motion by defendants to introduce amendments or belated tax payments, the government consistently argues that good faith, post-filing attempts to amend are not relevant to the defendant's intent at the time of filing.  And the Supreme Court agrees.  See, e.g., Sansone v. United States, 380 U.S. 343, 354 (1965)(subsequent intention to pay taxes is no defense to past intention to evade taxes); see also United States v. Pang, 362 F.3d 1187, 1194 (9th Cir. 2004)(evidence of belated tax payments, made while awaiting prosecution, is irrelevant).  As defense counsel submitted during the hearing, common sense indicates that the converse is also correct: a defendant's failure to amend or failure to pay later has little if any relevance to a defendant's state of mind at the time of the charged offense.  The government fails to acknowledge these cases or the defendants' well supported position.

The government's motion to admit evidence of "before" tax
history is GRANTED in part (as to Ms. Burdett's 2011-2013 returns),
DENIED in part (as to Mr. Williams's "before" tax delinquencies),
and DEFERRED in part (as to the tax conduct in tax year 2018
through 2020).

### 3. Medicaid Fraud

The government seeks to introduce evidence that Nicole
Burdett committed Medicaid fraud: Ms. Burdett, the government
submits, "lied about her income in order to obtain Medic[aid]
benefits for herself and her children. She committed healthcare
fraud by doing so."  This indisputably extrinsic "other crime"
evidence (which the government characterizes as her applications,
renewals, emails, and other records), the government contends,
shows that Ms. Burdett had knowledge and understanding of her
income tax returns because "she used the[] fraudulent [Timothy-
prepared] income tax returns to qualify" and Henry Timothy played
no part in her receipt of Medicaid benefits.  "The purpose of
introducing this other crimes evidence at trial," the government
argues, "is to show that Burdett had the intent to defraud Medicaid
and that it did not occur through a mistake or accident, just like
her decision to defraud the Internal Revenue Service."  Ms. Burdett
counters that different intent standards are applicable to
Medicaid fraud and tax fraud and -- if there is any probative value

to this evidence -- it is substantially outweighed by the danger of unfair prejudice, confusion of the issues (considering the different intent standards), and waste of time (considering it will require a mini-trial on uncharged Medicaid fraud; a program for which she was indisputably eligible for many years). At this stage of the proceedings, the Court agrees.

The government concedes that Ms. Burdett was initially eligible for Medicaid benefits in July 2006 because she was pregnant and had no income. It is the government's theory, however, that Ms. Burdett made numerous false statements to Medicaid to maintain her Medicaid eligibility from 2010 through 2018. The government's other-crimes theory is that Ms. Burdett lied to a state government agency to receive benefits to which she was not entitled "just like she" lied to the IRS to obtain tax refunds to which she was not entitled. The government has stumbled in its attempt to offer a propensity-free chain of reasoning for admission of Medicaid fraud evidence.[20]

The government's admission that it seeks to admit the Medicaid evidence to show that Ms. Burdett is a liar to government agencies

---

[20] Again, during the hearing:

**The Court:** So your theory is if she lied in one respect, then she lied on her tax return?
**Counsel for Government:** Yes, Your Honor[.]

-- exactly what Rule 404(b) seeks to prevent -- certainly undermines its admissibility theory.  Nevertheless, the Court considers the government's additional argument, in an effort to satisfy step one of Beechum, that Medicaid fraud and tax fraud are "very similar in magnitude."  To be sure, the relevance of an extrinsic offense "is a function of its similarity to the offense charged" and similarity "is determined by the inquiry or issue to which the extrinsic offense is addressed."  Beechum, 582 F.2d at 912.  Here, the government submits that Ms. Burdett indulged the same state of mind in the extrinsic and charged offenses.

Ms. Burdett points out that intent to defraud Medicaid is not equivalent to the intent to defraud the IRS; the government must prove a higher standard of willfulness as to the latter. Notwithstanding the persuasive cases invoked by Ms. Burdett on this point,[21] the government submits that because the government must prove willfulness as to either Medicaid (or healthcare) fraud and tax fraud, the "other crime" of Medicaid fraud is sufficiently similar to that of tax fraud for the purposes of introducing Medicaid fraud under Rule 404(b).  The government's attempt to

---

[21] Ms. Burdett compares the elements of healthcare fraud and tax fraud and cites cases indicating that the heightened standard of willfulness required in criminal tax cases does not apply to healthcare fraud cases.  See United States v. St. John, 625 Fed.Appx. 661, 666 (5th Cir. 2015); United States v. Megwa, 656 Fed.Appx. 674, 679 n.3 (5th Cir. 2016)(Cheek does not apply to healthcare fraud cases).

analogize Medicaid and tax fraud is dubious insofar as the proffered premise for linking the other and the charged acts is at a high level of abstraction (both involve "false statements to government agencies"); this seems another proxy for propensity or criminal disposition.  Nevertheless, the Court need not squarely resolve this specific debate.  The Court observes that there appear to be few, if any, similar cases in which the government sought to introduce evidence of Medicaid fraud as similar "other act" evidence in a prosecution for tax fraud.[22]  If the government had on-point support for admission of this other crime evidence, it surely would have offered it.

