UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | CRIMINAL NO. 20-cr-00055 |
| | * | SECT. I. MAG.4 |
| VERSUS | * | |
| | * | JUDGE AFRICK |
| JASON R. WILLIAMS     (01) | * | |
| NICOLE E. BURDETT     (02) | * | MAGISTRATE JUDGE ROBY |
| | | |
| UNITED STATES OF AMERICA | * | CRIMINAL NO. 20-cr-00139 |
| | * | SECT. I. MAG.3 |
| | * | |
| VERSUS | * | JUDGE AFRICK |
| | * | |
| NICOLE E. BURDETT     (01) | * | MAGISTRATE JUDGE DOUGLAS |

**GOVERNMENT'S MEMORANDUM IN SUPPORT
OF MOTION FOR RECONSIDERATION**

NOW INTO COURT, comes the United States of America, through the undersigned Assistant United States Attorneys, who respectfully files this Motion for Reconsideration. The government does not seek a pretrial ruling on these. Instead, this filing is merely to lay out the government's legal and factual basis for reconsideration in advance of trial, where the Court can then conduct a Rule 403 balancing test with the benefit of exhibits and testimony defining the exact contours of the Rule 404(b) evidence at issue.

**I.    PROCEDURAL HISTORY**

The Government previously filed a Notice of Intent to Introduce Intrinsic and Rule 404(b) Evidence and a Supplemental Notice of Intent to Introduce Intrinsic and Rule 404(b) Evidence (Rec. Docs 138 and 150). The Government also filed a Motion in Limine to Permit at Trial "Lifestyle" Evidence (Rec. Doc. 197). On December 16, 2021, the previous district judge issued a

1

ruling on these issues. (Rec. Doc. 261). The Government then sought an appeal of the ruling's exclusion of evidence of Williams's "before [conspiracy] tax conduct," which included defendant Williams's tax issues from 2002 until the time he hired tax preparer, Henry Timothy.[1]

On March 29, 2022, the Fifth Circuit issued an opinion on this issue, affirming the district court's ruling. Importantly, the Fifth Circuit stated that it read the district court's order to permit the introduction of evidence regarding Williams's existing tax debt and liens when he hired Henry Timothy as intrinsic evidence to show the formation and purpose of the conspiracy. *See United States v. Williams*, 30 F.4th 263, 266–67, 267 n.3 (5th Cir. 2022). The Fifth Circuit further stated that the order allowed the Government to introduce evidence of how much tax debt Williams had when he hired Mr. Timothy and the circumstances surrounding the hiring of Mr. Timothy. *Id.* at 266. Although the Fifth Circuit affirmed the district court's exclusion of other evidence of Williams's civil tax history, it emphasized that this evidence "may well have permissible uses under Rule 404(b)," and that the district court could reassess the admissibility of any of the evidence at trial. *See id.* at 269 ("The bigger reason not to remand for Rule 403 rebalancing is one we have already noted: The district court ruling is subject to modification. Because of the difficulties of making Rule 404(b) and 403 assessments in the vacuum of pretrial review, we double down on the district court's caveat. Nothing we have said limits the district court's ability to reassess the challenged ruling (or others that were part of its lengthy order and not subject to appeal), given the protean and illuminating nature of a trial.").

---

[1] Mr. Timothy recalls meeting Jason Williams and Nicole Burdett in 2010.

**II.    LAW AND ARGUMENT**

    ***1.    Evidence regarding Williams's Tax History, including correspondence with the IRS about tax debt already deemed "intrinsic," and thus admissible, by the Fifth Circuit.***

The Government requests that the Court reconsider, during the trial of this matter, allowing evidence regarding Williams's interactions with the IRS from 2002 until 2010. Williams's tax debt from 2001, 2003 and 2005 through 2009 was not paid until after he hired Timothy and had him file amended returns. When he met Timothy, he owed the IRS approximately $92,000. Many of Williams's pre-conspiracy interactions with the IRS concern debate about this debt. It follows naturally that these interactions should be admissible. For example, call logs maintained by the IRS reflect that Williams called the IRS numerous times in 2005 and in 2006 to discuss his balance due and his delinquent returns. In 2007 he called the IRS to discuss levies placed on his bank accounts. In December of 2010, he called the IRS to discuss his delinquencies and submitted a financial statement to the IRS as part of an Offer in Compromise.[2] The IRS rejected his offer based on the financial statement he submitted, thus requiring him to pay the full amount due. All of these events are the lead up to Williams needing Timothy to file amended returns to reduce what he already owed and then having him file fraudulent returns to avoid tax liability.

