# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | **CRIMINAL NO.  20-cr-00055** |
| | * | **SECT. I. MAG.4** |
| **VERSUS** | * | |
| | * | **JUDGE AFRICK** |
| **JASON R. WILLIAMS** **(01)** | * | |
| **NICOLE E. BURDETT** **(02)** | * | **MAGISTRATE JUDGE ROBY** |

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | **CRIMINAL NO.  20-cr-00139** |
| | * | **SECT. I. MAG.3** |
| | * | |
| **VERSUS** | * | **JUDGE AFRICK** |
| | * | |
| **NICOLE E. BURDETT** **(01)** | * | **MAGISTRATE JUDGE DOUGLAS** |

## UNITED STATES' MEMORANDUM IN SUPPORT OF MOTION IN LIMINE TO EXCLUDE EXTRINSIC EVIDENCE

The United States of America, in response to the "Defendants' Notice Regarding Comparators to be Referenced at Trial," requests this Court to exclude at trial extrinsic evidence regarding Henry Timothy's work on other clients' taxes (i.e., clients other than the defendants). There are only two conceivable uses for this evidence, and neither allow extrinsic proof as the defendants propose.

## RELEVANT PROCEDURAL HISTORY

The defendants, Jason Williams, and Nicole Burdett, are charged with Conspiracy to Defraud the United States, Aiding and Assisting in the Preparation and Presentation of False and Fraudulent Returns (relating to Williams' returns for tax years 2013 through 2017), and Failure to File Forms 8300 Relating to Cash Received in a Trade or Business.  The charges stem from the defendants employing Henry Timothy, a tax return preparer, to take fraudulent Schedule C deductions for Williams' law firm.  The fraudulent business deductions reduced the net profit of

1

the law firm, which in turned reduced the defendant's taxable income so that he would have little (or no) tax liability.  Burdett is also charged in a separate indictment with Making and Subscribing to a False Return for tax years 2014 through 2017. Those charges related to Burdett using Timothy to take fraudulent Schedule C deductions for her legal consulting firm.

At a status conference on April 11, 2022, the defendants noticed their intent to introduce into evidence at trial extrinsic evidence regarding tax preparation that Henry Timothy did for other clients.  The defendants claim this evidence shows that Timothy took aggressive Schedule C deductions for all his clients, which undermines the prosecution's theory that the defendants instructed Timothy to commit tax fraud.  The United States stated its belief that extrinsic evidence including tax returns that Timothy prepared for other clients would not be admissible under any theory of law.  The Court advised, in sum and substance, that it was inclined to admit some of the evidence but that it would not allow the defendants to have a trial-within-a-trial.  The Court additionally stated that it would require the extrinsic tax information which the defendants wished to introduce into evidence to be similarly situated to the defendants' tax returns.  The Court ordered the defendants to advise the Court and the United States, not later than May 2, 2022, as to which comparators they will seek to use at trial.  [Rec. Doc. 295, p. 3].

The defendants have since given notice of the other Timothy client tax information that they intend to introduce at trial.  [Rec. Doc. 308].  The twenty (20) proposed tax returns have Schedule Cs relating to restaurant, trucking, painting and stucco, daycare businesses, and other non-professional businesses.  The defendants claim that they intend to introduce the IRS's tax analysis of the Schedule C returns filed by Mr. Timothy through the government agents who prepared the analysis and that they intend to elicit testimony from the government's own witnesses

that Mr. Timothy made all the critical decisions about what to deduct on his clients' Schedule C tax returns." [Rec. Doc. 308.]. [1]

During an evidentiary hearing held in this matter, IRS SA Lori Marable, testified that she encountered Henry Timothy while investigating a home health company owned by an individual named C.D. SA Marable learned that Timothy prepared the tax returns for C.D.  In order to obtain information on Timothy's tax preparation business, SA Marable requested and received a spreadsheet of information on Timothy's clients from the IRS Scheme and Development Center, which contained pertinent information from each of the tax returns prepared by Timothy. [Rec. Doc. 89, p. 62] When she obtained the spreadsheet, she did a data sort and looked for returns that she though may contain false expenses.  SA Marable testified that Williams' return appeared to have false items on it. [Rec. Doc. 89. p. 64] Although the defense states, "First, the IRS analyzed more than 1700 Schedule C tax returns filed by Timothy between 2013 and 2016 and determined that Mr. Timothy engaged in an ongoing pattern of taking aggressive deductions for most of his clients," SA Marable actually testified, "No, not almost all of them. I mean, some of them did seem that they were prepared correctly. I can't say that most or all of his returns. I mean, he prepared over 1500 returns. Not all of them were incorrect." [Rec. Doc. 89 p. 76]

The defendants also claim that "according to the government's own interviews of several of Timothy's clients, Timothy made all decisions on deductions and did not take instruction from his clients." This statement is also not accurate.  The clients defendants are referring to are Robert Hjortsberg and John Bowker, both of whom worked at the Jason Williams law firm.  Hjortsberg worked as a lawyer at the firm and had Timothy prepare his returns for several years. Bowker was the administrative assistant for the firm, who also had Timothy prepare his return. Timothy has

---

[1] The defendants are referring to a spreadsheet prepared by the IRS Scheme Development Center which lists tax return information for more than fifteen hundred Timothy clients.

admitted to falsifying their returns. Timothy will also testify that he always told his clients to check over their returns and that he would amend if there was something they wanted to change. Both of these individuals will testify at trial and the defense will have ample opportunity to cross-examine them on these issues. The return information that the defendants seek to introduce are other Timothy clients who are involved in businesses which are not similar, in any respect, to a law firm.

