UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL NO. 20-055 |
| VERSUS | SECTION "I" |
| | JUDGE LANCE M. AFRICK |
| JASON R. WILLIAMS | |
| NICOLE E. BURDETT | MAGISTRATE (4) |
| | MAGISTRATE JUDGE ROBY |
| | |
| UNITED STATES OF AMERICA | CRIMINAL NO. 20-139 |
| VERSUS | SECTION "I" |
| | JUDGE LANCE M. AFRICK |
| NICOLE E. BURDETT | |
| | MAGISTRATE (3) |
| | MAGISTRATE JUDGE DOUGLAS |

**RESPONSE IN OPPOSITION TO MOTION TO COMPEL FILED BY NICOLE BURDETTE**

MAY IT PLEASE THE COURT:

The United States, through the undersigned Assistant United States Attorney, respectfully submits this response in opposition to Nicole Burdette's pending Motion to Compel (the "Motion to Compel") (Doc. 231) and asks this Court to deny the  motion to compel, in its entirety, for the reasons set forth herein.

## I. INTRODUCTION AND SUMMARY OF THE ARGUMENT

Criminal Defendant, Nicole Burdette, issued two subpoenas for trial testimony from two non-party federal employees, IRS Special Agent Lori Marable ("SA Marable") and IRS Investigative Analyst, Darin Coleman ("IA Coleman") as well as a subpoena duces tecum for documents in the custody of the IRS Scheme Development Center.  Pursuant to the applicable *Touhy* regulations for both the agency, the Internal Revenue Service ("IRS), and the Department of Justice ("DOJ"), on July 7, 2022, the United States Attorney authorized the trial testimony of both

1

federal employees, subject to certain limitations pursuant to applicable *Touhy* exceptions, and also responded to the subpoena duces tecum by either noting that all responsive documents had already been produced or citing the applicable *Touhy* exception to disclosure. (Doc. 373-2). Burdette has now moved to compel the IRS to produce additional documents and testimony.

Burdette argues three main issues in her motion to compel: (1) *Touhy* is not applicable and this Court should review the pending motion pursuant to Rule 17 discovery standards; (2) Burdette is entitled to additional testimony from SA Marable and IA Coleman beyond what was authorized in the United States's *Touhy* response letter dated July 7, 2022; and (3) Burdette is entitled to additional documents from IA Coleman and the IRS Scheme Development Center beyond what has already been produced in discovery and as addressed in the United States's *Touhy* response letter dated July 7, 2022.

As discussed below, *Touhy* is applicable here and, as such, the appropriate standard of review is whether the federal-agency action was "arbitrary, capricious, an abuse of discretion or otherwise not in accordance with the law" under the Administrative Procedures Act (APA), 5 U.S.C. §706(2)(A). Furthermore, Burdette is not entitled to testimony or documents beyond what was authorized in the United States's *Touhy* response letter because additional testimony or document production is prohibited by the regulatory privileges cited therein. Accordingly, the United States, through the Department of Justice, has acted neither arbitrarily or capriciously in his consideration and authorization of the trial testimony and production of documents, although limited in scope pursuant to the cited *Touhy* regulations, and Burdette's instant motion to compel should be denied.

## II. APPLICABLE *TOUHY* REGULATIONS

Before discussing the third-party subpoena subjects of Burdette's motion to compel, it is critical to discuss the regulatory scheme that applies to demanding testimony and documents from

federal agencies like the IRS.  Pursuant to 5 U.S.C. § 301, many federal agencies have promulgated so-called *Touhy* regulations regulating their employees' ability to respond to third-party subpoenas for official information. These regulations typically prohibit the unauthorized release of information by agency employees, provide a procedure for centralized agency decision-making concerning how the agency will respond to a subpoena for testimony or documents served on an agency employee, and provide a procedure by which a subpoenaing litigant may obtain an agency decision.

The validity of such regulations was considered and upheld by the Supreme Court in *United States ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951)[1].  *Touhy* involved an FBI agent held in contempt because, pursuant to a Department of Justice regulation, he refused to produce certain documents subpoenaed by a state prisoner in a federal habeas corpus proceeding.  The Supreme Court affirmed the reversal of the contempt, concluding that the FBI agent's refusal to produce documents in contravention of the DOJ regulation was lawful, and that the regulation centralizing decision-making was a valid exercise of Executive authority under the predecessor of the current Housekeeping Statute. *Id.* at 467-68.  Ever since, such regulations became known as "*Touhy* regulations."