---

[22] It is fair to observe that Medicaid fraud or false statements to government agencies other than the IRS are dissimilar from income tax fraud. At least one court has determined that it was reversible error for two indictments (a Medicaid fraud indictment and an income tax evasion indictment against the same defendant) to be joined for trial.  See United States v. Halper, 590 F.2d 422, 431-33 (2d Cir. 1978)(noting that "[n]or do we believe that evidence of one of the offenses would be admissible as to the other under [Rule] 404(b) and determining that "it is clear that ... evidence of the Medicaid fraud alleged in the indictment could not be used in a separate trial on the income tax invasion indictment; nor could the allegations in the income tax evasion indictment be used in a separate trial on the Medicaid fraud indictment.").  And another court has determined that admission of other crimes in the form of false statements to a different government agency (ATF) in a prosecution for tax fraud was "a very close question."  See United States v. Cole, 631 F.3d 146, 154 (4th Cir. 2011)(noting that "[i]t is doubtful that Cole's prior false statements [on a form submitted to ATF] are probative of any 'absence of mistake' in causing his accountant to treat as capital gains ordinary income" and "the false statements on the ATF forms were at best only tenuously related to proof of the willful mischaracterization of income charged here and posed a genuine risk of prejudice" but nevertheless finding the error was harmless).

Even assuming that evidence of Medicaid fraud (or false statements to a state government agency) could be somewhat relevant to a propensity-free purpose of willfulness to commit federal tax fraud, Ms. Burdett contends that its probative value is substantially outweighed by the danger of unfair prejudice, confusing the issues, and wasting time. The Court agrees. There is a genuine danger of unfair prejudice: the government admits that the Medicaid evidence suggests Ms. Burdett's propensity to lie to government agencies. The evidence also stands a good chance of confusing the jury as to the actual crimes charged, which a curative instruction may not effectively alleviate. And conducting a min-trial as to whether Ms. Burdett lied to Medicaid for eight years will necessarily result in undue delay. At this pretrial stage, and on the government's abstract proffer, it would seem inadmissible under Rule 403.

The Court is mindful that the probative value of extrinsic evidence may be measured by whether and to what extent the accused's intent "is established by other evidence, stipulation, or inference[,]" see Beechum, 582 F.2d at 914. In other words, the Fifth Circuit instructs that one of the factors for determining whether the prejudicial effect of the extrinsic evidence substantially outweighs its probative value is the government's need for the extrinsic evidence. Kinchen, 729 F.3d at 473 (citation omitted). In this regard, the extent to which the

31

Medicaid evidence is relevant to an issue other than Ms. Burdett's character (and the extent to which the government establishes its "need" for such extrinsic evidence) may become clearer as the trial progresses.   Thus, it is possible that the government could later persuade the Court that the Medicaid evidence is extremely probative in relation to other evidence of intent offered during the trial (and, thus, that the probative value of the evidence alters the Rule 403 calculus).   If so, the government may re-urge its request and perhaps make a proffer as the context of the trial evidence permits.   The government's notice of intent to admit Medicaid evidence is DENIED without prejudice.

4.  Prior Transactions Involving Forms 8300

In Criminal Action Number 20-55, Jason Williams and Nicole Burdett are charged with willfully failing to file IRS Forms 8300 when cash payments from clients for legal services exceeded $10,000.  This is charged as a manner and means of the conspiracy in Count 1 as well as charged in five substantive counts, Counts 7-11, which allegedly occurred in 2017 and 2018.  In a supplemental notice of intent to admit "other acts" evidence, the government submits that it plans to introduce evidence of two occasions in which Nicole Burdett was "involved in the preparation and filing of two Form 8300s" in years prior to the substantive charged conduct, in which Jason Rogers Williams & Associates, LLC Law Firm

allegedly failed to file Forms 8300 on five occasions in 2017 and 2018.  Specifically, the government seeks to admit evidence that (1) in 2010, Nicole Burdett wrote a cashier's check for $16,000 to a title company to purchase her residence; and (2) in 2012, Nicole Burdett acted as an attorney for a client who paid over $100,000 in cash to settle a civil lawsuit.  On both occasions, the government argues, Ms. Burdett "would have been required to provide her name, address, date of birth, social security number, driver's license number, and occupation, all of which appear on these Forms 8300."  It is undisputed that Ms. Burdett was not the person who filed the Form 8300 (as only the *recipient* of qualifying cash payments must file such a form).  With respect to the 2012 transaction, the government submits that "Williams was present."[23]

Ms. Burdett opposes introduction of this extrinsic "other act" evidence.  As to the first transaction, Ms. Burdett submits that she was not the recipient of cash that would trigger a reporting requirement; indeed, the title company voluntarily filed a Form 8300, despite no requirement that it do so.[24]  A decision

---

[23] Mr. Williams submits that the government may not comment on the fact that Mr. Williams was allegedly "present" at his law office when Ms. Burdett completed a Form 8300 or gave information to complete such a form.  The Court assumes without deciding that the government well knows whether any witness might lay a foundation in attesting to Mr. Williams's specific "presence" during the 2012 transaction.