This evidence is proper 404(b) evidence because it shows motive, intent, plan and preparation, knowledge, and absence of mistake. For example, the evidence forcefully rebuts Williams's "detrimental reliance" defense. Mr. Williams has previously indicated his defense at trial will be that he relied on tax preparer Henry Timothy to prepare his tax returns accurately, and thus had no idea of the many fraudulent write-offs included on his returns. Williams's detailed correspondence with the IRS regarding his tax debt and associated tax issues, however, cuts against

---

[2] An Offer in Compromise allows a taxpayer to settle their debt with the IRS for less than they owe.

this narrative. This is because it strains credulity to think that, after a decade of regular personal involvement in his taxes (a fact potential Rule 404(b) evidence regarding Williams's correspondence with the IRS will show), Mr. Williams suddenly and unexplainedly removed himself so completely from the tax preparation process that he did not even know what was being included on his Schedule C forms. Again, Mr. Williams's version of events (i.e., that Henry Timothy did this entirely on his own, without Williams's knowledge or direction) requires sharp deviation from Williams's prior level of involvement when managing his tax preparation, filing, and post-filing tax issues.  The jury cannot assess the credibility of this defense theory without hearing at least some evidence defining Williams's interactions with the IRS. Indeed, given the facially illegal nature of some of these Schedule C write-offs on Williams's charged returns (including write-offs of Williams's payments towards his existing tax debts, already admissible as intrinsic evidence) Williams cannot credibly argue to a jury that he did not willfully violate the law simply because he's "not a tax expert." Instead, he will likely argue that he did not even review, much less scrutinize, the tax documents at issue—a claim that Williams's past correspondence with the IRS shows would be atypical behavior from Williams.

The evidence also shows knowledge of how Schedule C expenses work, thus further rebutting the good-faith reliance defense. Mr. Williams had Schedule C expenses on his returns going back to 2002, and his interactions with the IRS show his displeasure over tax liability stemming from earlier tax returns where he more accurately reported his Schedule C expenses. *See, e.g.*, *United States v. Boyd*, 773 F.3d 637, 643 (5th Cir. 2014) (admitting prior tax records, in part to show that the defendant previously filed on-time tax returns, and thus likely had knowledge that the filing obligation applied to him). Tellingly, evidence of Williams's tax history shows that, in those early years, when he made less money but reported his Schedule C deductions honestly,

4

he owed more taxes. The fact that Williams's tax liability went down as he began earning substantially more income in the charged tax years undercuts his defense that he believed Henry Timothy was preparing his taxes correctly. As the trial progresses, the Government believes the probative nature of this evidence will become clear and it should be admitted.

In addition, Williams's history with the IRS shows plan and preparation. Before hiring Timothy, Williams repeatedly failed to file tax returns and pay his taxes on time. This deliberate tax avoidance conduct led to IRS levies and liens on Williams's property. The Fifth Circuit has already stated these liens are admissible as evidence intrinsic to the genesis of the conspiracy. The jury, however, should also be able to hear how Williams's was forced to escalate his method of tax avoidance. Once he realized that not filing his returns and not paying his taxes would not deter the IRS from collecting taxes owed, he began his practice of submitting false tax returns. In other words, evidence of Williams's earlier late-payment/late-filing, along with his correspondence with the IRS expressing displeasure with his debt and seeking various legal ways to reduce it, allows the jury to understand the evolution of Williams's tax avoidance methods, with Williams hiring Timothy and moving to fraud only after his earlier methods were no longer effective. *Cf. United States v. Maxwell, 643 F.3d 1096, 1100–01 (*8th Cir. 2011) ("In order to meet its burden at trial, the government was required to offer evidence of the existence of a conspiracy and Maxwell's intention to be a participant in it. . . . And Maxwell's tax-filing history helped to demonstrate that he was working in concert with the other conspirators. As Maxwell's co-conspirator, Leiter, put it: The group was working hard 'to drop off the [IRS's] radar screen.' The conspirators' tax-filing histories were but one reflection of that goal.").