As will be demonstrated below, there are only two conceivable uses for this evidence, and neither allow extrinsic proof as the defendants propose. First, although Henry Timothy can be cross-examined about specific instances of conduct relating to his preparation of other clients' tax returns, the defendants cannot prove up that conduct through extrinsic evidence. Fed. R. Evid. 608(b). Second, even assuming the defendants could get past the fact that this is pure propensity evidence (which they cannot), the defendants cannot establish a permissible use for the evidence at trial. Further, even establishing the conditional relevance of this evidence would lead to a sprawling mini-trial regarding Timothy's potential fraud with other, dissimilar clients, and whether those clients had knowledge of that conduct. At best, the evidence would tend to show Timothy's knowledge and intent to commit tax fraud, which is not the central issue in this trial. The issue is whether Williams and Burdett knowingly and willfully committed tax fraud and none of the other client extrinsic evidence which the defendants seek to introduce will establish whether those clients had knowledge of that conduct.

<u>LAW AND ARGUMENT</u>

    **a.  Although the defendants can cross-examine Henry Timothy about his preparation of other clients' tax returns, they cannot introduce the tax returns to prove up this conduct.**

Except for a criminal conviction under Rule 609, extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness. Fed. R. Evid. 608(b). The court may, on cross-examination, allow them to be inquired into if they are probative of the character for truthfulness or untruthfulness of the witness. *Id*. But if the witness denies the conduct, the questioning party must take the witness' answer. *United States v. Simpson*, 709 F. 2d 903, 907 (5th Cir. 1983). This result is consistent with the long-standing doctrine that a witness may not be impeached with extrinsic evidence as to a collateral matter. *United States v. Herzberg*, 558 F. 2d 1219, 1223 (5th Cir. 1977); *see also* Fed. R. Evid. 403 ("The court may exclude relevant evidence if is probative value is substantially outweighed by the danger of … confusing the issues … or needless presenting cumulative evidence.").

Here, the law is clear that the defendants cannot use the tax returns to impeach Henry Timothy. If Timothy admits on direct examination that he prepared fraudulent tax returns for other clients, the defendants may still cross-examine him about the fraudulent returns to attack his character for truthfulness. But the defendants cannot introduce the tax returns to prove up that conduct. Fed. R. Evid. 608(b).

Even if Timothy were to deny that he fraudulently prepared tax returns for other clients, the defendants still could not introduce the tax returns into evidence. That is because other peoples' tax returns do not shed light on the central issue in this case – whether the defendants committed tax fraud. The tax returns instead bear only on Timothy's general character for

truthfulness, and a witness may not be impeached with extrinsic evidence regarding other acts bearing only on their general character for truthfulness. *Herzberg*, 558 F. 2d at 1223. Therefore, regardless of whether Timothy admits or denies preparing fraudulent tax returns for other clients, the end result is the same: the defendants cannot use the tax returns to impeach him. They must take Timothy's answer. Fed. R. Evid. 608(b); *see Simpson*, 709 F. 2d at 907*; see also, United States v. Cohen*, 631 F.2d 1223, 1226 (5th Cir. 1980) (observing that when a witness is cross examined under Rule 603(b), "the examiner must take his answer," and the examiner cannot offer impeachment testimony").

### b.  The tax returns serve no purpose other than to show that Timothy had a propensity to commit tax fraud, which is inadmissible under Fed. R. Evid. 404(b)(1).

The right to cross-examine witnesses is not without limits, and "trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues…or interrogation that is repetitive or only marginally relevant." *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986). Evidence of other crimes, wrongs, or acts is not admissible if offered to prove the character of a witness in order to show that the witness acted in conformity therewith on a particular occasion. *Id*.; Fed. R. Evid. 404(b)(1).

Here, as they provide in their notice, the defendants want to introduce tax returns that Henry Timothy prepared for other clients because "there is no good reason to believe that Williams and Burdett instructed Timothy to take improper Schedule C deductions when he was doing the same thing for everyone else without being asked." [Rec. Doc. 51-1, p. 6]. Notwithstanding the fact that the tax returns do not prove that Timothy committed fraud without his clients' knowledge, it is obvious that the defendants are seeking to introduce this evidence to show that Timothy acted in conformity with a bad character. Specifically, because Timothy committed tax fraud

(supposedly) without his other client's knowledge, he must also have committed tax fraud in the instant case without the defendants' knowledge.  Given that such a propensity argument is inherently prejudicial, the Court should exclude the extrinsic tax return evidence from trial.  *See, e.g. United States v. Townsend*, 31 F.3d 262, 268 (5th Cir. 1994) (affirming the district court's decision to restrict cross examination of various government witnesses about allegedly falsifying certain corporate records to show the witnesses' "propensity, motive, and opportunity to falsify [an excise tax form]" under a theory that falsifying the other documents was sufficiently similar to falsifying the excise tax form; not only was there insufficient proof the witnesses falsified the other documents, but the evidence "was introduced for purposes of showing conformity rather than motive or intent in direct contravention to Rule 404(b)").