The DOJ *Touhy* regulations are found at 28 C.F.R. § 16.21, *et seq.*  Generally speaking, no employee of the Justice Department may produce any Justice Department material in any federal case in which the United States is a party without consulting with the originating component (i.e. the agency). 28 C.F.R. § 16.23(a). When information like testimony or documents are sought, the United States Attorney shall request a summary of the information sought and its relevance to the

---

[1] In *U.S. ex rel. Touhy v. Ragen*, 340 U.S. 462, 469-70 (1951), the Supreme Court "held that the precursor of the Justice Department regulations cited [by the Justice Department in the instant case] was valid and that a court could not enforce a subpoena against a Justice Department employee who had been ordered by departmental superiors not to comply with the subpoena." Louisiana v. Sparks, 978 F.2d 226, 229 n.5 (5th Cir. 1992). There is no dispute in the instant case that the regulations are valid and that Burdette complied with them.

proceeding. 28 C.F.R. § 16.23(c). After a demand has been submitted, the United States Attorney considers whether disclosure would be appropriate under the rules of procedure and whether disclosure is appropriate under the relevant substantive law concerning privilege. 28 C.F.R. § 16.26(a).  The regulations also identify a number of factors that weigh against disclosure. 28 C.F.R. § 16.26(b). These regulations do not create any substantive rights for litigants. 28 C.F.R. § 16.21(d).

In this case, in addition to the DOJ *Touhy* regulations, the IRS has its own *Touhy* regulations, 26 C.F.R. §301.9000-1 through §301.9000-6. Similar to the DOJ *Touhy* regulations, there is a specific procedure for the demand[2] of IRS records or information that must be followed by all IRS officers, employees and contractors. 26 C.F.R. §301.9000-4.  The IRS *Touhy* regulations require authorization for disclosure of IRS records or testimony and set forth explicit prohibitions on such authorizations under certain enumerated circumstances. 26 C.F.R. §301.9000-3. These IRS *Touhy* regulations outline considerations specific to requests for IRS records or information. 26 C.F.R. §301.9000-2.

As discussed herein, the United States necessarily followed the mandatory procedures under the applicable DOJ and IRS *Touhy* regulations and applied the appropriate considerations as explicitly set forth in the regulations in its decision to limit the testimony or production of documents beyond the scope of what was authorized in its July 7, 2022 letter.

### III. ARGUMENT

1.      **The appropriate standard of review in this matter is the APA standard.**

The United States is not asserting sovereign immunity in the instant matter and seeking to have Ms. Burdette file a separate action under the APA as would be necessary if the subpoenas were issued in a state court matter with no jurisdiction over the United States.  However, the United

---

[2] The IRS regulations define "demand" as any subpoena or other order of any court….or other notice of, request for, or service for discovery in a matter before any court, administrative agency or other authority. 26 C.F.R. §301.9000-1.

States asserts that the proper standard of review is the "arbitrary and capricious" standard set forth under the APA nonetheless.

The standard of review when a private litigant causes the federal court to issue a subpoena to a federal employee is unsettled; however, this District Court and others in the Fifth Circuit have, after extensive review and analysis of this issue, adopted the arbitrary and capricious standard of the APA in reviewing the United States's compliance with a subpoena issued pursuant to *Touhy* regulations. *See Beckett v. Serpas*, No. 12-910, 2013 WL 796067 at \*7-8 (E.D.La. March 4, 2013)(adopting the APA standard more deferential to the Department); *Samadian v. Meade*, No. 3:10-cv-851-P, 2011 WL 13180181 \*7-8 (N.D.Tex. Dec. 22, 2011)(holding that a federal court's jurisdiction over an administrative agency to review that agency's *Touhy* decisions within the same litigation and is limited to and defined by APA review of the challenged actions)(citing *Hasie v. Office of the Comptroller of the Currency of the U.S.*, 633 F.3d 361, 365 (5th Cir. 2011); *Butowsky v. Folkenflik*, No. 4:18-cv-442, 2019 WL 12373861 \*11 (E.D.Tex. Dec. 13, 2019)(applying the APA standard in review of the Department's *Touhy* decision refusing to produce FBI documents in response to a subpoena duces tecum); *Palmer v. Hawkins*, No. 09-MC-0019, 2009 WL 3230750 at \*3(W.D.La. Oct. 2, 2009)(stating that although the Fifth Circuit had not made any clear choice on the issue, it was "persuaded that the courts that have applied the APA standard have the better argument"); *but see U.S. v. Rodgers*, No. 4:20-cr-00358, 2022 WL 1044013 (E.D.Tex. April 8, 2022)(applying the "normal substantive law of privilege and rules of evidence as the standard of review on a motion to quash subpoenas pursuant to *Touhy*, but ultimately granting the United States's motion to quash testimony of DOJ attorneys).