[24] It was not required because Ms. Burdett wrote a  check, which is defined as "cash" triggering a reporting requirement by the recipient.

by an unrelated party to voluntarily file a Form 8300 has no
evidentiary value to the jury's determination as to whether Ms.
Burdett committed an intentional violation of a known duty, she
contends. The Form 8300 filed by the title company is not relevant
under Rule 401, Ms. Burdett submits, because it has no tendency to
make a fact of consequence to determining the action any more or
less probable than it would be without the evidence.

As for the 2012 transaction, Ms. Burdett argues that in the
civil case opposing counsel's filing of a Form 8300 for a cash
settlement in which Ms. Burdett acted as an agent for a client is
not admissible Rule 404(b) evidence and, even if it is, it should
be excluded under Rule 403. This transaction preceded the charged
client payments by five years; Ms. Burdett acted as an agent of
the cash payer in 2012, as opposed to receiving the cash triggering
reporting obligations as charged in Counts 7-11; and the dollar
amounts varied significantly more than $100,000 in cash was
involved in the extrinsic transaction, where the client payments
that the law firm received allegedly ranged from $10,500 to
$15,000. Assuming that the evidence is admissible to prove
knowledge of the reporting requirement, Ms. Burdett submits that
it should be excluded under Rule 403 because its limited probative
value is substantially outweighed by a danger of confusing the
issues, misleading the jury, and wasting time.

The similarity between the extrinsic and charged offenses is diminished by the fact that the extrinsic incidences involve conduct that did not trigger an obligation on Ms. Burdett's part to file a Form 8300 whereas Counts 7-11 allegedly did so trigger; additionally, the extrinsic acts took place five to seven years before the charged conduct; and, the 2010 transaction involved Ms. Burdett acting in her personal capacity writing a check, further removing it from the charges in this case.

The probative value of the 2010 *check* Ms. Burdett wrote to the title company when she purchased her house and the title company's voluntary act of filing a Form 8300 seems of marginal relevance at best, even to show Ms. Burdett's alleged knowledge of a requirement to file a Form 8300.[25]  Though the probative nature of either transaction seems remote given that Ms. Burdett apparently supplied biographical information (when asked) for someone else to file a Form 8300, the government submits that these concerns go to the weight of the evidence and not its admissibility and the Court can give a limiting instruction that one or both of the prior instances may only be considered to the extent they may show Ms. Burdett's knowledge of the existence of Forms 8300.  As

---

[25] If the title company was not required to file a Form 8300, how can Ms. Burdett's provision of biographical information for inclusion on a gratuitous form be relevant to Ms. Burdett's knowledge that such forms must be filed under certain circumstances?

to the 2012 transaction only, the Court is inclined to agree; however, it seems best to defer ruling on this transaction until the trial record develops.

Evidence that Ms. Burdett provided certain personal information to another attorney for his inclusion on a Form 8300 after her client paid cash to settle a case might be probative of knowledge of the requirement to file Form 8300.  However, until the Court sees what evidence the government submits on the issue of Ms. Burdett's knowledge of Forms 8300, it is difficult to assess whether the government "needs" this extrinsic evidence to prove knowledge of the Form 8300 requirement.  See Kinchen, 729 F.3d at 473 ("The probative value of extrinsic evidence may be measured by whether and to what extent the accused's [knowledge] 'is established by other evidence, stipulation, or inference.'").  Although it would appear that this limited use of the 2012 transaction might not be substantially outweighed by the danger of unfair prejudice, confusion, or misleading the jury,[26] the Court cannot make this determination in the abstract on a cold record.  Accordingly, the government's supplement notice of intent to introduce other acts relating to Form 8300 is DENIED in part (as

---

[26] It would be subject to cross-examination that no doubt will challenge the weight that should be given to the evidence, and the Court would caution that the jury may consider the 2012 incident in limited fashion only.

to the 2010 transaction) and DEFERRED in part (as to the 2012 transaction).

### III.

#### *A.*

The government moves *in limine* to admit "lifestyle" and spending habits evidence, and the defendants move *in limine* to preclude admission of such evidence post-dating the charged tax years.  It is helpful to separately analyze the admissibility of "lifestyle" evidence during the charged years and lifestyle evidence post-dating the tax years charged;[27] lifestyle evidence post-dating the tax years charged is one focus of the defendants' motion *in limine*.

Evidence of the defendants' lifestyle or spending habits is relevant to proving willfulness and motive, the government contends; and, insofar as the defendants insist that "lifestyle spending is admitted to negate some factual contention made by the taxpayer to excuse...his or her failure to pay tax or report income[,]" the government submits it is also relevant to disproving that the defendants were victims of a fraud scheme, perpetuated by their tax preparer, from which they just so happened to reap benefits.  Had the defendants accurately reported their net

---

[27] This seems somewhat complicated by the fact that the government charges a conspiracy from 2011 through 2019 as to Mr. Williams's personal tax returns, but Nicole Burdett's personal tax charges have no attendant conspiracy charge.

business income, the government's narrative proceeds, they would have owed taxes to the IRS (just like Mr. Williams did before he hired Henry Timothy to prepare his tax returns). Then the defendants would have had to use their income to pay taxes, instead of spending the money on personal expenditures like a swimming pool, a mansion on St. Charles Avenue, and other items. Particularly at this pretrial stage, the government's arguments sweep too broadly. Confined in scope, the government's motion to admit some lifestyle evidence is proper.