For the same reasons, Williams's correspondence seeking abatement of tax debt, or otherwise expressing displeasure with his debts owed, is evidence of motive. The evidence shows

5

that Williams did not want to pay the taxes he owed and was motivated to find someone (i.e., tax preparer Henry Timothy) willing to help him prepare false returns. Courts have repeatedly approved of admission of evidence of a defendant's tax history or other past adverse civil action to show motive to commit the charged offense, or otherwise aid in establishing willful intent. *See United States v. Anderson,* 933 F.2d 1261, 1274 (5th Cir. 1991) ("Michael Thomas' poor financial condition, as evidenced by the civil judgments, was properly admitted under Rule 404(b) to show a motive in participating in a scheme to defraud an insurance company. . . . The evidence was clearly admissible under Rule 404(b) as proof of motive."); *see also Boyd*, 773 F.3d at 643 (stating that "[e]vidence of willfulness includes a defendant's history of previously filing accurate tax returns and his receipt of warning notices from the IRS," and thus affirming the district court's decision to admit twenty years' worth of tax records).

As the Fifth Circuit has already stated that evidence of Williams's tax debt is admissible intrinsic evidence because it played a crucial role in the genesis and evolution of the conspiracy, it follows naturally that correspondence about this debt is permissible under Rule 404(b). This evidence further defines the reasons behind Williams's hiring of Timothy to prepare false returns.

  2.  ***Evidence Regarding Williams's interactions with Former Tax Preparer***

Further defining Williams's past involvement with Schedule C expenses, the Government also seeks to present the testimony of Williams's prior tax preparer, Curtis Moret. Mr. Moret has been a CPA for approximately 40 years and was the CPA for Mr. Williams for his 2001, 2002 and 2003 tax returns. Mr. Moret will testify that he met Mr. Williams in late 2004 or 2005 and that Williams was a self-employed attorney during those years. In preparing the returns, Mr. Moret created profit and loss statements for Williams by using his bank statements, check registers and credit card statements. He included business expenses on a Schedule C form for Mr. Williams. He

will testify that if he had questions about whether something was a business or personal expense, he would call and ask Mr. Williams. After he completed the returns, he prepared a summary sheet which outlined the tax liability and contained an address as to where to mail the payments. He then provided the original return to Mr. Williams. Mr. Moret recalled that Williams owed more than $27,000 in federal taxes in 2002. Moret stated that Williams was shocked that he owed that much. Mr. Moret then discussed making quarterly payments to the IRS with Mr. Williams.

This evidence is proper 404(b) evidence, as it shows Williams's knowledge of how Schedule C expenses worked and shows a lack of accident regarding the many fraudulent Schedule C expenses at issue. Mr. Moret's testimony will show that, before hiring Timothy, Williams had considerable exposure to how Schedule C expenses worked, and thus some idea of what sort of expenses might reasonably be considered appropriate business expenses before hiring Henry Timothy. It will also show that Williams was vocally upset after seeing his tax liability resulting from an accurate Schedule C form. Indeed, Timothy's first task in the conspiracy was to amend some of the returns Mr. Moret originally prepared by adding fraudulent Schedule C expenses. This was done despite Williams's claim to the IRS via correspondence that some of his business records had been destroyed by Hurricane Katrina. (See attached Exhibit 1)[3] Williams further claimed to the IRS that his tax preparer filed his returns neither "timely nor properly." Williams then stated to the IRS that he had "another CPA re-evaluate and file amendments in 2012 which were accepted by the IRS." (See attached Exhibits 2 and 3).