### c.  Even if the defendants could establish a non-propensity purpose for the evidence, the tax returns are not admissible under Fed. R. Evid. 404(b).

While not admissible to prove a person's character, other acts may be admissible to prove motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.  Fed. R. Evid. 404(b).  However, and because prior bad act evidence is only conditionally relevant, courts must first ascertain whether the jury would be presented with sufficient evidence that the putative bad act actually occurred.  *United States v. Gutierrez-Mendez*, 752 F. 3d 418, 423 (5th Cir. 2014).  If not, then testimony as to it would be irrelevant under Rule 104(b), and it would be error to admit it.  *Id*.

Once the issue of conditional relevance has been addressed, courts apply the two-part *Beechum* framework.  *Id*.  First, it must be determined that the extrinsic evidence is relevant to an issue other than the defendant's character.  *United States v. Beechum*, 582 F. 2d 898, 911(5th Cir. 1978).  The standard for relevancy under *Beechum's* first prong is identical to that found in Rule 401: whether the evidence has any tendency to make a fact more or less probable than it would be

without the evidence <u>and</u> the fact is of consequence in determining the action.  Fed. R. Evid. 401; *see Beechum*, 582 F. 2d at 911. Second, the evidence must possess probative value that is not substantially outweighed by its undue prejudice and must meet the other requirements of Rule 403. *Beechum*, 582 F. 2d at 911.

Here, as a threshold matter, the introduction of other clients' tax returns would not prove that the putative act alleged by the defendants actually occurred.  Specifically, the tax returns by themselves do not prove that Henry Timothy inflated Schedule C expenses without his clients' knowledge.  To prove this conduct, the defendants would have to call each of Timothy's clients at trial and question them about their knowledge of what Timothy deducted on their tax returns. Assuming the clients did not invoke a Fifth Amendment privilege, this would result in twenty trials-within-a-trial.  This would undoubtedly confuse the jury about what is actually at issue in this case (i.e., whether the defendants committed tax fraud).

Even if there was sufficient evidence to prove the putative act occurred, the extrinsic evidence is not relevant under the first prong of *Beechum*.  Specifically, Henry Timothy's knowledge and intent to commit tax fraud regarding these other clients is of no consequence in this case.  Fed. R. Evid. 401; *see Beechum*, 582 F. 2d at 911.  That is because whether Henry Timothy had the knowledge and intent to commit tax fraud, particularly, in other unrelated matters, does not prove that the defendants lacked the knowledge and intent to commit tax fraud, which is at issue in this case.  Therefore, because the evidence is not relevant, extrinsic evidence regarding Timothy's work on other clients' taxes is not admissible under Rule 404(b).

<u>CONCLUSION</u>

The United States respectfully requests this Court grant the motion in limine and exclude at trial extrinsic evidence regarding Timothy's work on other clients' taxes.

Respectfully submitted,

MERRICK B. GARLAND
United States Attorney General

BRANDON B. BROWN
United States Attorney
Western District of Louisiana

BY:    /s/ Kelly P. Uebinger
KELLY P. UEBINGER, (Bar No. 21028)
ALEXANDER C. VAN HOOK, (Bar No. 25281)
JESSICA D. CASSIDY, (Bar No. 34477)
Assistant United States Attorneys
800 Lafayette Street, Suite 2200
Lafayette, LA 70501
Telephone: (337) 262-6618

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | **CRIMINAL NO.  20-cr-00055** |
| | * | **SECT. I. MAG.4** |
| **VERSUS** | * | |
| | * | **JUDGE AFRICK** |
| **JASON R. WILLIAMS      (01)** | * | |
| **NICOLE E. BURDETT     (02)** | * | **MAGISTRATE JUDGE ROBY** |

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | **CRIMINAL NO.  20-cr-00139** |
| | * | **SECT. I. MAG.3** |
| | * | |
| **VERSUS** | * | **JUDGE AFRICK** |
| | * | |
| **NICOLE E. BURDETT     (01)** | * | **MAGISTRATE JUDGE DOUGLAS** |

## CERTIFICATE OF SERVICE

I hereby certify that on May 26, 2022, I electronically filed the foregoing Government's Memorandum in Support Motion in Limine to Exclude Extrinsic Evidence with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to all defense counsel of record.

/s/ Kelly P. Uebinger
KELLY P. UEBINGER, (Bar No. 21028)
ALEXANDER C. VAN HOOK, (Bar No. 25281)
JESSICA D. CASSIDY, (Bar No. 34477)