As Burdette aptly notes, the Fifth Circuit does not appear to have issued a decision expounding on how *Touhy* operates in a federal criminal prosecution where the defense has complied with the applicable *Touhy* regulations. Accordingly, Burdette relies heavily on the District

5

Court of Puerto Rico's opinion in *U.S. v. Fuentes-Correa* to assert that the appropriate standard of review is 17 and not the APA standard. Notably, as opposed to the instant matter, the United States in *Fuentes-Correa* refused to produce the case agent in a detention hearing and requested to proceed by proffer, which is what promoted the subpoena in that matter. No. 13-cr-71, 2013 WL 588892 *8 (D.P.R. Feb. 13, 2013). In the instant matter, as will be discussed below, the case agent for Ms. Burdette's criminal prosecution is not being subpoenaed, nor has the United States unreasonably refused to authorize ***any*** testimony of the two subpoenaed parties, but rather simply limited the scope of the testimony and disclosures as required by the applicable *Touhy* regulations.

Furthermore, the Fifth circuit has declared that the Justice Department regulations for subpoenaing witnesses are valid and <u>mandatory</u>. *U.S. v. Wallace*, 32 F.3d 921, 929 (5th Cir. 1994). In Wallace, a criminal matter the United States rested its case without calling two federal agents. The defendants wanted to question those witnesses but were prohibited from doing so by the trial court because they had not complied with the *Touhy* requirements prior to trial. While the United States is not disputing that Burdette has complied with *Touhy*, the Fifth Circuit's discussion of the right to call witnesses versus the value of other legitimate interests is pertinent here. "Like many other constitutional rights, the right to call witnesses is not absolute. The right to present relevant testimony may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process". *Id*. (cited by *U.S. v. Vander Luitgaren*, No. 6:07-cr-211-orl-22, 2008 WL 2610465 (M.D.Fl. June 30, 2008 (quashing a subpoena for AUSA testimony in a criminal matter pursuant to appliable *Touhy* regulations)).

Simply put, although there is no clear controlling decision in the 5th Circuit on which standard of review should apply to judicial review when a private litigant issues a subpoena to a federal employee, there is abundant support by District Court opinions in this circuit that the APA standard of review should apply. Moreover, although this is a subpoena for trial testimony in a

criminal proceeding in which the United States is a party, the situation is not analogous to the *Fuentes-Correa* matter where the United States was refusing to produce the case agent to the detriment of the criminal defendant. Instead, the defendant has subpoenaed to federal employees who worked on another criminal matter, and the United States has agreed to produce the employees to testify at trial, only limiting the scope of the testimony as necessary to comply with the applicable *Touhy* regulations. Moreover, the Fifth Circuit has decided that Touhy regulations do apply in this context and are <u>mandatory</u>, and that the right to call witnesses is not absolute. *See Wallace* at 929. Accordingly, the United States should be afforded the deferential standard as set forth in the APA when this court reviews the scope of the authorizations set forth in its *Touhy* authorizations in the pending motion to compel.

> 2.    **The United States was neither arbitrary nor capricious in limiting its *Touhy* authorizations for disclosure of IRS information and documents.**

> A.    **The applicable APA "arbitrary and capricious" standard of review.**

The appropriate standard of review under the APA is whether the federal-agency action was "arbitrary, capricious, an abuse of discretion or otherwise not in accordance with the law". 5 U.S.C. §706(2)(A). Section 706 provides a narrow standard of review. *See Butowsky*, 2019 WL 12373861 *6-7 (citing *Upsher-Smith Labs*., 2017 WL 7369881, at *7, and citing *Marsh v. Oregon Nat. Res. Council*, 490 U.S. 360, 378 (1989)). "An agency decision is arbitrary or capricious if [ ] the agency ... entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Id.* When reviewing "agency decisions under the arbitrary and capricious standard, we cannot substitute our judgment or preferences for that of the agency. To affirm an agency's action, we need only find a rational explanation for how the [agency] reached its decision." *Patterson v. Def. POW/MIA Accounting*

*Agency*, 398 F. Supp. 3d 102, 125 (W.D. Tex. 2019) (quoting *Associated Builders & Contractors of*

*Texas, Inc. v. Nat'l Labor Relations Bd.*, 826 F.3d 215, 224-25 (5th Cir. 2016) (citation omitted)).

"[T]here is a presumption that the agency's decision is valid, and the plaintiff has the burden to

overcome that presumption by showing that the decision was erroneous." *Patterson*, 398 F. Supp.