In tax evasion cases, the government must prove "willfulness" by presenting evidence showing that the defendant committed "a voluntary intentional violation of a known legal duty." To prove willfulness, the Fifth Circuit has observed, abstractly, that

> The government may rely on such circumstantial evidence as a consistent pattern of understating large amounts of income, coupled with evidence of falsehood, surreptitious cash transactions, and inadequate records kept by taxpayer, substantial understatement of taxable income and tax liability for the years in question, the withholding of material information from the taxpayer's bookkeepers by giving them only summary sheets of the records in question, and the expenditure of large amounts of cash that cannot be reconciled with the amount of income reported. Such evidence permits an inference of willfulness sufficient to create a jury question.

United States v. Hughes, 766 F.2d 875, 877-78 (5th Cir. 1985) (internal citations, quotations omitted)(among other evidence, taxpayer-defendant's "purchase of substantial assets during th[e

charged] years created an inference of willfulness ... sufficient to support the finding that [the taxpayer] voluntarily and intentionally violated his known legal duty to pay additional taxes."). "Evidence of willfulness 'is usually circumstantial.'" See United States v. Sertich, 879 F.3d 558, 565 (5th Cir. 2018)(citations omitted).

At least the First, Third, Sixth, and Seventh Circuits have held that lifestyle or spending habit evidence may be relevant to prove willfulness to commit tax fraud. See United States v. DeMuro, 667 F.3d 550, 558-59 (3d Cir. 2012)(evidence of spending money on luxury vacations, nice homes, and other personal items was relevant to disprove the defendants' assertion that they "were genuinely trying to pay off their taxes and, thus, were not acting willfully in not paying them" and evidence of their "lavish personal spending was also relevant to the conspiracy charge as it was probative of their conspiratorial purpose");[28] United States v. Blanchard, 618 F.3d 562, 569-70 (6th Cir. 2010)("evidence of a defendant's ability to pay taxes is pertinent to whether an offense has been committed under § 7202, since it bears on the willfulness of the defendant's failure to pay over withheld tax. If a defendant

---

[28] In DeMuro, the court noted that the evidence was significantly probative and was not unduly prejudicial, considering among other things that evidence was largely limited to one witness, an IRS agent, with other witnesses only briefly mentioning spending habits.

has made discretionary purchases [such as leasing two Cadillac automobiles, gambling losses, and the purchase of firearms and a CD player] in lieu of meeting his tax obligations, this is probative of his guilt."); United States v. Ellis, 548 F.3d 539, 542 (7th Cir. 2008)(evidence of "personal expenditures was probative of willfulness, an element of the charged offense [of § 7202]."); cf. United States v. Griffin, 524 F.3d 71, 82 (1st Cir. 2008)(upholding admission of evidence of gambling habit (with a cautionary instruction to minimize prejudice) and other spending as highly probative as to whether the defendant's tax returns were false).  In considering sufficiency of the evidence claism, the Fifth Circuit, too, has determined that spending or lifestyle may be probative of willfulness.  See, e.g., Sertich, 879 F.3d at 565 (citation omitted).

Lifestyle or spending evidence may be admissible to counter a defense that the defendant was merely "a hapless victim" who had not received any money generated by a tax evasion scheme.  See United States v. Powell, 124 F.3d 655, 656 (5th Cir. 1997).  When Powell argued that "his evasion of [fuel excise] taxes was not willful; rather, it happened by accident or mistake[,]" the government countered by submitting evidence that "one of Powell's motives for [tax evasion] was to support his extravagant lifestyle" and thus the government "presented a variety of evidence about Powell's free spending, including his generous patronage of

40

topless bars, his ownership of an expensive Cadillac convertible, and his posing for a photograph with two female employees of a topless bar in front of a car trunk filled with the cash collected from fuel purchaser." Id. at 661. "All of this evidence," the Fifth Circuit observed, "was probative of whether Powell was reaping benefits of tax evasion, or if he was, as the defense suggested at trial, of such modest means that he was unable to pay his bills." Id. (citation omitted)(holding that the evidence was relevant and that the trial court did not abuse its discretion in admitting it).

When lifestyle or spending habits evidence is relevant, the Court must balance a prosecutor's unrestrained efforts to appeal to class prejudice. "[A]ppeals to class prejudice are highly improper and cannot be condoned and trial courts should be ever alert to prevent them." United States v. Socony-Vacuum Oil Co., 310 U.S. 150, 239 (1940). It is likewise "illogical and improper to equate financial success and affluence with greed and corruption." United States v. Jackson-Randolph, 282 F.3d 369, 377 (6th Cir. 2002). However, there is a distinction to be drawn between evidence that impermissibly appeals to class prejudice and wealth-related evidence that passes muster under Rule 403. See id. at 378.