---

[3] The government anticipates that Henry Timothy will testify that, when Mr. Williams hired Timothy to amend his earlier tax returns, Mr. Williams provided him with a list of newly discovered business expenses for pre-Katrina tax years, despite his claim to the IRS that he lost business records to Hurricane Katrina. Also, Exhibit 1's date stamp shows this comment about Hurricane Katrina came in 2013, which is after Williams first met Timothy. The Fifth Circuit has already stated that evidence regarding Timothy's amending of Williams's tax returns is intrinsic to the conspiracy. Evidence of Williams's statements to the IRS, made during the conspiracy, about the nature of this pre-conspiracy tax debt should also be admissible, especially when it concerns the very same years Timothy amended as part of his first job in the conspiracy.

This evidence also helps establish motive and plan and preparation. Again, the debt related to the tax returns Mr. Moret prepared was not paid until after Williams hired Timothy and had him amend the prior returns. The evidence will show that Timothy added an additional $28,000 in Schedule C expenses to the 2002 return, years after Mr. Moret had correctly prepared the return directly from Williams's records. After only two meetings with Timothy, Williams used Burdett as a go-between between himself and Timothy. It is crucial for the government to be able to show the key role Williams played in the correct preparation of his 2002 taxes with Mr. Moret, to show that he brought Timothy on board to file fraudulent returns with trumped up Schedule C expenses.

### 3.     *Evidence Regarding Burdett's Extrinsic Medicaid Fraud*

Although the prior district judge denied the Government's Notice of Intent to admit Medicaid evidence, the Government asks the Court to reconsider the introduction of this evidence at trial. This evidence is admissible to show motive, intent, preparation, plan, knowledge, and absence of mistake or lack of accident. Ms. Burdett's Medicaid fraud establishes a distinct motive for her tax fraud in this case because Medicaid has income limits for eligibility. The evidence will show that Burdett knew that Medicaid could request a copy of her tax returns to verify her income. In fact, that is exactly what happened in 2018, when she was asked by Medicaid to provide her tax returns. By 2018, Burdett had ceased having Henry Timothy prepare her tax returns and her 2018 returns were prepared accurately by a CPA firm named Hienz and Macaluso. After reviewing her taxes returns, Medicaid determined that her income was too high, so they discontinued her benefits. This evidence undercuts Burdett's argument that she thought Mr. Timothy was preparing her returns correctly, when she had numerous reasons to want her tax liability as low as possible and resorted to having her returns falsified. Burdett had an incentive to commit tax fraud through Schedule C deductions to lower her tax liability, which, in turn, allowed her to continue to claim

Medicaid eligibility. Had Ms. Burdett been honest about her taxable income, she plainly would not have qualified for Medicaid.

### 4. *Evidence Regarding Defendants' Past Interactions with Forms 8300*

The Government filed a Supplemental Notice of Intent to Introduce Intrinsic and Rule 404(b) Evidence concerning the fact that Nicole Burdett was involved in two prior transactions in which a Form 8300 was filed, and Jason Williams was present for one of those transactions. The Government sought to introduce this evidence to prove that the defendants had knowledge of Form 8300 and of the requirements that it must filed whenever a transaction involves more than $10,000 in currency. The Court denied the Government's request to introduce evidence and testimony regarding the 2010 real estate transaction in which Nicole Burdett was a party to a transaction in which a Form 8300 was filed. The Court deferred ruling on the 2012 transaction in which Nicole Burdett and Jason Williams acted as attorneys for a client who paid more than $100,000 in cash to settle a civil lawsuit. The Government requests the Court to find that evidence as to these transactions is proper 404(b) evidence to prove both defendants had knowledge and were aware of the existence of these forms and the requirements for filing them. Without these transactions, the Government has limited evidence establishing that the defendants had knowledge of Forms 8300 reporting requirements.