3d at 125 (quoting  *Tex. Clinical Labs, Inc. v. Sebelius*, 612 F.3d 771, 775 (5th Cir. 2010)).

### B.  The United States carefully considered and applied the necessary *Touhy* regulations in its response to Burdette's subpoenas.

The United States carefully considered the necessary Touhy regulations when reviewed and

responding to Burdette's subpoenas for trial testimony and documents from the IRS. The applicable

*Touhy* regulations, as cited in the letter (Doc. 373-2) are 28 C.F.R. 26(b)(2) and 26 C.F.R.

§301.0009-2(a)(1).

28 C.F.R. 26(b)(2) provides:

Among the demands in response to which disclosure will not be made by any
Department official are those demands with respect to which any of the following
factors exist:

(2) Disclosure would violate a specific regulation.

In this case, the specific regulation that would be violated by allowing SA Marable to testify about

personal and return information contained on the tax returns of non-parties to this particular

criminal prosecution is contained in the IRS regulations.  The IRS *Touhy* regulations relating to

situations in which disclosures will not be authorized, provides:

Authorizing officials shall not permit testimony or disclosure of IRS records or
information in response to requests or demands if testimony or disclosure of IRS
records or information would—

(1) Violate a Federal statute including, but not limited to, **sections 6103** or 6105 of
the Internal Revenue Code (Code), the Privacy Act of 1974 (5 U.S.C. 552a), or a
rule of procedure, such as the grand jury secrecy rule, Fed. R. Crim. P. 6(e);

26 C.F.R. §301.9000-2(a)(1) [emphasis added]. 26 U.S.C. § 6103(h)(4) generally limits the

disclosure of returns and return information of persons who are not parties to the proceeding (third parties). Section 6103(h)(4) provides that returns and return information **may** be disclosed in judicial and administrative tax proceedings **if:**

> (A)  the taxpayer is a party to the tax proceeding, or the tax proceeding arose out of, or in connection with, determining the taxpayer's civil or criminal liability, or the collection of the taxpayer's civil liability, in respect of any tax imposed under this title (i.e. the "party" test);

> (B)  the treatment of an item reflected on the return is directly related to the resolution of an issue in the proceeding  (i.e. the "item" test);

> (C)  the return or return information directly relates to a transactional relationship between a person who is a party to the proceeding and the taxpayer whose return or return information would be disclosed which directly affects the resolution of an issue in the proceeding (i.e. the "transactional relationship" test).

26 U.S.C. §6103(h)(4).

Burdette's subpoenas seek tax returns or return information of Henry Timothy and those non-parties that he prepared returns for.  Even though Henry Timothy may be a witness in the instant trial, he is not a party to this criminal matter. Accordingly, the specific non-party returns and return information sought by Burdette cannot be produced pursuant to the exception contained in Section 6103(h)(4)(A).  Furthermore, the exceptions contained in the "item" test of 6103(h)(4)(b)[3] and the "transactional relationship" test of 6103(h)(4)(c) do not apply.

---

[3] The legislative history of the "item" test cited in Section 6103(h)(4)(B) provides, as examples, that the returns of subchapter S corporations, partnerships, estates, and trusts may reflect the treatment of certain items which directly relate to the resolution of the taxpayer's liability because of some relationship of the taxpayer, such as shareholder, partner, or beneficiary, with the corporation, partnership, estate, or trust.  See S. REP. NO. 94-938, at 325 (1976), 1976-3 C.B. (Vol. 3) 363 (emphasis added). The legislative history of the "transactional relationship" test provides, as an example, that the treatment of a third-party buyer's return regarding his purchase of a business would directly relate to the seller's tax liability resulting from the sale of the business.  See S. REP. NO. 94-938, at 325 (1976), 1976-3 C.B. (Vol. 3) 363.  In this example, the buyer's treatment of the purchase on his or her return would also satisfy the item test of section 6103(h)(4)(B). The key factor in determining whose return information is at issue is not whose tax liability may be affected by the data, but rather whose tax liability is under investigation by the IRS for which the information is first obtained, received, or generated by the IRS. *See Martin v. Internal Revenue Service*, 857 F.2d 722, 726 (10th Cir. 1988).

Additionally, 26 C.F.R. 12.62(b)(5) and 26 C.F.R. 301.9002-1(a)(5) both explicitly prohibit disclosure of information that would reveal investigatory records or information compiled for law enforcement purposes that would permit interference with law enforcement proceedings or would disclose investigative techniques and procedures, the effectiveness of which could thereby be impaired.   Burdette's subpoenas seek testimony from both IRS employees related to the IRS Scheme Development Center's general standards and procedures for comparing tax filers Schedule C deductions to "IRS expected deductions".   The is <u>exactly</u> the type of information the IRS has a law enforcement interest in protecting under Section 301.9002-1(a)(5), as just about anyone who files tax returns would love to know what specific standards the IRS has and what thresholds they look at to consider something a "red flag" or a fraud indicator.