"The line between statements that are 'appeals to class prejudice [that] are highly improper and cannot be condoned' and statements regarding class that are 'relevant to the issues at hand' is not easily drawn." See Socony-Vacuum Oil Co., 310 U.S. at 239.  The Sixth Circuit fashioned a three-part test that, if satisfied, means that the unfair prejudice from wealth-related evidence does not outweigh the probative value: (1) there is other credible evidence, direct or circumstantial, of the illegal activity; (2) the money spent was not available to the defendant from a legitimate source; and (3) the accumulation of great wealth or extravagant spending relates to the period of the alleged illegal activity.  Jackson-Randolph, 282 F.3d at 377.  To be sure, courts must "carefully balance the probative value of expenditure evidence against the factors enumerated in Rule 403."  United States v. Ewings, 936 F.2d 903, 907 (7th Cir. 1991).

*B.*

The government urges the Court that evidence of the defendants' lifestyles and spending habits is relevant to proving motive and willfulness.  By falsely increasing his business expenses and reducing his tax liability, the government submits that Mr. Williams enjoyed a lifestyle well above his reported income.  And as for Ms. Burdett, the government argues that she reported nearly $300,000 in fraudulent business expenses between

tax years 2014-207; the misrepresentations lowered her total income, which reduced her tax liability and enabled her to enjoy a lifestyle that exceeded her reported income. That the defendants consistently spent more than what they reported in income, the government submits, creates an inference that they acted willfully in committing the charged tax crimes.

Mr. Williams and Ms. Burdett counter that it makes no sense to attach significance to the fact that the defendants made personal expenditures that exceeded their reported incomes, after deductions, when the defendants' reported income was reduced by improper deduction of these personal expenditures by the government's chief witness. The defendants argue that the lifestyle and spending habits evidence, even if minimally probative of intent or motive, should be excluded because the danger of unfair prejudice substantially outweighs any minimal probative value.

Classifying the types or time of expenses is helpful in attempting to assess admissibility of such evidence pretrial. One category of spending habits evidence that is relevant to intent and motive is evidence of discretionary expenditures (on routine expenses such as life insurance, car payments, mortgages, vacations) made by the defendants and, as alleged, improperly deducted by Henry Timothy from the defendants' taxable income

during the charged tax years.  Insofar as the government seeks to introduce evidence of expenses incurred during the tax years charged, it seems such evidence is admissible to prove willfulness or motive.  The defendants' arguments to the contrary appear better directed to challenging the weight to be accorded such evidence. The probative value of evidence of expenses incurred during the tax years charged does not appear to be substantially outweighed by the danger of unfair prejudice, particularly given that the government agreed during oral argument that it would "sanitize" its evidence of certain luxury expenses so as to avoid stoking class prejudice.

As to a second category of spending habits or lifestyle evidence -- the government's request to admit evidence of expenses made after the 2017 tax years for each defendant -- the Court defers ruling on the government's motion to admit and the defendants' motion to exclude such evidence (spending or lifestyle in 2018 and beyond).  The predicate supporting admission that is present for the first category of evidence (expenses during the tax years as going to intent or motive to understate taxable income) is missing on a cold, pretrial record.  It seems reasonable to expect there to be a record supporting the probative value of a pool or a house purchased in 2018 so that the Court may weigh any probative value of such evidence against the risk of unfair prejudice, confusion of issues, misleading the jury, or waste of

time.  The probative value of expenses made in 2018 and beyond is not obvious divorced, as the inquiry is now, from a trial record.[29] Just like the Court has indicated it is necessary to defer ruling on whether the defendants' indisputably accurate tax returns from tax years 2018-2020 (post-dating the charged tax years) are admissible, the Court finds it is necessary to defer ruling on the admissibility of those expenses made in tax year 2018 and beyond.

Accordingly, the government's motion *in limine* to admit lifestyle evidence is GRANTED in part (as to expenses made during the charged tax years, 2013-2017 as to Mr. Williams and 2014-2017 as to Ms. Burdett) and DEFERRED in part (as to expenses made during tax year 2018 and beyond), and the defendants' motion *in limine* (insofar as it seeks to exclude lifestyle evidence post-dating the tax years charged) is DEFERRED in part.

IV.

The government moves *in limine* to preclude evidence or argument at trial regarding grounds asserted in motions to

---

[29] And its admissibility must be carefully scrutinized for that reason and considering that such big-ticket items were ostensibly purchased during tax years post-dating the charged tax years, that is, during later uncharged tax years where the defendants submit and the government appears to agree the defendants' taxes were prepared properly by professional tax preparers.  Indeed, the Court has deferred ruling on whether the government may admit evidence of tax conduct post-dating the charged tax years.

dismiss,[30] including evidence regarding: (A) selective of vindictive prosecution (including argument or evidence that the government interfered in the District Attorney's race, the timing and presentation of the case to the grand jury during COVID-19, singling out Mr. Williams for prosecution because he is African-American, the alleged lack of prosecution of other Henry Timothy clients, and the prosecution of defendants because Mr. Williams failed to meet with IRS agents); (B) the availability of civil or administrative remedies; (C) the defendants' issues with the IRS investigation and the DOJ's decision to prosecute; (D) alleged wrongdoing by other Henry Timothy clients -- the "but, other people did it too" defense; (E) the rarity of prosecutions of failing to file Form 8300 violations.