In reaching its prior ruling, the Court found that the title company voluntarily filed the Form 8300 concluding, "[i]f the title company was not required to file a Form 8300, how can Ms. Burdett's provision of biographical information for inclusion on a gratuitous form be relevant to Ms. Burdett's knowledge that such forms must be filed under certain circumstances?" The Court was incorrect in its conclusion that the title company voluntarily filed this form. The transaction at issue involved Ms. Burdett presenting two cashier's checks, one from Regions Bank for $7,000

9

and a second cashier's check from Capital One for $9,000. Both of these checks were used for her $16,000 down payment to purchase a residence. (See attached Government Ex. 4). If she had purchased the residence with a single cashier's check exceeding $10,000, then the title company would not have had any obligation to report it. This is because if a cashier's check is purchased from a bank or other entity, the bank or other financial institution that issued them must then file a Currency Transaction Report. Because the financial institution does not have an obligation to report when a cashier's check is purchased for under $10,000, the obligation then falls on the recipient of the funds to file if the checks total more than $10,000. (See Government Ex. 5, IRS Publication 1544). Not only did the title company have an obligation to file the Form 8300, but they also had an obligation to provide a written or electronic statement to each person named on Form 8300 before January 31 of the year following the calendar year in which the cash was received. This statement must further show the name, telephone number, and address of the information contact for the business, the aggregate amount of reportable cash received and that the information was furnished to the IRS. (See Government Ex. 6, Form 8300 pg. 3 highlighted section). This transaction is highly probative in proving that Nicole Burdett was aware of the requirement of Form 8300 given that she was a party to this transaction and would have received a copy of the completed form.

5. *Evidence Regarding Motive-Based "Lifestyle" Evidence from 2018 and 2019*

The Government seeks clarification of the Court's previous order allowing it to present lifestyle evidence for the charged tax years of 2013 through 2017 for Mr. Williams and 2014 through 2017 for Ms. Burdett. The Court deferred ruling on expenses made or incurred in 2018 and beyond, seemingly because it felt this evidence fell outside the period of the crimes in the indictment. As a point of clarification: tax filings for tax years 2017 were not due until April of

2018. In fact, Count Six charges that the alleged fraudulent 2017 return was filed on May 15, 2018. The Government would further note that as Count One of the Indictment details, the conspiracy in this case began in 2011 and continued through 2019.

Because both defendants' tax liability was greatly reduced for the charged years due to the alleged fraud, the Government believes that their spending habits in 2018 and 2019 are relevant in establishing the benefits they received from not having to pay their lawful taxes for years. The Court found lifestyle evidence would be admissible to prove willfulness or motive, thereby making lifestyle evidence for those years pertinent. Both defendants greatly benefited monetarily from this scheme and used their profits from the scheme to travel and make large purchases such as Mr. Williams purchasing a $1.4 million dollar home in March of 2019 and Nicole Burdett purchasing an inground pool and hot tub in April of 2018. The defendants' lifestyles would not have been possible without the tax fraud that funded them. *See, e.g.*, *United States v. Powell*, 124 F.3d 655, 661–62 (5th Cir. 1997) (noting "lifestyle" evidence has permissible uses at trial); *United States v. Jackson-Randolph*, 282 F.3d 369, 376 (6th Cir. 2002) (holding evidence of the defendant's "lavish" lifestyle, which included expensive jewelry, trips, and gifts to others was admissible to show motive).

Given this evidence's obvious value in showing motive, the defendants cannot credibly argue that the danger of "unfair" prejudice substantially outweighs its probative value. Indeed, federal courts routinely approve of motive-directed "lifestyle" evidence concerning activities that are, on their face, far more incendiary or salacious than evidence merely showing that the defendants committed fraud to afford expensive goods or trips. *See, e.g.*, *Powell*, 124 F.3d at 661–62 (holding that evidence of the defendant's extravagant nightlife spending, including his "generous patronage at topless bars" was admissible to show motive and rebut the defendant's

11

claim that he was merely a victim of another's fraud); *United States v. Mobley*, 193 F.3d 492, 496 (7th Cir. 2002) ("[W]e do not understand how putting the money to questionable ends can prevent the prosecutor from making an otherwise proper demonstration of motive and effect. An embezzler who spends the proceeds on a yacht or a mistress can't by that step prevent the jury from learning that his budget was out of balance.").