### C.   The Unites States' Touhy authorization for the scope of testimony of SA Marable and IA Coleman is reasonable and will provide Burdette the ability to support her defense that she seeks.

The United States authorized the testimony of SA Marable and IA Coleman as needed for Burdette to support her anticipated trial defense. The United States spoke to both IRS employees and endeavored to specifically identify those requested topics about which they have personal knowledge in order to authorize any and all testimony that is proper under the Touhy regulations. The Touhy authorization specifically allows the IRS employees to testify about their own personal knowledge related to their investigation of Henry Timothy, including their respective reviews and investigations of the non-party tax returns, as requested by Burdette. The authorization also allows IA Coleman to testify as necessary to authenticate files in the Scheme Development Center's possession which have already been produced during discovery in this proceeding. The main limitation under the applicable Touhy regulations is that SA Marable and IA Coleman may only testify about what they reviewed in their investigation generally, but not as to the specifics on the returns or return information of non-parties because disclosure of returns or return information of a

taxpayer that is not a party to this proceeding is directly prohibited pursuant to 28 C.F.R. §16.26(b)(2), 26 C.F.R. §301.0009-2(a)(1), and 26 U.S.C. §6103. Accordingly, the United States Touhy authorizations and the limitations contained therein were not arbitrary and capricious, and Burdette's motion to compel further testimony should be denied.

### D.  The Unites States' Touhy authorization related to the subpoena duces tecum was not arbitrary or capricious.

Burdette seeks to obtain the "entire file" from the Scheme Development Center related to IA Coleman's analyses of Henry Timothy's tax return filings – for himself and as a preparer.  To date, and as noted in the United State's Touhy response, IA Coleman's analysis of Timothy's returns from 2013-2016 have been produced in discovery, as well as the Henry Timothy "preparer information reports".  Accordingly, these documents fall under the Touhy exception to the disclosure protection as "IRS information or records available from other sources" pursuant to 26 C.F.R. §301.9000-2(c)(5). IA Coleman has been authorized to testify as necessary to authenticate those documents.  The United States confirmed with counsel for Burdette that no other responsive analyses relevant to those two subpoena requests exist. (Doc. 373-4).  The United States also confirmed with counsel for Burdette that the only other materials related to Henry Timothy were emails (not analyses) between IA Coleman and SA Marable, which are not being disclosed as disclosure is prohibited under law enforcement privilege contained in the applicable Touhy regulations as cited in its Touhy response.  (Doc. 373-4). Finally, the United States cannot produce general (and internal) IRS documents related to the "Scheme Development Center's standards for comparing a tax preparer's Schedule C deductions to IRS expected deductions per occupation category" as this is explicitly prohibited under the law enforcement privilege contained in 28 C.F.R. 16.26(b)(5) and 26 C.F.R. 301.9000-2(c)(5). Furthermore, because the United States has authorized testimony of both SA Marable and IA Coleman related to their specific investigation of the Henry

Timothy matter in this criminal trial, the risk of impairment to the IRS's general ability to analyze and investigate tax returns for fraud indicators by disclosing responsive information publicly far outweighs any alleged harm to Burdette's trial defense. Accordingly, the United States Touhy response to Burdette's subpoena for documents from the IRS Scheme Development Center and the limitations cited therein were not arbitrary and capricious, and Burdette's motion to compel further documents should be denied.

## IV.  CONCLUSION

For all of these reasons, the United States prays that the Court deny Ms. Burdette's Motion to Compel in its entirety.

Respectfully submitted this 14th day of July, 2022.

BRANDON B. BROWN
UNITED STATES ATTORNEY

By: *s/ Shannon T. Brown*
SHANNON T. BROWN (#32366)
Assistant United States Attorney
300 Fannin Street, Suite 3201
Shreveport, Louisiana 71101-3068
Telephone: (318) 676-3613
Fax: (318) 676-3642
Email: shannon.brown@usdoj.gov
*Attorney for the United States of America*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on July 14, 2022, a copy of the foregoing  Response to Motion to Compel was filed electronically with the Clerk of Court using the CM/ECF system.  Notice of this filing will be sent to all counsel of record by operation of the Court's electronic filing system.  I also certify that there are no non-CM/ECF participants to this action.

*s/ Shannon T. Brown*
SHANNON T. BROWN (#32366)
Assistant United States Attorney