The defendants counter that this Court has already determined that "the facts underlying the accused's constitutional claims robustly inform their defenses to the government's charges and likely will be explored as part of their telegraphed incomplete- or shoddy-investigation defense to the charges at trial." See Order and Reasons dtd. 1/8/21. The defendants submit that they are constitutionally entitled to present a defense that challenges

---

[30] The defendants filed motions to dismiss based on the alleged improper timing of the presentation of the indictment to the grand jury to interfere with the District Attorney's race and during COVID-19, based on alleged selective and vindictive prosecution, and based on alleged noncompliance with the Eastern District's jury selection plan.

and discredits the "thoroughness and even the good faith of the
investigation" as well as the law enforcement "methods employed in
assembling the case."   The defendants focus on their right to
cross-examine Henry Timothy, the government witnesses concerning
the shoddiness of their investigation including regarding hundreds
of other Henry Timothy clients who were treated as witnesses
instead of targets, the availability of civil remedies and the
government's failure to proceed through the civil process as
evidence undermining the quality of the investigation and the
decision to charge the defendants and to rebut the government's
willfulness theory and argument that the defendants have refused
to comply with their tax obligations; the defendants submit that
they may address the government's failure to attempt to proceed
through civil process (especially if the government is permitted
to introduce evidence on its narrative concerning "Williams' long
history of dealings with the IRS"); that Henry Timothy made similar
errors on the returns of hundreds of other clients is evidence
that it was Henry Timothy and not the defendants who made the
errors, negating intent.   Finally, they contend that lack of
willfulness for failure to file a Form 8300 is fair game: how can
the government argue that the defendants have Form 8300 expertise
by virtue of their being attorneys, while asking the Court to
preclude evidence that these criminal defense attorneys practicing
in this district would not have handled or even heard of any

instance of someone being prosecuted for failure to file a Form 8300 (considering the government has not charged anyone in this District with failure to file a Form 8300 in the past 50 years)?, the defendants ask.

In the abstract, the Court agrees that many of the issues the government seeks to preclude are irrelevant. For example, selective or vindictive prosecution was for pretrial resolution by the Court only, not the jury, as the issue is not relevant to an accused's innocence or guilt. Likewise, the availability of civil or administrative remedies *generally* has no relevance to a criminal tax fraud case, and such argument creates a substantial risk of misleading the jury, prejudicing the government, and inviting jury nullification. And, again in the abstract, evidence and argument relating to alleged wrongdoing by others is generally not relevant to an accused's criminal responsibility. But the Court may not impinge upon permissible defenses the defendants may urge during the trial.

As counsel for the government acknowledged during the hearing, the government raises these issues in its motion so that they are top of mind. And as counsel for Mr. Williams stated, "we know the rules and we don't intend to cross the line." Given the sweeping nature of the government's motion, counsel for Mr. Williams simply urges the Court not to make broad pretrial rulings

on these issues; rather, if or when an argument or issue is presented, resolve it then.

Resolving issues if and when they arise is a sensible approach. To be sure, the defendants will not be permitted to present evidence or argument in the abstract regarding selective or vindictive prosecution, the availability of civil tax process, or that the defendants must be acquitted solely because Henry Timothy and other of his clients violated Title 26. However, the government sweeps too broadly in seeking to preclude all evidence or argument pertaining to all grounds asserted for dismissal. Even the government concedes that the defendants may vigorously cross-examine Henry Timothy and government agents concerning their credibility, bias, reliability, and the overall quality of the investigation.[31] Also, the Court finds it difficult to square, on the one hand, the government's theory of admission of other-tax-acts evidence with, on the other hand, its argument that the jury not be permitted to hear any argument or evidence concerning civil tax process or remedies. Mindful of these concerns, the Court does it best to resolve the pending motion as follows. Counsel are invited to submit to the Court additional briefing on these

---

[31] There is no dispute that the defendants may probe the government's witnesses for motive and bias. Evidence showing that the investigators were biased may be relevant if it discredits the government's case in indicating that evidence of an element of the charged offenses is lacking.

issues in an attempt to inform the Court's attempt to set appropriate parameters for the defendants to explore their permissible trial defenses and theories without treading into areas that are irrelevant to jury issues and otherwise invite jury nullification.

The government's motion *in limine* to preclude evidence or argument concerning grounds presented in the defendants' motions to dismiss is GRANTED in part as unopposed, insofar as the defendants do not intend to present argument concerning the Jury Selection and Service Act; the motion is taken under submission or DEFERRED as to the remaining issues until raised during the trial or scope issues or limiting principles may be more perfectly defined.

V.

The remaining evidentiary issues presented are more abstract and less debatable, or dependent on the trial record context.