The evidence in this case is not incendiary and the defendants offer no articulable prejudice other than asserting that jurors might convict Williams and Burdett simply for having nice things. This is a specious argument, which, at its core, is premised on a lack of faith in jurors' ability to follow this Court's jury instructions, and an implicit belief that, without prompting, a jury might decide this case based on grounds never argued by any party in court.

### 6. *Evidence of Defendants' conduct on Tax Returns after Involvement with Henry Timothy*

As the government has previously argued, the current tax returns for both Williams and Burdett are a stark contrast to the returns prepared by Mr. Timothy. The prior district judge deferred ruling on this issue until trial and the government requests the same of this Court.

In November of 2018 Williams's and Burdett's financial planner, Kevin Conley, noticed items on Burdett's tax returns that could be suspicious such as "bulk expenses" and "business expenses" to the IRS and recommended they seek a new tax preparer and recommended the CPA firm of Heinz and Macaluso. He suggested that they discuss amending the prior returns with the new firm. The Government seeks to introduce the testimony from an employee at Heinz and Macaluso that although they were hired to complete the 2018 returns, no amendments were done for either Williams or Burdett. As discussed above, it is not reasonable to believe that they relied on Henry Timothy and had no knowledge of him preparing fraudulent returns, yet when they are told by their own financial planner that the returns look "suspicious," they take no action and do

not amend the fraudulent returns. Williams is certainly familiar with the option of amending returns since that is what Williams instructed Mr. Timothy to do when he first hired him. The jury should be allowed to hear this evidence which establishes that Williams only amends returns when it benefits him and failed to do so when he was apprised that there were issues with the Timothy prepared returns.

### III. CONCLUSION

In conclusion, the Government respectfully requests that the Court reconsider the issues addressed above during the trial, and that at the trial of this matter the Court reconsider and grant the Government's previously filed motions on any and all matters ordered deferred and or denied by this Court's December 2021 order.

Respectfully submitted,

MERRICK B. GARLAND
United States Attorney General

BRANDON B. BROWN
United States Attorney
Western District of Louisiana

BY: /s/ Kelly P. Uebinger
KELLY P. UEBINGER, (Bar No. 21028)
ALEXANDER C. VAN HOOK, (Bar No. 25281)
JESSICA D. CASSIDY, (Bar No. 34477)
Assistant United States Attorneys
800 Lafayette Street, Suite 2200
Lafayette, LA 70501
Telephone: (337) 262-6618

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| UNITED STATES OF AMERICA | * | CRIMINAL NO. 20-cr-00055 |
| --- | --- | --- |
| | * | SECT. I. MAG.4 |
| VERSUS | * | |
| | * | JUDGE AFRICK |
| JASON R. WILLIAMS (01) | * | |
| NICOLE E. BURDETT (02) | * | MAGISTRATE JUDGE ROBY |

| UNITED STATES OF AMERICA | * | CRIMINAL NO. 20-cr-00139 |
| --- | --- | --- |
| | * | SECT. I. MAG.3 |
| | * | |
| VERSUS | * | JUDGE AFRICK |
| | * | |
| NICOLE E. BURDETT (01) | * | MAGISTRATE JUDGE DOUGLAS |

**CERTIFICATE OF SERVICE**

I hereby certify that on April 28, 2022, I electronically filed the foregoing Government's Memorandum in Support of Motion for Reconsideration with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to all defense counsel of record.

/s/ Kelly P. Uebinger
KELLY P. UEBINGER, (Bar No. 21028)
ALEXANDER C. VAN HOOK, (Bar No. 25281)
JESSICA D. CASSIDY, (Bar No. 34477)
Assistant United States Attorneys

14