A.  Character Evidence

The government seeks an order excluding evidence of or reference to any specific instances of good conduct by Jason Williams and Nicole Burdett, including evidence of awards, community service recognition, commendations, or any type of recognition the defendants received while employed as attorneys or

while employed as City Councilman or District Attorney, as well as specific incidents in which the defendants were honest. Additionally, the government seeks an order requiring the defendants to provide reasonable notice of any intent to introduce character evidence. The defendants counter that defense counsel is familiar with and will comply the rules governing admission of character evidence and the limitations on how character may be proved under Rules 404 and 405; and the defendants have no notice obligation, but will comply with the Court's scheduling order regarding witness lists. The Court agrees. The government's motion is GRANTED in part as unopposed, DENIED as to the request for notice, and DENIED without prejudice as to the request to prohibit the defendants from eliciting character evidence on cross-examination or requiring the defendants to obtain permission in eliciting character evidence on cross-examination.

Rule 404(a)(1) provides the general rule that "[e]vidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait." Rule 404(a)(2) provides exceptions for defendants or victims in a criminal case:

> (A) a defendant may offer evidence of the defendant's pertinent trait, and if the evidence is admitted, the prosecutor may offer evidence to rebut it;
>
> (B) subject to the limitations in Rule 412, a defendant may offer evidence of an alleged victim's

pertinent trait, and if the evidence is admitted, the prosecutor may:

> (i) offer evidence to rebut it; and

> (ii) offer evidence of the defendant's same trait[.]

As potentially relevant here, Rule 405(a) governs the methods of proving character:

> When evidence of a person's character or character trait is admissible, it may be proved by testimony about the person's reputation or by testimony in the form of an opinion. On cross-examination of the character witness, the court may allow an inquiry into relevant specific instances of the person's conduct.

Notably, unless a person's character or trait is an essential element of a charge or defense, the defendant may not present evidence of specific acts.  See id.; see also Fed. R. Evid. 405(b)(providing that relevant specific instances of conduct may be offered when a person's character or trait is an essential element of a charge, claim, or defense).  Rule 611(b) provides:

> Cross-examination should not go beyond the subject matter of the direct examination and matters affecting the witness's credibility. The court may allow inquiry into additional matters as if on direct examination.

Rule 611(c) provides:

> Leading questions should not be used on direct examination except as necessary to develop the witness's testimony. Ordinarily, the court should allow leading questions:

> (1) on cross-examination; and

> (2) when a party calls a hostile witness, an adverse party, or a witness identified with an adverse party.

Insofar as the government seeks a ruling that the defendants must comply with the Federal Rules of Evidence relating to character evidence, the motion is GRANTED in part as unopposed. Insofar as the government requests that the defendants provide notice of offering character evidence, the motion is DENIED. Although Rule 404(b) imposes a notice requirement on the government, there is no corresponding notice obligation imposed on defendants found anywhere in the Federal Rules of Evidence and, for good reason, as the defendants are presumed innocent and need not offer any defense let alone notice of its defense strategy; thus, the government's request for notice of intent to introduce character evidence is DENIED. Here, counsel for defendants have acknowledged their professional responsibilities to comply with the Rules of Evidence. If particular evidence is offered which the government finds objectionable, any such objection may be resolved contemporaneously with its proffer either outside the presence of the jury or, failing that, with appropriate cautionary instructions. Insofar as the government also moves for an order that eliciting character evidence during cross-examination of government witnesses should be prohibited, this is simply an abstract request that defense counsel comply with the Rules of Evidence. The request is DENIED without prejudice to it being

raised by objection during the trial if defense counsel fails to honor its responsibility to comply with the Rules of Evidence.

B.  References to Punishment/Adverse Consequences

The government moves to preclude references to punishment or adverse consequences resulting from a conviction.  The defendants respond that a pretrial order directing the defense to comply with the Rules of Evidence is not necessary and that defense counsel are aware that the jury has no sentencing function so will not comment upon punishments or adverse consequences unless the government opens the door.

There is no dispute that: (a) references to potential collateral consequences of conviction fail the relevance test; (b) "the jury's function is to find the facts and to decide whether, on those facts, the defendant is guilty of the crime charged." See Shannon v. United States, 512 U.S. 573, 579 (1994); and (c) the jury has no sentencing function and "should ... reach its verdict without regard to what sentence could be imposed."  See id. (quoting Rogers v. United States, 422 U.S. 35, 40 n.2 (1975)(observing that "punishment is a matter exclusively within the province of the Court and is not to be considered by the jury")).

Accordingly, the government's motion *in limine* to preclude argument regarding punishment and adverse consequences is GRANTED as unopposed.

C.     Appointment     of     Counsel/Post-Charging     Lifestyle Evidence/Campaign Fund Records

The defendants move *in limine* to preclude the government from introducing evidence or commenting upon (1) lifestyle evidence post-dating the tax years charged; (2) Ms. Burdett's right to appointment of counsel; (3) post-charging lifestyle evidence; and (4) Mr. Williams's campaign fund records.

The Court has already addressed (1) in connection with the government's motion *in limine* to permit lifestyle evidence.  As for item (2), the government concedes that Ms. Burdett's right to appointed counsel is not an issue for the jury so the defendants' motion is GRANTED as unopposed as to that issue.  As for item (3), Ms. Burdett moves to prevent the government from commenting upon issues the government raised during the October 6, 2021 hearing in which the government requested that the Court re-evaluate whether Ms. Burdett remains eligible for appointed counsel. Insofar as Ms. Burdett characterizes item 3 as encompassing "post-charging lifestyle," this issue is addressed in connection with the government's motion *in limine* to permit lifestyle evidence and item (1) of the defendants' motion *in limine* (to preclude evidence

55

or argument on "lifestyle evidence post-dating the tax years charged").

As to item 4, Mr. Williams submits that the government requested that the parties stipulate to the authenticity of Louisiana Secretary of State records for the Jason Williams Campaign Fund, LLC.  Because there are no charges relating to the Campaign Fund nor any reference to it in the government's Rule 404(b) notices, Mr. Williams submits that any records relating to the Fund are irrelevant and should be excluded under Rule 402. The government counters that "evidence of campaign expenses deducted as business expenses would be relevant" given that the case involved "years of improper classification of expenses as business expenses in order to reduce Williams' ultimate tax liability."  For example, the government submits that Mr. Williams deducted as a business expense $9,350 for polling to the Arsement Media Group; this was also listed as a campaign expense on the campaign finance reports.  Because political campaign expenses are not business expenses of a law firm, the government submits, evidence of campaign expenditures misclassified and deducted as law firm business expenses is relevant because inclusion of improper deductions improperly served to reduce Mr. Williams's tax liability.  Mr. Williams has not replied to the government's argument.

The Court DEFERS ruling on the admissibility of the campaign fund records that Mr. Williams seeks to exclude; the issue as presented is too abstract.  If the government lays a proper foundation for relevance at the appropriate time, evidence, limited in scope, may be relevant.  The Court observes, however, that this same theory of relevance ostensibly would also apply to personal expenses (insofar as the government offers personal expenses as improperly deducted as law firm business expenses) so it is unclear why the government has not clearly articulated this particular theory of relevance in its motion pertaining to lifestyle evidence, with respect to Mr. Williams's personal expenses which it charges were improperly deducted to reduce his income.

***

For the convenience of all counsel and according to their stated preferences, the Court was persuaded to conduct an oral hearing on these issues and do its best to rule on many issues that it typically resolves -- at the earliest -- on the morning of trial.  With the proviso that evidence at trial may change the complexion of what informs these rulings, IT IS ORDERED: that

- Considering the government's notice and supplemental notice to introduce intrinsic and Rule 404(b) evidence, construed as a motion to admit, the motion is: GRANTED in part ((i) as unopposed as to Ms. Burdett's and her husband's returns for tax years 2011-2013; (ii) as to Mr. Williams's tax conduct

once Timothy became tax preparer beginning in 2011 when the conspiracy allegedly began); DENIED in part (as to (i) Ms. Burdett's alleged Medicaid fraud (on this issue, denied without prejudice); (ii) Mr. Williams's civil "tax history" from 2002 until Timothy was hired, and (iii) 2010 Form 8300 transaction); and DEFERRED in part (as to (i) the defendants' tax returns and tax conduct starting in 2018 and beyond, including outstanding tax liability/obligations; and (ii) the 2012 Form 8300 transaction limited to show Ms. Burdett's knowledge of such forms).

- Considering the government's motion *in limine* to permit "lifestyle" evidence and the defendants' motion *in limine* to exclude lifestyle evidence from 2018 and beyond, the government's motion is GRANTED in part (as to the admissibility of expenses made during the years Timothy prepared tax returns for the charged tax years, 2013-2017 for Mr. Williams and 2014-2017 for Ms. Burdett) and DEFERRED in part (as to the expenses made or incurred in 2018 and beyond). As for defendants' motion in limine partially addressing the same issues, reciprocal ruling (DEFERRED in part as to expenses 2018 and beyond).

- Considering the government's motion *in limine* to preclude evidence or arguments regarding grounds asserted in motions to dismiss, the motion is GRANTED in part as unopposed, insofar as the defendants do not intend to present argument concerning the Jury Selection and Service Act; and DEFERRED in part as to the remaining issues until being raised during trial or until scope issues or limiting principles may be more perfectly drawn.

- Considering the government's motion *in limine* to preclude improper character evidence, for notice of character evidence, and to preclude the introduction of character evidence on cross-examination, the motion is GRANTED in part as unopposed (insofar as the government seeks a ruling that the defendants must comply with the Federal Rules of Evidence relating to character evidence); DENIED in part (insofar as the government requests that the defendants provide notice of offering character evidence); and DENIED in part without prejudice (insofar as the government also moves for an order that eliciting character evidence during cross-examination of government witnesses shall be prohibited).

- Considering the government's motion *in limine* to preclude argument regarding punishment and adverse consequences, the motion is GRANTED as unopposed.

- Considering the defendants' motion *in limine* to preclude the government from introducing evidence or commenting upon (1)

lifestyle evidence post-dating the tax years charged; (2) Ms. Burdett's right to appointment of counsel; (3) post-charging lifestyle evidence; and (4) Mr. Williams's campaign fund records, the motion is DEFERRED in part (as to (1), (3), and (4)); and GRANTED in part as unopposed (as to (2), the government agrees that it shall not reference Ms. Burdett's right to appointed counsel).

New Orleans, Louisiana, December 16th, 2021

_____
MARTIN L C. FELDMAN
UNITED STATES DISTRICT JUDGE